# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, REPRESENTATIVE MARIANNETTE MILLER-MEEKS, an individual, and FORMER STATE SENATOR BRADLEY ZAUN, an individual, | |
| | Civil Case No. 4:24-cv-449-RGE-WPK |
| *Plaintiffs*, | |
| | **DEFENDANTS J. ANN SELZER AND SELZER & COMPANY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6)** |
| v. | |
| J. ANN SELZER, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC., | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ...........................................................................................................1

ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT ...................................................2

LEGAL STANDARD .......................................................................................................4

ARGUMENT..................................................................................................................5

    I.    The First Amendment Bars Plaintiffs' Claims. ......................................................5

        A.    Plaintiffs Illegitimately Seek to Create a New First Amendment Exception. ........................................................................................6

        B.    Plaintiffs Cannot Plead Around the First Amendment by Alleging Fraud. .............................................................................................10

        C.    Plaintiffs' Theory of Liability Would Eviscerate the First Amendment. ...................................................................................12

    II.    Plaintiffs' Claims Are Facially Deficient. ...........................................................13

        A.    Plaintiffs Fail to Allege Recoverable Damages.........................................13

        B.    Plaintiffs Fail to State a Claim Under the ICFA........................................15

            1.    Plaintiffs do not have a claim under the ICFA because they allege no actual or contemplated transaction between them and Selzer.....................................................................................15

            2.    Plaintiffs cannot invoke the ICFA, which covers only "consumer merchandise" bought or leased for "personal purposes." ..................................................................................16

        C.    Plaintiffs Fail to State a Claim for Fraudulent Misrepresentation.............18

        D.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation. .............19

    III.    The Court Should Dismiss Claims Against Ms. Selzer as an Individual. .............21

CONCLUSION ..............................................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*281 Care Comm. v. Arneson*,
   766 F.3d 774 (8th Cir. 2014) ...................................................................................9

*Ambassador Press, Inc. v. Durst Image Techn. U.S., LLC*,
   949 F.3d 417 (8th Cir. 2020) .................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................4

*Behlmann v. Century Sur. Co.*,
   794 F.3d 960 (8th Cir. 2015) .................................................................................16

*Bertrand v. Mullin*,
   846 N.W.2d 884 (Iowa 2014) ..........................................................................16, 21

*Brandt v. Weather Channel, Inc.*,
   42 F. Supp. 2d 1344 (S.D. Fla.) .................................................................12, 15, 20

*Briehl v. Gen. Motors Corp.*,
   172 F.3d 623 (8th Cir. 1999) .................................................................................13

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) .................................................................................................8

*Butts v. Iowa Health Sys.*,
   863 N.W.2d 36, 2015 WL 1046119 (Iowa Ct. App. 2015) ....................................17

*C. Mac. Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*,
   412 N.W.2d 593 (Iowa 1987) ................................................................................21

*Chaplinsky v. New Hampshire*,
   315 U.S. 568 (1942) .................................................................................................8

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ....................................................................................15

*Citizens United v. FEC*,
   558 U.S. 310 (2010) .................................................................................................9

*Cognitest Corp. v. Riverside Publ'g Co.*,
   1995 WL 382984 (N.D. Ill. June 22, 1995) ...........................................................10

*Commonwealth v. Lucas*,
   34 N.E.3d 1242 (Mass. 2015) ..............................................................................8, 9

*Daily Herald Co. v. Munro*,
  838 F.2d 380 (9th Cir. 1988) ...................................................................................9

*De Bardeleben Marine Corp. v. United States*,
  451 F.2d 140 (5th Cir. 1971) .................................................................................20

*Demuth Dev. Corp. v. Merck & Co.*,
  432 F. Supp. 990 (E.D.N.Y. 1977) .......................................................................13

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
  518 U.S. 727 (1996)..................................................................................................7

*Doe v. Grinnell Coll.*,
  473 F. Supp. 3d 909 (S.D. Iowa 2019) .................................................................20

*E-Shops Corp v. U.S. Bank Nat'l Ass'n*,
  678 F.3d 659 (8th Cir. 2012) ...................................................................................5

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)................................................................................................15

*FEC v. Cruz*,
  596 U.S. 289 (2022)................................................................................................14

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)................................................................................................13

*Gibson v. ITT Hartford Ins. Co.*,
  621 N.W.2d 388 (Iowa 2001) ................................................................................18

*Gorog v. Best Buy Co.*,
  760 F.3d 787 (8th Cir. 2014) ...................................................................................3

*Grimmett v. Freeman*,
  59 F.4th 689 (4th Cir. 2023) ....................................................................................9

*Grosjean v. American Press Co.*,
  297 U.S. 233 (1936)..................................................................................................6

*HOK Sport, Inc. v. FC Des Moines, L.C.*,
  495 F.3d 927 (8th Cir. 2007) .................................................................................21

*Hollander v. CBS News, Inc.*,
  2017 WL 1957485 (S.D.N.Y. May 10, 2017) ........................................................1

*Hollander v. Garrett*,
  710 Fed. Appx. 35 (2d Cir. 2018)............................................................................1

*Hustler Mag., Inc. v. Falwell*,
   485 U.S. 46 (1988) ............................................................................8

*Hutchinson v. Miller*,
   797 F.2d 1279 (4th Cir. 1986) ........................................................14

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*,
   538 U.S. 600 (2003)...........................................................5, 10, 11, 15

*Kirk v. Farm & City Ins. Co.*,
   457 N.W.2d 906 (Iowa 1990) ..........................................................12

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995)............................................................................9

*Mills v. Alabama*,
   384 U.S. 214 (1966)............................................................................9

*Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*,
   460 U.S. 575 (1983)............................................................................6

*Monson v. DEA*,
   589 F.3d 952 (8th Cir. 2009) .............................................................5

*Mulhern v. Catholic Health Initiatives*,
   799 N.W.2d 104 (Iowa 2011) ..........................................................16

*Murray Energy Holdings Co. v. Mergermarket USA, Inc.*,
   2016 WL 3365422 (S.D. Ohio June 17, 2016) ..................................10

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)....................................................................passim

*Nat'l Inst. of Fam. & Life Advocs. v. Raoul*,
   685 F. Supp. 3d 688 (N.D. Ill. 2023) .................................................1

*Near v. Minnesota ex rel. Olson*,
   283 U.S. 697 (1931)......................................................................6, 10

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976)..........................................................................10

*Off. of Consumer Advoc. v. Iowa Utils. Bd.*,
   744 N.W.2d 640 (Iowa 2008). .........................................................17

*Pitts v. Farm Bureau Life Ins. Co.*,
   818 N.W.2d 91 (Iowa. 2012) ...........................................................20

*Pro Com., LLC v. K & L Custom Farms, Inc.*,
  870 N.W.2d 273, 2015 WL 2406782 (Iowa. Ct. App. 2015) ....................................7

*Republican Party of Minn. v. White*,
  536 U.S. 765 (2002) ....................................................................................................9

*Rickert v. State Pub. Disclosure Comm'n*,
  168 P.3d 826 (Wash. 2007) .........................................................................................9

*Snyder v. Phelps*,
  562 U.S. 443 (2011) .................................................................................................2, 5

*Spreitzer v. Hawkeye State Bank*,
  779 N.W.2d 726 (Iowa 2009) ...............................................................................14, 18

*Stancik v. CNBC*,
  420 F. Supp. 2d 800 (N.D. Ohio 2006) ....................................................................20

*Susan B. Anthony List v. Driehaus*,
  814 F.3d 466 (6th Cir. 2016) ......................................................................................9

*Sw. Publ'g Co. v. Horsey*,
  230 F.2d 319 (9th Cir. 1956) ....................................................................................14

*Thomas v. Collins*,
  323 U.S. 516 (1945) ..................................................................................................13

*Tumminello v. Bergen Evening Rec., Inc.*,
  454 F. Supp. 1156 (D.N.J. 1978) .............................................................................21

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
  441 F.3d 552 (8th Cir. 2006) ......................................................................................5

*United States v. Alvarez*,
  567 U.S. 709 (2012) ...............................................................................1, 6, 8, 11

*United States v. Kepler*,
  879 F. Supp. 2d 1006 (S.D. Iowa 2011) ..................................................................11

*United States v. Stevens*,
  559 U.S. 460 (2010) ...........................................................................................1, 7, 8

*Van Sickle Const. Co. v. Wachovia Comm. Mortg., Inc.*,
  783 N.W.2d 684 (Iowa 1990) ...................................................................................20

*Wash. League for Increased Transparency & Ethics v. Fox News*,
  2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ..................................................1

*Westchester Cnty. Indep. Party v. Astorino*,
  137 F. Supp. 3d 586 (S.D.N.Y. 2015) ...................................................................7

*Young ex rel. Young v. Rally Appraisal, L.L.C.*,
  928 N.W.2d 660, 2019 WL 1486608 (Iowa Ct. App. 2019) ...................................19

**Statutes**

Iowa Code § 50.48 .......................................................................................................4

Iowa Code § 714.16 ...................................................................................................16

Iowa Code § 714H.2 ......................................................................................15, 16, 17

Iowa Code § 714H.3 ..........................................................................5, 12, 15, 17

Iowa Code § 714H.5 ...................................................................................................16

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ...................................................................11

Merriam-Webster Dictionary ....................................................................................17

Restatement (Second) of Torts § 522 ........................................................................20

Restatement (Second) of Torts § 525 ..................................................................11, 12

Restatement (Second) of Torts § 548A .....................................................................15

William L. Prosser, *Handbook of the Law of Torts* § 105 (4th ed. 1971) .....................11

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................................5

## INTRODUCTION

Plaintiffs' claims are barred by the First Amendment and the Court should dismiss them with prejudice. In the United States there is no such thing as a claim for "fraudulent news." No court in any jurisdiction has ever held such a cause of action might be valid, and few plaintiffs have ever attempted to bring such outlandish claims. Those who have were promptly dismissed. *E.g.*, *Hollander v. CBS News, Inc*., 2017 WL 1957485 (S.D.N.Y. May 10, 2017) (dismissing wire fraud claims based on allegedly false and misleading news stories about candidate Donald Trump) *aff'd but vacated on other grounds sub nom. Hollander v. Garrett*, 710 Fed. Appx. 35 (2d Cir. 2018); *Wash. League for Increased Transparency & Ethics v. Fox News*, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) (affirming dismissal of claims under the Washington Consumer Protection Act against Fox News for allegedly false reporting about COVID-19); *cf. Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688, 695 (N.D. Ill. 2023) (enjoining application of Illinois Consumer Fraud Act to anti-abortion advocacy as "both stupid and very likely unconstitutional").

There is good reason for this. History's judgment repudiated the 1798 Sedition Act which prohibited "false, scandalous and malicious … writings against the government of the United States" or its president, and that fraught episode "first crystallized a national awareness of the central meaning of the First Amendment." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964). Since then, courts at all levels have confirmed our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *id.* at 270, holding that speech is presumptively protected unless it falls within one of a few limited and narrowly defined categories. *United States v. Stevens*, 559 U.S. 460, 468–70 (2010). Those categories do not include a general exception for "false speech," *United States v. Alvarez*, 567 U.S. 709, 722 (2012).

Plaintiffs seek to illegitimately expand them to include "fake news," a tag line that may play well for some on the campaign trail but has no place in America's constitutional jurisprudence. In this regard, civil damages, no less than criminal sanctions, cannot lie against protected speech. *Snyder v. Phelps*, 562 U.S. 443 (2011); *Sullivan*, 376 U.S. at 277.

Even if such a cause of action existed, the Amended Complaint is fatally flawed on every level: Plaintiffs fail at the threshold to allege any recoverable damages, and do not state plausible claims, either on the law or on the facts as alleged. No court has ever accepted claims like these, and this Court should not be the first.

## ALLEGATIONS IN PLAINTIFFS' AMENDED COMPLAINT

Defendant J. Ann Selzer is a resident of Des Moines, Iowa, and holds a Ph.D. in Communication Theory and Research from the University of Iowa. (Am. Compl. ¶ 23.) She is the founder and president of Selzer & Company ("Selzer"), which conducts opinion research, including polls. (*Id.* at ¶ 23.) Selzer has been the *Des Moines Register*'s primary pollster for four decades, overseeing all its polls—including its Iowa Poll. (*Id.*)

Selzer's polls have a reputation for consistency and accuracy. (*Id.* at ¶ 36.) In 2016, "Clare Malone of *FiveThirtyEight* described Selzer as 'the best pollster in politics.'" (*Id.*) And "in a June 2024 rating of 25 pollsters, Nate Silver rated Selzer first with an A+ score." (*Id.*) Indeed, Selzer's polls were "regarded as the gold standard nationally and in Iowa." (*Id.* at ¶ 139.)

Pollsters, however, are not seers. Every election has outlier polls, and the results of polls do not always conform to the final election tally. (*See id.* at ¶¶ 70 (news reports describing Selzer's November 2024 poll as an "outlier"), 137.) In 2018, Selzer's final poll of the Iowa gubernatorial race between Democrat Fred Hubbell and Republican Kim Reynolds showed Hubbell up by two points, but Reynolds prevailed by three. (*Id.* at ¶ 39.) In 2020, Selzer's final Senate poll showed

Republican Joni Ernst ahead by four points, and Ernst prevailed by seven. (*Id.* at ¶ 40.) Occasionally, polls miss by larger margins. In 2022, Selzer released a poll the October before the general election for Iowa Attorney General showing Republican Brenna Bird trailing Democratic incumbent Tom Miller by sixteen points, but Bird defeated Miller by two. (*Id.* at ¶ 38.)

The *Des Moines Register* published its final Iowa Poll of the 2024 presidential race on November 2 and 3, 2024. (*Id.* at ¶ 3.)[1] The poll surveyed 808 likely voters in Iowa. (*Id.* at ¶¶ 1, 3.) It showed Plaintiff Donald J. Trump trailing Kamala Harris by three points. (*Id.* at ¶ 2.) It also asked whether respondents preferred a Republican or Democrat in their congressional race. (*Id.* at ¶ 1.) In Iowa's First Congressional District, where incumbent Congresswoman Plaintiff Mariannette Miller-Meeks faced former state representative Democrat Christina Bohannan, the "Republican Party" response trailed the "Democratic Party" option by sixteen points. (*Id.* at ¶ 84.) The poll results were surprising because Selzer's preceding polls showed Mr. Trump leading the race, and other contemporaneous polls showed him with a seven- to nine-point lead. (*Id.* at ¶¶ 53, 56.) The *Des Moines Register* published Selzer's methodology along with a detailed analysis of the poll which compared the latest results to previous polls. (*Id.* at ¶¶ 1, 3.)

Mr. Trump and other Republicans immediately disputed the poll's results. The same day Selzer released the poll, *PollFair* "reweighted" the poll with its own metrics and calculated Mr. Trump leading Iowa by six points. (*Id.* at ¶ 75.) Ultimately, President Trump won Iowa by thirteen points, and Miller-Meeks won by two-tenths of a point—meaning the poll was approximately sixteen points off from the election results in both races. (*Id.* at ¶ 4.)

---

[1] Brianne Pfannenstiel, *Iowa Poll: Kamala Harris Leapfrogs Donald Trump to Take Lead Near Election Day. Here's How*, Des Moines Reg. (Nov. 2, 2024, 6:01PM), https://www.desmoinesregister.com/story/news/politics/iowa-poll/2024/11/02/iowa-poll-kamala-harris-leads-donald-trump-2024-presidential-race/75354033007 (last updated Nov. 7, 2024), *archived at* https://archive.is/UqdGz. Because the article releasing the poll is central to Plaintiffs' claims, the Court may consider its contents on a motion to dismiss. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014).

Winning, however, wasn't enough for Mr. Trump or Ms. Miller-Meeks. Joined by Defendant Bradley Zaun, an Iowa state senator who lost his re-election bid (but whose race Selzer did not poll), they sued Ms. Selzer, Selzer & Company, and the *Des Moines Register* and its parent, Gannett. Plaintiffs allege the final 2024 Iowa Poll was "fake" and sought to foster enthusiasm for Democrats. (*Id.* at ¶¶ 19, 81.) Selzer denies these conspiracies, but must treat them as true herein.

Mr. Trump and Ms. Miller-Meeks allege their campaigns "expend[ed] extensive time and resources to mitigate and counteract the harms" of the Iowa Poll, though they do not allege what those resources or expenditures were. (*Id.* at ¶¶ 131–32.) Rep. Miller-Meeks alleges her close race triggered a "costly recount." (*Id.* at ¶ 91.) Under Iowa law, the State of Iowa—not Rep. Miller-Meeks or her campaign—paid for the recount. Iowa Code § 50.48(2)(a). Mr. Zaun, who lost his state senate seat to Democrat Matt Blake by four points, alleges Blake's victory "upon information and belief [was] fueled by momentum from" the Iowa Poll. (*Id.* at ¶ 101.) Plaintiffs also allege the poll "deceived Iowans who contributed to their campaigns." (*Id.* at ¶¶ 117–18.)

Mr. Trump filed this action in Iowa state court on December 16, 2024, raising one claim under the Iowa Consumer Fraud Act. Gannett removed the case to this Court based on diversity jurisdiction. (*Id.* at ¶ 28.) On January 31, 2025, Mr. Trump filed an Amended Complaint, which added Ms. Miller-Meeks and Mr. Zaun as plaintiffs as well as common law claims for fraudulent and negligent misrepresentation. This motion followed.

## LEGAL STANDARD

Plaintiffs' Amended Complaint fails because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). While this Court must draw reasonable inferences in Plaintiffs' favor, it is "free to ignore legal conclusions, unsupported conclusions, unwarranted

inferences, and sweeping legal conclusions cast in the form of factual allegations." *Monson v. DEA*, 589 F.3d 952, 961 (8th Cir. 2009) (quotation omitted).

Plaintiffs' fraud claims face a heightened pleading standard under Rule 9(b). *See E-Shops Corp v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement applies to statutory fraud claims.") Plaintiffs "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b), including, "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

## ARGUMENT

### I.    The First Amendment Bars Plaintiffs' Claims.

This Court need not even address the elements of Plaintiffs' claims because the First Amendment bars the action. It is a transparent attempt to punish news coverage and analysis of a political campaign, speech that not only is presumptively protected but "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 451–52 (quotation omitted). Given the obvious affront to basic constitutional values, Plaintiffs try to change to subject by framing their claims around a state consumer protection law applicable to misrepresentations "in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1). Undaunted by the poor fit between commercial transactions and speech on public affairs, Plaintiffs try to pound their square peg into a round hole without any attempt to reconcile the constitutional mismatch. But as the Supreme Court has made clear, "simply labeling an action one for 'fraud' … will not carry the day." *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617 (2003).

Plaintiffs are hardly the first to use artful pleading seeking to evade the First Amendment, and courts are adept at seeing through such artifice. Even at the dawn of modern First Amendment jurisprudence, the Supreme Court recognized government could not suppress a "malicious, scandalous and defamatory newspaper" simply by labeling it a "public nuisance." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 706–08, 720 (1931) ("Characterizing the publication as a business, and the business as a nuisance, does not permit an invasion of the constitutional immunity against restraint.") The Court similarly barred another demagogue—Governor Huey Long—from imposing a "tax on lying" on big city newspapers that criticized him. *Grosjean v. American Press Co.*, 297 U.S. 233, 245–50 (1936). *See Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 579–80 (1983) (Long denounced "'lying newspapers' as conducting 'a vicious campaign' and the tax as 'a tax on lying'"). In *New York Times v. Sullivan*, the Court barred segregationists from using defamation law as a tool to cripple the civil rights movement, giving no weight "to the epithet 'libel' than … to other 'mere labels' of state law." 376 U.S. at 268–69 (citation omitted). The Amended Complaint fits squarely within this rogue's gallery.

### A.    Plaintiffs Illegitimately Seek to Create a New First Amendment Exception.

Mr. Trump and his co-plaintiffs assume "false news" falls outside the First Amendment's protection, but over 200 years of American free speech law and practice prove otherwise. "Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth—whether administered by judges, juries, or administrative officials—and especially one that puts the burden of proving truth on the speaker." *Id.* at 271. As the Supreme Court recently explained, "[o]ur constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *Alvarez*, 567 U.S. at 723.

"From 1791 to the present, … the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never include[d] a freedom to disregard these

traditional limitations." *Stevens*, 559 U.S. at 468 (cleaned up). These "historic and traditional categories long familiar to the bar" include obscenity, child pornography, defamation, fraud, incitement, fighting words, and speech integral to criminal activity. *Id*. (cleaned up) (collecting cases). Former Justice Souter observed that "[r]eviewing speech regulations under fairly strict categorical rules keeps the starch in the standards for those moments when the daily politics cries loudest for limiting what may be said." *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 774 (1996) (Souter, J., concurring). Consequently, the Court steadfastly resists efforts to increase or expand the boundaries of these categories as "startling and dangerous" and has rejected any "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Stevens*, 559 U.S. at 470, 472.

Plaintiffs try to shoehorn their claims into an existing category by calling the Iowa Poll "fake" and asserting actionable "fraud" occurred. But "in the famous words of Inigo Montoya from the movie *The Princess Bride*, 'You keep using that word. I do not think it means what you think it means.'" *Pro Com., LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273, 2015 WL 2406782, at *5 n.3 (Iowa. Ct. App. 2015) (table). As a matter of basic law, Plaintiffs' allegations about polls and news stories they dislike have nothing to do with fraud. *See infra* Section I.B. They also sprinkle the complaint with loose talk of "election interference," (Am. Compl. ¶¶ 1, 3, 39, 62, 72), although they stop short of including a separate claim on that basis, perhaps out of awareness that "no court has held that a scheme to rig an election itself constitutes money or property fraud." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 604 (S.D.N.Y. 2015).

Categories of unprotected speech are defined by precise legal tests, and Plaintiffs cannot stretch those boundaries to serve a political narrative. The Supreme Court routinely rejects attempts to broaden those limits based on assertions that the speech at issue is somehow "like" a

recognized exception. *See*, *e.g.*, *Stevens*, 559 U.S. at 470–71 (Other "descriptions are just that—descriptive. They do not set forth a test that may be applied as a general matter …."); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 793–96 (2011) (rejecting "attempt to shoehorn speech about violence into obscenity," citing a lack of "longstanding tradition in this country" restricting such speech); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 55–56 (1988) (rejecting bid to leave "outrageous" speech unprotected because it "does not seem to us to be governed by any exception to the … First Amendment"); *Alvarez*, 567 U.S. at 721–22 ("The Government has not demonstrated that false statements … should constitute a new category of unprotected speech" based on a "tradition of proscription.") (quotation omitted).

Because the categories are governed by history and tradition, the Plaintiffs could not have chosen a *worse* candidate for inclusion than "fake news." America's first experience with prohibiting false news—the Sedition Act of 1798—expired under its own terms, and all fines assessed under that misbegotten law were remitted. President Thomas Jefferson denounced it as an unconstitutional "nullity, as absolute and palpable as if Congress had ordered us to fall down and worship a golden image." *Sullivan*, 376 U.S. at 272–76. While the Supreme Court never adjudicated the Sedition Act's attempt to punish "false" writings about public officials, "the attack upon its validity has carried the day in the court of history," defined "the central meaning of the First Amendment," *id.*, and conditioned "the fabric of jurisprudence woven across the years," *Commonwealth v. Lucas*, 34 N.E.3d 1242, 1253 (Mass. 2015).

Plaintiffs' quest to punish "fake news" not only ignores this history, it also fumbles the conceptual basis for unprotected speech categories, which the Court first described as speech "of slight social value." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). Here, Plaintiffs seek

to create a new First Amendment exception for speech that has always received the *highest* level of constitutional protection—political speech and commentary. In a word, it just doesn't fit.

The Supreme Court has repeatedly reaffirmed that the First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (citation omitted). Speech about the political process is "at the core of our First Amendment freedoms," *Republican Party of Minn. v. White*, 536 U.S. 765, 774 (2002), because a "major purpose" of the First Amendment was to protect "free discussion of … candidates." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). Accordingly, the "First Amendment affords the broadest protection" to "[d]iscussion of public issues and debate on" the political process. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (citation omitted). Political polling is "speech protected by the First Amendment" both because it "requires a discussion between pollster and voter" and the resulting poll itself "is speech." *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988).

The First Amendment accords speech in this area wide berth because "erroneous statement[s] [are] inevitable in free debate, and [they] must be protected if the freedoms of expression are to have the breathing space that they need to survive." *Sullivan*, 376 U.S. at 271–72 (cleaned up). Efforts to regulate "truth" in political commentary are thus presumptively unconstitutional and subject to strict scrutiny. *See 281 Care Comm. v. Arneson*, 766 F.3d 774, 784-85 (8th Cir. 2014) (invalidating Minnesota law prohibiting knowingly false statements on ballot measures); *Grimmett v. Freeman*, 59 F.4th 689, 692 (4th Cir. 2023) (invalidating North Carolina statute prohibiting false statements about candidates "knowing such report to be false or in reckless disregard of its truth or falsity"); *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 476 (6th Cir. 2016) (invalidating Ohio law prohibiting knowingly false statements about candidates); *Lucas*, 34

N.E.3d at 1253 (invalidating Massachusetts law prohibiting false statements about candidates and ballot measures); *Rickert v. State Pub. Disclosure Comm'n*, 168 P.3d 826 (Wash. 2007) (en banc) (invalidating Washington law prohibiting false statements of material fact about political candidates). Bottom line, political polls and news reports are not the stuff of which First Amendment exceptions are made.

Beyond that, Plaintiffs compound the constitutional problem by asking this Court for an injunction to prevent the publication of "any further deceptive polls." (Am. Compl. ¶ 134.) Such an order is a classic prior restraint—"the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and "the essence of censorship." *Near*, 283 U.S. at 713. As a matter of basic law, this Court cannot censor future speech because of Plaintiffs' hunch it will be "deceptive." *See, e.g.*, *Cognitest Corp. v. Riverside Publ'g Co.*, 1995 WL 382984, at *2 (N.D. Ill. June 22, 1995) (granting Rule 12(b)(6) dismissal of request "to enjoin future, as yet unspoken and unidentified speech which the plaintiffs assert will be false if spoken."); *Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, 2016 WL 3365422, at *8 (S.D. Ohio June 17, 2016) (granting Rule 12(b)(6) dismissal of request for an order prohibiting defendants from future statements, noting "it operates as an unconstitutional prior restraint on speech"). Plaintiffs do not allege any legal basis for a prior restraint.

### B.    Plaintiffs Cannot Plead Around the First Amendment by Alleging Fraud.

Plaintiffs wield the terms "election interference" and "fraud" like an alchemist's incantation, hoping to transform their political dross into legal gold. But no amount of vacuous repetition can convert their expansive concept of "fake news" to the very limited and specific *legal* concept of fraud. The Supreme Court has made clear that slapping the "fraud" label on a claim cannot satisfy the specific showing required or extinguish the First Amendment. *Madigan*, 538

U.S. at 617. Fraud has "exacting" requirements in order "to provide sufficient breathing room for protected speech," so a "[f]alse statement alone" cannot trigger liability. *Id.* at 620.

Plaintiffs' lawsuit simply misunderstands fraud. Fraud is "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud*, Black's Law Dictionary (12th ed. 2024). Fraud requires not just a false statement, but one made by the defendant in the context of persuading the plaintiff to "part[] with money, or property of value in reliance upon the defendant's representations." William L. Prosser, *Handbook of the Law of Torts* § 105, at 684 (4th ed. 1971); *see Alvarez*, 567 U.S. at 722–23 (distinguishing false statements generally from fraud, which is designed to "secure moneys or other valuable considerations, [like] offers of employment"). The classic example of fraud is a crooked used-car salesman rolling back an odometer. *See* Restatement (Second) of Torts § 525, cmt.b, illus. 1.

Plaintiffs allege no representations by Selzer for the purpose of inducing them into a transaction. Instead, Plaintiffs skip (several) steps. They allege Selzer made false statements and tack on conclusory allegations that Plaintiffs later "relied on" and were "damaged" by the statements. Even accepting such unspecific allegations as true, *that's not fraud*. There is no transactional nexus between the parties and no purpose by Selzer to induce Plaintiffs into doing anything. Being wrong (even intentionally) does not become fraud when someone listens and acts.

This Court illustrated the difference between falsity and fraud in *United States v. Kepler*, where it rejected the argument that a statute prohibiting false claims of receiving Army medals could survive First Amendment scrutiny through the "fraud" exception. 879 F. Supp. 2d 1006, 1012 (S.D. Iowa 2011). The Court explained "fraud is not mere lying," because lying, by itself, "lacks an essential element of a fraud claim: proof of detrimental reliance or actual harm to the plaintiff." *Id.* at 1009 n. 1 (citing *Madigan*, 538 U.S. at 620–21).

The elements of Plaintiffs' fraud claims reflect these commonsense boundaries. To state a claim under the Iowa Consumer Fraud Act ("ICFA"), Plaintiffs must allege a false statement "of a material fact, with the intent that others rely upon [it], … in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1). Similarly, fraudulent misrepresentation covers only those situations where a defendant "fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it." *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906, 909 (Iowa 1990) (quoting Restatement (Second) of Torts § 525). Both claims require a false statement from the defendant about a critical aspect of a proposed transaction *for the purpose of* inducing the plaintiff to enter that transaction. That is what fraud is and what Plaintiffs' "false news" claims against Selzer lack, both conceptually and in the pled facts, as described in Section II below.

### C.    Plaintiffs' Theory of Liability Would Eviscerate the First Amendment.

No court has ever adopted Plaintiffs' extraordinary theory of liability for "false news" because it has no limiting principle. Admittedly, it required casting a wide net to find litigants even proposing a similar theory, but those claims have uniformly failed. For example, the Southern District of Florida, affirmed by the Eleventh Circuit, rejected a "novel and unprecedented expansion of the scope of tort law" seeking to hold the Weather Channel liable for damage caused by an incorrect forecast. *Brandt v. Weather Channel, Inc.*, 42 F. Supp. 2d 1344, 1345–46 (S.D. Fla.), *aff'd*, 204 F.3d 1123 (11th Cir. 1999)).

The court explained the plaintiffs' theory contravened core First Amendment principles and declined, as a matter of law, to impose a "forecaster's duty." *Id.* at 1346. "If the court were to impose such a duty … [it] could extend to farmers who plant their crops based on a forecast of no rain, construction workers who pour concrete or lay foundation based on the forecast of dry weather, or families who go to the beach for a week based on a forecast of sunny weather." *Id.* Just

as with the election coverage here, "[p]redicting possible future events whose outcome is uncertain is not an exact science for which a [publisher] should be held liable." *Id*.

Similarly, the Eastern District of New York rejected an attempt to contort the elements of fraud against protected speech. *Demuth Dev. Corp. v. Merck & Co.*, 432 F. Supp. 990 (E.D.N.Y. 1977). *Demuth* involved a "novel claim" against chemical encyclopedia publisher Merck for "willful misrepresentation" of the toxicity of a chemical used in Demuth's equipment that it alleged scared away purchasers. *Id.* at 991. The court explained Demuth could not "point to any relationship of the parties, arising out of contract or otherwise, which in morals or good conscience, placed Merck under any duty towards plaintiff or its business." *Id.* at 993 (quotation marks omitted). The court held "Merck's right to publish free of fear of liability is guaranteed by the First Amendment, and the overriding societal interest in the untrammeled dissemination of knowledge." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)).

"Fraud" does not exist when someone believes dishonest behavior took place and they lost money. If it did, courthouses would overflow on Monday mornings with claims against National Football League referees. Especially in debate over public affairs, "every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us." *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring).

America's history and tradition protects political commentary; it does not subject "false" reports to liability. Plaintiffs' claims are barred by the First Amendment.

## II.    **Plaintiffs' Claims Are Facially Deficient.**

### A.    **Plaintiffs Fail to Allege Recoverable Damages.**

Even if the First Amendment did not bar Plaintiffs' claims, each claim fails at the starting gate because Plaintiffs do not plead legally cognizable damages. *See Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 630 (8th Cir. 1999) (damages are an "essential element" of a tort claim). First, stating

the obvious: President Trump and Congresswoman Miller-Meeks won their elections, and Selzer did not poll Mr. Zaun's race *at all*. Plaintiffs' attempt to plead monetary damage rests on vague allegations of harm to nonparties and violates core principles of causation.

Mr. Trump and Ms. Miller-Meeks allege that, as candidates, they "expend[ed] extensive time and resources," including "direct federal campaign expenditures" to "counteract the harms" of the Iowa Poll.[2] But they filed this lawsuit in their personal capacities, and the Supreme Court has made clear that a campaign is "a legal entity distinct from the candidate." *FEC v. Cruz*, 596 U.S. 289, 294 (2022). Mr. Trump and Ms. Miller-Meeks allege no cognizable harm to them *as individuals* from the Iowa Poll, so they have not plead the element of damages.

Mr. Zaun's claims are even more implausible (if that is possible). Mr. Zaun alleges he "sustained actual damages due to the loss of his Senate seat." (Am. Compl. ¶ 133.) Mr. Zaun does not explain what those damages are, nor does he explain how he could have suffered financial damage from a poll *that did not mention him or poll his race*. Even if he had offered some explanation, there's no causation for damages consisting of losing elections. "Federal courts do not sit to award post-election damages to defeated candidates." *Hutchinson v. Miller*, 797 F.2d 1279, 1287–88 (4th Cir. 1986); *see also Sw. Publ'g Co. v. Horsey*, 230 F.2d 319, 322–23 (9th Cir. 1956) (holding "loss of an election" damages are "speculative and conjectural" because "there may be not less than a thousand factors which enter into the vagaries of an election").

Plaintiffs' Amended Complaint also does not support legally cognizable causation between the Iowa Poll and the alleged damages. For fraud to be the legal cause of Plaintiffs' damages, their loss must "connect[] to the misrepresentation in a way to which the law attaches legal

---

[2] (Am. Compl. ¶¶ 131–132; *see also id.* at ¶¶ 13, 15 [harm to "their Campaigns and affiliated entities"]; ¶ 18 [action brought to redress harm "to the Trump 2024 Campaign, to Representative Miller-Meeks' Campaign, to Zaun's Campaign, and to millions of citizens in Iowa and across America"].).

significance." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 740 (Iowa 2009) (citing Restatement (Second) of Torts § 548A, cmt. a). Relying on statements by a speaker who (1) did not direct them to the complaining party and (2) made them for a purpose unrelated to the alleged damages is not a connection with a legal significance. *See, e.g.*, *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 91–92 (2d Cir. 2018) (third-party reliance on a statement being merely "foreseeable" is insufficient because it would trigger "boundless liability"). Plaintiffs can no more sue a newspaper pollster for diverted resources than a farmer could sue a TV weatherman for crop damage due to unexpected frost. *Brandt*, 42 F. Supp. 2d at 1345–46.

The remaining "damages" Plaintiffs assert are not cognizable. Plaintiffs allege "millions of Americans … were lied to, deceived, and maligned by" the Iowa Poll. (Am. Compl. ¶ 13.) But courts are not "a vehicle for the vindication of the value interests of concerned bystanders." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citation omitted). Plaintiffs feeling "deceived," "lied to," and "maligned" by a poll are not cognizable damages because, as explained above, even intentionally false statements, without more, do not provide a basis for liability. *See also* Iowa Code § 714H.2(1) ("[a]ctual damages" must be ascertainable amounts and do not include "mental distress".) A plaintiff still must adequately allege a cognizable cause of action. *Madigan*, 538 U.S. at 620. Plaintiffs have not.

**B.    Plaintiffs Fail to State a Claim Under the ICFA.**

1.    <u>Plaintiffs do not have a claim under the ICFA because they allege no actual or contemplated transaction between them and Selzer.</u>

Plaintiffs have no claim under the ICFA against Selzer because they do not allege that they purchased or leased anything from Selzer. The ICFA is a consumer fraud statute designed to protect Iowa consumers deceived into buying or leasing a product. It provides a cause of action for victims of "deception" and "fraud" "in connection with the advertisement, sale, or lease of

consumer merchandise." Iowa Code § 714H.3. And it allows consumers to recover damages if they suffer an "ascertainable loss of money or property as the result" of that deception or fraud. Iowa Code § 714H.5(1). Plaintiffs allege no "fraud" or "deception" to induce them into a transaction with Selzer, nor do they allege any "ascertainable loss of money or property." And Plaintiffs' Amended Complaint identifies no instance of the ICFA ever being applied to a context other than actual or attempted contractual privity between a seller/lessor and a consumer.

2.    <u>Plaintiffs cannot invoke the ICFA, which covers only "consumer merchandise" bought or leased for "personal purposes."</u>

The Court should also dismiss Plaintiffs' ICFA claim based on the statute's unambiguous text. When interpreting state statues, federal courts "appl[y] that state's rules of statutory construction." *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). "The first step in ascertaining the true intent of the legislature is to look at the statute's language." *Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011) (citation omitted). When that "language is plain and unambiguous, [courts] will look no further." *Id.* The ICFA's plain text forecloses Plaintiffs' ICFA claim against Selzer.[3]

First, Plaintiffs do not allege Selzer sold or leased anything to them. And the ICFA defines "advertisement" as "the attempt by publication, dissemination, solicitation, or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." Iowa Code § 714H.2(2) (citing and incorporating Iowa Code § 714.16(1)(a)). The Iowa Poll offered and induced no obligation or transaction; *it's an opinion poll.* It did nothing more

---

[3] By its plain terms, the ICFA applies to commercial transactions, not political commentary. Plaintiffs' attempt to extend the law outside its traditional context renders it unconstitutional as applied because it would reach political speech and news coverage the speaker "reasonably should know" are false. *Sullivan*, 376 U.S. at 288 (evidence of negligently false speech is constitutionally insufficient); *Bertrand v. Mullin*, 846 N.W.2d 884, 894 (Iowa 2014) (same).

16

than explain its view on which candidates were leading and set out its methodology for how it arrived at that opinion. (Am. Compl. ¶¶ 1, 3.) The Iowa Poll is textually outside the ICFA's scope.

Second, a political opinion poll of the Iowa electorate is not "consumer merchandise." Under Iowa law, "courts generally presume words contained in a statute or rule are used in their ordinary and usual sense with the meaning commonly attributed to them." *Off. of Consumer Advoc. v. Iowa Utils. Bd.*, 744 N.W.2d 640, 643 (Iowa 2008). And in the ICFA, "consumer merchandise" is "merchandise offered for sale or lease, or sold or leased, *primarily for personal, family, or household purposes*." Iowa Code § 714H.2(4) (emphasis added). Merriam-Webster defines the possessory form of "personal" as "intended for private use or use by one person." It defines "family" as "the basic unit in society traditionally consisting of two parents rearing their children." And "household" means "those who dwell under the same roof and compose a family."[4] Bars of soap and minivans—purchases everyday Iowans make while taking care of themselves and their families—are "consumer merchandise." Any logical and plain reading of the ICFA shows a comprehensive opinion poll of the Iowa electorate intended for general publication is not "merchandise" "primarily for personal, family, or household purposes." *See Butts v. Iowa Health Sys.*, 863 N.W.2d 36, 2015 WL 1046119, at *8 (Iowa Ct. App. 2015) (table) (ICFA does not apply when defendant "does not offer or sell consumer merchandise").

Finally, the Iowa Poll did not "relate[] to a material fact or facts" in an advertisement, sale, or lease. Iowa Code § 714H.3(1). Under the ICFA, it is not enough to allege a "deceptive" or "fraudulent" representation generally. Instead, a plaintiff "must prove that the prohibited practice related to a material fact" conveyed "in connection with the advertisement, sale, or lease of

---

[4] *Personal*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/personal (updated Feb. 20, 2025); *Family*, https://www.merriam-webster.com/dictionary/family (updated Feb. 20, 2025); *Household*, https://www.merriam-webster.com/dictionary/household (updated Feb. 20, 2025).

merchandise." *Id.* The representation Plaintiffs rely upon is the polling results. But those results are not, and do not relate to, "a material fact or facts" in an advertisement, sale, or lease. Material facts in consumer transactions are representations about facts like price, use restrictions, a car's gas mileage, or bedding thread count. Not only is the poll not a representation in connection with an advertisement or sale/lease, but it plays no role as a material fact in a representation. Plaintiffs' ICFA claim is misplaced: it is not a consumer fraud claim, and this Court should dismiss it.

### C.    Plaintiffs Fail to State a Claim for Fraudulent Misrepresentation.

Plaintiffs' allegations likewise cannot support a common law claim for fraudulent misrepresentation. For such a claim, "a plaintiff must prove (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001). Even crediting Plaintiffs' allegations and conspiracies as true, they don't even satisfy half the elements.

First, as explained in Section I.B, Plaintiffs butcher the concept of fraud. Representations, falsity, reliance, scienter, and damages are components of a claim arising in a situation where a defendant lies to induce a plaintiff into a transaction to the plaintiff's detriment. Here, Selzer made no actionable representation "to the Plaintiffs." And Plaintiffs have not alleged the Iowa Poll was "material" to an inducement directed to Plaintiffs by Selzer. Plaintiffs similarly do not allege Selzer intended to induce them into a transaction. Nor, as explained in Section II.A, do they allege cognizable damages. Plaintiffs thus fail to even plead elements (1), (3), (5), (7), or (8).

Plaintiffs also fail to plead element (6), justifiable reliance. In Iowa, the "justifiable-reliance standard does not mean a plaintiff can blindly rely on a representation." *Spreitzer*, 779

N.W.2d at 737. Rather, "[a] person may not justifiably rely on a professional representation if 'red flags' signal such reliance is unwarranted." *Young ex rel. Young v. Rally Appraisal, L.L.C.*, 928 N.W.2d 660, 2019 WL 1486608, at *4 (Iowa Ct. App. 2019) (table). Here, according to Plaintiffs, the Iowa Poll defied "common sense, electoral history, [and] all other public polls." (Am. Compl. ¶ 60.) They allege media coverage identified the poll as an "outlier." (*Id.* at ¶ 70.) Plaintiffs also allege Selzer had a history of undercounting Republican support. (*Id.* at ¶¶ 36–40.) And Plaintiffs allege that "any responsible pollster or journalist with experience in Iowa politics would recognize the clear inaccuracy of" the poll. (*Id.* at ¶ 140.) In short, so desperate to spike the football regarding Selzer's polling inaccuracies, Plaintiffs aggressively concede the element of reliance.

Moreover, in contrast to their repetitive allegations that everyone with experience in Iowa politics recognized the poll as an unreliable outlier, Plaintiffs assert (remarkably) that they "justifiably relied on" the polls. (*Id.* at ¶ 143.) That allegation is both conclusory and contradicted by Plaintiffs' *actual* allegations. "Parties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim of justifiable reliance,'" and "[c]onclusory allegations that a plaintiff detrimentally relied on" representations do not provide "sufficient factual matter to state a claim of relief plausible on its face." *Ambassador Press, Inc. v. Durst Image Techn. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) (citation omitted). As Plaintiffs fail to adequately allege six out of the eight elements of fraudulent misrepresentation, the Court should dismiss the claim.

### D.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation.

The same infirmities infecting Plaintiffs' fraudulent misrepresentation claim undermine their negligent misrepresentation claim. In Iowa, plaintiffs asserting negligent misrepresentation must establish: "(1) the defendant was in the business or profession of supplying information to others; (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff; (3) the information was false; (4) the defendant knew or

reasonably should have known that the information was false; (5) the plaintiff reasonably relied on the information in the transaction that the defendant intended the information to influence; (6) and the false information was the proximate cause of damage to the plaintiff." *Doe v. Grinnell Coll.*, 473 F. Supp. 3d 909, 937 (S.D. Iowa. 2019) (citation omitted).

When, as here, a plaintiff's claim involves only "intangible economic interests," it is subject to "more restrictive rules of recovery." *Id.* (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111 (Iowa 2012)). That is due to "the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of losses which may follow from reliance on it." *Van Sickle Const. Co. v. Wachovia Comm. Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 1990) (quoting Restatement (Second) of Torts § 522 cmt. a). It is not enough to allege Selzer's awareness that the poll might reach Plaintiffs and influence them. Instead, recovery is limited to "the person or one of a limited group of persons whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." *Id.* at 691. In short, Plaintiffs must allege a cognizable legal duty by Selzer to supply *Plaintiffs* with accurate information. *Id.*

But Selzer owed Plaintiffs no legal duty. As the Fifth Circuit explained: "If a newspaper prints incorrect information, if a scientist publishes careless statements in a treatise, or if an oil company prints an inaccurate road map, they cannot be 'liable' to those of the general public who read their works absent some special relationship between [the] writer and reader." *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 148 (5th Cir. 1971); *see also Stancik v. CNBC*, 420 F. Supp. 2d 800, 808 (N.D. Ohio 2006) ("News broadcasters do not owe the general public a heightened duty of care."); *Brandt*, 42 F. Supp. 2d at 1345–46 (refusing to "impose on a television broadcaster of weather forecasts a general duty to viewers"). As another federal court explained, "accuracy in news reporting is certainly a desideratum, but the chilling effect of imposing a high

duty of care on those in the business of news dissemination and making that duty run to a wide range of readers or TV viewers would have a chilling effect which is unacceptable under our Constitution." *Tumminello v. Bergen Evening Rec., Inc.*, 454 F. Supp. 1156, 1159–60 (D.N.J. 1978). Without duty, there is no negligence. And the First Amendment bars states from imposing a common law duty on news suppliers to "get it right." *See Sullivan*, 376 U.S. at 288; *Bertrand v. Mullin*, 846 N.W.2d 884, 894 (Iowa 2014).

Plus, Plaintiffs do not allege Selzer "intended to supply information" *to* Plaintiffs or knew any recipients intended to supply it to them (element (2)). Similarly, Plaintiffs do not allege Selzer intended to influence their decision-making, nor do they allege adequate facts supporting justifiable reliance (element (5)). The claim is facially and constitutionally deficient.

### III.    The Court Should Dismiss Claims Against Ms. Selzer as an Individual.

The Court should dismiss Plaintiffs' claims against Ms. Selzer as an individual because Plaintiffs do not allege sufficient facts to pierce the corporate veil between Selzer & Company and Ms. Selzer. *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) ("[T]ypically, a corporate entity and its owners are separate and distinct.") Plaintiffs "bear the burden of proving that exceptional circumstances exist which warrant piercing the corporate veil." *C. Mac. Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 598 (Iowa 1987). Such circumstances may exist "where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Id.* at 597 (citation omitted). Here, Plaintiffs do not allege any of the exceptions apply, much less facts supporting an exception. The Court should dismiss the claims against Ms. Selzer individually.

### CONCLUSION

Defendants J. Ann Selzer and Selzer & Company respectfully request this Court grant their motion to dismiss Plaintiffs' claims with prejudice and request oral argument on the motion.

Dated: February 21, 2025

Respectfully Submitted,

/s/ *Robert Corn-Revere*                          .
Robert Corn-Revere*†
   (DC Bar No. 375415)
Conor T. Fitzpatrick*
   (Mich. Bar No. P78981)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
700 Pennsylvania Ave., SE; Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org
conor.fitzpatrick@thefire.org

Greg Greubel
   (Iowa Bar No. AT0015474)
Adam Steinbaugh*
   (Cal. Bar No. 304829)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
adam@thefire.org

Matthew A. McGuire
   (Iowa Bar No. AT0011932)
NYEMASTER GOODE, P.C.
700 Walnut St., Suite 1300
Des Moines, IA 50309
(515) 283-8014
mmcguire@nyemaster.com

*Attorneys for Defendants J. Ann Selzer and Selzer & Company*

* *Admitted pro hac vice.*
† *Lead counsel*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing document was served upon all parties of record through the Court's CM/ECF electronic filing system, with copies sent to the below-named individuals by electronic mail on February 21, 2025.

/s/ *Robert Corn-Revere*

Copy to:

EDWARD ANDREW PALTZIK
Bochner PLLC
1040 Avenue of the Americas
15th Floor
New York, NY 10018
(516) 526-0341
edward@bochner.law

ALAN R. OSTERGREN
Attorney at Law
Alan R. Ostergren, PC
500 East Court Avenue Suite 420
Des Moines, Iowa 50309
(515) 297-0134
alan.ostergren@ostergrenlaw.com

*Attorneys for Plaintiffs*