**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

*President Donald J. Trump, et al.*

*v.*  Civil Case No. 4:24-cv-449-RGE-WPK

*J. Ann Selzer, et al.*

# AMICUS BRIEF OF THE
# CENTER FOR AMERICAN RIGHTS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ---------------------------------------------------------------------------- 2
INTEREST OF AMICUS ------------------------------------------------------------------------------- 3
INTRODUCTION --------------------------------------------------------------------------------------- 3
ARGUMENT --------------------------------------------------------------------------------------------- 4
CONCLUSION ------------------------------------------------------------------------------------------ 8

## TABLE OF AUTHORITIES

CASES

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) --------------------------------- 3
*Cincinnati v. Discovery Network*, 507 U.S. 410, 423 (1993) ---------------------------------------- 4
*Daniel v. Dow Jones & Co.*, 137 Misc. 2d 94, 101 (N.Y. Cty. Civ. Ct. 1987) ------------------------ 7
*Daniele v. ABC*, 2011 U.S. Dist. LEXIS 81273, *6 (D.N.J. July 26, 2011) --------------------------- 7
*District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) ------------------------------------------- 3
*First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 259 (S.D.N.Y. 1988) (Mukasey, J.) ---------------------------------------------------------------------------------- 6
*Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) ------------------------------------------------------ 7
*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ------------------------------------------------ 4, 7
*Gutter v. Dow Jones*, 22 Ohio St. 3d 286, 287 (1987) ---------------------------------------------- 6
*Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 685 (1969) -------------------------------------- 8
*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) ------------------------------------------ 9
*IBEW v. NLRB*, 341 U.S. 694, 705 (1951) ----------------------------------------------------------- 4
*Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 612 (2003) -------------- 4
*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) --------------------------------------- 7
*Langworthy v. Pulitzer Pub. Co.*, 368 S.W. 2d 385, 390 (Mo. 1963) -------------------------------- 6
*Miller v. California*, 413 U.S. 15, 36 (1973) -------------------------------------------------------- 3
*New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) -------------------------------------- 4, 8
*Peel v. Atty. Registration & Disciplinary Comm'n*, 496 U.S. 91, 110 (1990) ------------------------ 4
*R. A. V. v. St. Paul*, 505 U.S. 377, 393 (1992) ------------------------------------------------------ 4
*Rice v. Paladin Enters.*, 128 F.3d 233, 267 (4th Cir. 1997) ---------------------------------------- 4
*Rubinstein v. New York Post Corp.*, 128 Misc. 2d 1, 3 (N.Y. Cty. Sup. Ct. 1987) -------------------- 7
*Time, Inc. v. Hill*, 385 U.S. 374, 387-388 (1967) ------------------------------------------------ 5, 6
*Tumminello v. Bergen Evening Record, Inc.*, 454 F. Supp. 1156, 1160 (D.N.J. 1978) --------------- 6
*United States v. Hansen*, 599 U.S. 762, 783 (2023) ------------------------------------------------ 3
*Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) ------------------------------------------------------------------------------------------- 7
*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761 (1976) ------------------------------------------------------------------------------------------- 4
*Washington League for Increased Transparency & Ethics v. Fox Corp.*, 19 Wash. App. 2d 1006, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ------------------------------------------- 5

OTHER AUTHORITIES

*News Distortion Complaint Involving CBS Broadcasting Inc., Licensee of WCBS*, Fed. Communications Comm'n File MB 25-73 -------------------------------------------------- 3
Restatement (Second) of Torts §§ 525-552 -------------------------------------------------------- 4

**INTEREST OF AMICUS**

The Center for American Rights is a non-profit, non-partisan public-interest law firm based in Chicago. One pillar of the Center's practice is its work as a media watchdog, challenging the use and abuse of powerful and entrenched media institutions to distort our national debate. *See, e.g., News Distortion Complaint Involving CBS Broadcasting Inc., Licensee of WCBS*, Fed. Communications Comm'n File MB 25-73.

In this particular case, the Center represents a *Des Moines Register* subscriber, who has brought a consumer protection claim against these same defendants based on the same nucleus of operative facts. Amicus believes that this Court should return this case to Iowa State Court as a matter of law and policy. Comity should dictate that an Iowa court be given the first opportunity to decide a matter of Iowa law, especially when a case is concurrently pending on the same topic (and at the same basic stage of litigation). If this Court, however, reaches the merits of the motions to dismiss, it should deny them.

**INTRODUCTION**

The Defendants seek a tort immunity under the First Amendment for any time a news media outlet or political pollster engages in intentional or negligent misrepresentation or fails in their duties to consumers. This Court should not give them such an immunity. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("[F]alse statements are not immunized by the First Amendment right to freedom of speech"). False statements are not immune from tort liability, whatever the particular tort claim, when they are made with knowledge of their falsity or with reckless disregard for their truth or falsity, as the President has sufficiently alleged here.

**ARGUMENT**

The protections of the First Amendment are "not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). It does not protect obscenity. *Miller v. California*, 413 U.S. 15, 36 (1973) ("obscene material is not protected by the First Amendment."). It does not protect counseling, encouraging, or inducing a crime. *United States v. Hansen*, 599 U.S. 762, 783 (2023) ("Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."). It does not protect counseling or encouraging a civil violation. *IBEW v. NLRB*, 341 U.S. 694, 705 (1951). It does not protect counseling or encouraging a tort. *Rice v. Paladin Enters.*, 128 F.3d 233, 267 (4th Cir. 1997). It does not protect fighting words. *R. A. V. v. St. Paul*, 505 U.S. 377, 393 (1992) ("fighting words are categorically excluded from the protection of the First Amendment"). It does not protect defamation, libel, and slander. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

And, most relevant here, it does not protect that whole basket of actions associated with false and misleading speech, i.e. fraud, *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 612 (2003) ("the First Amendment does not shield fraud"). There are a variety of ways fraud is prosecuted: common law fraud, statutory types of fraud, and the torts of intentional misrepresentation and negligent misrepresentation (Restatement (Second) of Torts §§ 525-552).

Fraud in the news is no more protected than fraud in any other context. First, "much of the material in ordinary newspapers is commercial speech." *Cincinnati v. Discovery Network*, 507 U.S. 410, 423 (1993). With commercial speech, the government may in appropriate circumstances regulate both "inherently misleading" speech and even "potentially misleading" speech. *Peel v. Atty. Registration & Disciplinary Comm'n*, 496 U.S. 91, 110 (1990). In this instance, the Register's reporting on a presidential campaign is reporting on a "particularly newsworthy fact," *Virginia*

*State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761 (1976), which is not commercial speech, even when run in a newspaper.

Reporting of newsworthy facts in a newspaper can still fall outside the bounds of the First Amendment, however. The simplest example is defamation. When a newspaper publishes a fact concerning a public official engaged in public conduct that it knows to be false, the First Amendment does not protect that publication. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Similarly, when a newspaper publishes a false fact concerning a public official engaged in public conduct "with reckless disregard of whether it was false or not," that act is not protected by the First Amendment.

The key is not the type of tort, but the type of act. It does not matter whether the tort is denominated defamation, slander, or libel—the more common torts—or less common torts against newspapers like consumer fraud or intentional or negligent misrepresentation. What matters is the underlying action: publishing a false fact about a public official engaged in public conduct with knowledge of its falsity or with reckless disregard to its falsity. Whether the public official is damaged and sues (defamation) or the consumer is damaged and sues (consumer fraud) isn't the relevant point for First Amendment purposes.

That principle was set by the U.S. Supreme Court's decision in *Time, Inc. v. Hill* (1967). There, the plaintiff brought an action not for defamation, but rather on a statutory protection for the right to personal privacy. The Court responded, "the constitutional protections for speech and press preclude the application of the New York statute to redress false reports of matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth." 385 U.S. 374, 387-388.[1] *Time Inc.* makes clear that the First

---

[1] That the plaintiffs in *WASHLITE* "cite[d] no authority for the proposition that false statements about threats to public health, even if recklessly made, fall within any exception to the First Amendment," Gannett MTD at 43, quoting

Amendment standard is not specific to a claim (defamation) but to an activity (speech on a newsworthy topic), such that any type of claim based on such an activity must pass the high bar of knowing or reckless disregard.

Thus, Gannett is missing the point when it says, "there is no general government power to punish alleged political falsehoods outside very narrow exceptions which do not apply in this (i.e., defamation, fraud, and perjury)." MTD at 44. The power to punish is not based on the category or type of tort, but on the standard for proving the claim in order to survive a First Amendment defense.

Thus, many cases apply the *Time Inc.* standard of knowing or reckless falsity to claims against publishers brought on theories besides defamation. For instance, the Ohio Supreme Court applied that principle in a case brought by a subscriber-plaintiff in *Gutter v. Dow Jones.* There, the court was asked to determine "whether a general circulation newspaper is liable to one of its subscribers or readers for a non-defamatory negligent misrepresentation of fact in a news article relied on by the reader in choosing a securities investment which results in a financial loss because of a market decline." 22 Ohio St. 3d 286, 287 (1987). There, the court recognized several authorities that a newspaper could not be liable for "merely inaccurate reporting" (*Langworthy v. Pulitzer Pub. Co*., 368 S.W. 2d 385, 390 (Mo. 1963)) or a "negligently untruthful news story" (*Tumminello v. Bergen Evening Record, Inc*., 454 F. Supp. 1156, 1160 (D.N.J. 1978)). The Ohio Supreme Court held that the "constitutional concerns tilt decidedly in favor of the press when mere negligence is alleged." 22 Ohio St. 3d at 291. However, the Court held out that the same rule would not apply to "fraudulent, intentional or malicious misrepresentation." *Id*. at 291 n.4.

---

*Washington League for Increased Transparency & Ethics v. Fox Corp*., 19 Wash. App. 2d 1006, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021), does not mean that such authority does not exist. In fact, it is a long-standing and well-established principle that false statements recklessly made are outside the protection of the First Amendment.

In similar cases with investors harmed by false business news, courts limited the First Amendment's protection to negligence but not reckless or knowing falsity. *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 259 (S.D.N.Y. 1988) (Mukasey, J.) ("plaintiffs must show either that Standard & Poor's published the description with actual knowledge of its falsity or with reckless disregard of its truth or falsity"), aff'd 869 F.2d 175 (2d Cir. 1989); *Daniel v. Dow Jones & Co.*, 137 Misc. 2d 94, 101 (N.Y. Cty. Civ. Ct. 1987) ("The First Amendment precludes the imposition of liability for nondefamatory, negligently untruthful news. . . . The societal right to free and unhampered dissemination of information precludes liability absent proof of knowing falsity or reckless disregard for the truth.").

Many other courts follow the same line in similar settings. *Accord Rubinstein v. New York Post Corp.*, 128 Misc. 2d 1, 3 (N.Y. Cty. Sup. Ct. 1987) ("plaintiff cannot avoid the constitutional protections afforded to publications by alleging as an alternative theory 'the negligent infliction of harm.' An allegation of mere negligence negates the Supreme Court's malice requirement—it is the very antithesis. For a publication to be liable for a false news report, the false information must be promulgated, not negligently or as a result of misinformation, but with knowledge of its falsity or with **reckless** disregard of minimal standards for ascertaining truth."); *Daniele v. ABC*, 2011 U.S. Dist. LEXIS 81273, *6 (D.N.J. July 26, 2011) (First Amendment bars liability for news outlet for publishing "negligent misstatement of fact," but then grants motion to dismiss on reckless or knowing falsity based on failure to state a claim).

Again, all of those precedents are based on the same core concept: "There is 'no constitutional value in false statements of fact.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)). Thus, "untruthful speech" is not "protected for its own sake." *Virginia Bd. of Pharmacy v. Virginia Citizens*

*Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). Though negligent false speech might otherwise be the basis for a cause of action, it is protected by the First Amendment to allow necessary breathing room for true speech. However, "the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964).

The President will still have to state a claim based on Iowa law. *See, e.g., Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 685 (1969) (permitting cause of action against Good Housekeeping magazine). But the court does should not accept Dr. Selzer's invitation to conflate whether the President has stated a claim for fraud (whether denominated consumer fraud or a species of misrepresentation) with the First Amendment defense. The Court should first determine that the First Amendment is not a categorical bar to a claim for consumer fraud or misrepresentation. Instead, the First Amendment sets a standard for a successful claim for consumer fraud or misrepresentation regarding an allegedly false statement on public affairs: knowledge or recklessness. Then, second, the Court should determine whether the President has stated a claim for those actions based on Iowa law and that constitutional standard. Mr. Donnelly feels the case for *at least* reckless disregard is strong: The chances of accidentally being off this much in a poll with this margin of error are approximately 1 in 3.5 million.[2]

## CONCLUSION

The Gannett Defendants open their discussion of the constitutional question by claiming "Plaintiffs' claims amount to a frontal assault on the First Amendment, which embodies 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,'" quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). This

---

[2] James Piereson, *Statistical questions about the Iowa poll*, The New Criterion (Nov. 12, 2024), https://newcriterion.com/dispatch/statistical-questions-about-the-iowa-poll/.

is an ironic choice of citation, given that the *New York Times* case sets the exception for false publications that are knowingly or recklessly inaccurate.

The Defendants miss the flip side of their argument, however. *False speech* is also a frontal assault on the First Amendment. False speech undermines the national debate by introducing false information upon which voters and other debate participants rely. As the Supreme Court has said, "False statements of fact are particularly valueless [because] they interfere with the truth-seeking function of the marketplace of ideas. . ." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988). This Court's job is to apply the law—not make policy. But nevertheless, it can sleep soundly knowing that by holding the Defendants accountable for their false speech, it is actually protecting the marketplace of ideas.

Respectfully submitted,

/s/ Robert R. Anderson
Robert R. Anderson
Iowa State Bar No. AT9021
P.O. Box 4
Atlantic, IA 50022
Phone (515) 382-1278
Email: Bobandersoniowan@gmail.com

/s/ Daniel R. Suhr
Daniel R. Suhr
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, IL 60614
Email: dsuhr@americanrights.org
*Pro hac vice filed contemporaneously*