IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, REPRESENTATIVE MARIANNETTE MILLER-MEEKS, an individual, and FORMER STATE SENATOR BRADLEY ZAUN, an individual, | Case No. 4:24-cv-00449-RGE-WPK |
| Plaintiffs, | **DEFENDANT GANNETT CO., INC.'S BRIEF IN OPPOSITION TO MOTION FOR REMAND** |
| v. | |
| J. ANN SELZER, an individual, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC., | |
| Defendants. | |

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 3

BACKGROUND ................................................................................................................... 4

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ........................................................................................................................ 8

I.   GANNETT'S SNAP REMOVAL TO FEDERAL COURT IS AUTHORIZED BY THE
     STATUTORY TEXT .................................................................................................... 8

     A.   The Plain Language of 28 U.S.C. § 1441 Authorizes Removal Before any Forum-
          Defendant is Properly Served .............................................................................. 9

     B.   The Overwhelming Weight of the Case Law Approves Snap Removal and Rejects
          Plaintiffs' Proposed Departure from the Plain Language of Section 1441(b)(2) . 12

     C.   Gannett's Notice of Removal Complied with Applicable Law, and Plaintiffs'
          Red-Herring Allegations of "Docket Hawking" are Misleading and Irrelevant... 16

II.  PLAINTIFFS ARE PROHIBITED FROM FILING AN AMENDED COMPLAINT
     DESIGNED FOR THE PURPOSES OF DESTROYING FEDERAL JURISDICTION ... 17

     A.   The Law Requires President Trump to Seek Leave to Add Non-Diverse Parties
          and to Satisfy the Equitable Considerations of the *Bailey* Factors ...................... 17

          1.   Rep. Miller-Meeks and Zaun Seek to Join This Action for the Sole Purpose of
               Defeating Diversity Jurisdiction .................................................................. 19

          2.   President Trump Has Not Yet Sought the Required Leave to Amend ........... 21

          3.   Plaintiffs Will Not Be Injured if the Proposed Amendment is Rejected ........ 21

     B.   Because President Trump Was Not Granted Leave to Amend to Destroy
          Jurisdiction, the Amended Complaint is a Nullity ................................................ 22

III. REP. MILLER-MEEKS AND ZAUN WERE FRAUDULENTLY JOINED ................... 23

     A.   Rep. Miller-Meeks and Zaun Were Fraudulently Joined Because They State No
          Cognizable Claim with Any Basis in Fact or Law ............................................... 25

     B.   Because Rep. Miller-Meeks and Zaun Were Fraudulently Joined, This Court
          Should Retain Jurisdiction Over and Dismiss President Trump's Claims ........... 28

CONCLUSION.................................................................................................................... 28

## INTRODUCTION

This lawsuit—filed by President Donald J. Trump ("President Trump") and removed by Gannett Co., Inc. ("Gannett"), the leading publisher of local newspapers throughout the United States—belongs in federal court. Gannett properly removed it under the plain language of the removal statute and pursuant to the overwhelming weight of the case law. Knowing that his lawsuit was properly removed and that it could not withstand a motion to dismiss in federal court, President Trump has sought to be rescued by United States Representative Mariannette Miller-Meeks ("Rep. Miller-Meeks") and former Iowa State Senator Bradley Zaun ("Zaun"). Specifically, President Trump has attempted to fraudulently join them without the Court's permission and for the sole purpose of defeating federal jurisdiction. President Trump's transparent attempt to manipulate this Court's jurisdiction should not be countenanced. Rep. Miller-Meeks's and Zaun's claims are as frivolous as President Trump's claims and must suffer the same fate.

President Trump has engaged in these tortured procedural maneuvers simply to avoid this Court's scrutiny and to proceed before a state court judge. Given President Trump's repeated prior invocations of his office to attempt to avoid the burdens of litigating in state court in other cases, his position here is particularly disingenuous. *Cf. Zervos v. Trump*, 94 N.Y.S.3d 75, 82 (N.Y. App. Div. 2019) (assessing Trump's position that the Supremacy Clause "bars a state court from exercising jurisdiction over him because he is the 'ultimate repository of the Executive Branch's powers'"). As President Trump well knows and has previously argued, federal court—not state court—is the correct forum for a dispute when the sitting President is a party. *Cf. People by Underwood v. Trump*, 88 N.Y.S.3d 830, 836 (N.Y. Sup. Ct. 2018). He cannot now escape this Court's eye by attempting to manipulate its jurisdiction while simultaneously claiming that Defendants have no reasonable basis to argue that this Court is the proper forum.

Gannett's removal of this case was proper, and President Trump's Amended Complaint is improper. This Court should deny the Motion for Remand, order that the Amended Complaint is null, and dismiss the case with prejudice pursuant to Defendants' Motions to Dismiss.

## BACKGROUND

President Trump, a resident of Florida, initiated this action by filing his Petition in the Iowa District Court for Polk County on the evening of December 16, 2024. In that Petition, President Trump alleges that Defendants J. Ann Selzer, Selzer & Company, Des Moines Register and Tribune Company, and Gannett violated Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code Chapter 714H. (*See* Dkt. 1-1.) Defendants Selzer and Selzer & Company (jointly "Selzer") are residents of Iowa. Defendant Des Moines Register and Tribune Company ("*The Register*," and together with Gannett, "Press Defendants") is an Iowa corporation. Defendant Gannett is a Delaware corporation with its principal place of business in New York.

The filing of this lawsuit was neither a secret nor a surprise. At a morning news conference at Mar-a-Lago on December 16, 2024, President Trump announced that he would be filing a lawsuit against Defendants "today or tomorrow." Hadas Gold, *Emboldened by ABC settlement, Trump threatens more lawsuits against the press*, CNN (Dec. 16, 2024).[1] News of the impending lawsuit was widely and publicly reported by the evening of December 16, when President Trump did indeed file it. *See, e.g.*, Brooke Singman, *Trump sues Des Moines Register, top pollster for 'brazen election interference,' fraud over Harris Poll*, FOX NEWS (Dec. 16, 2024).[2]

---

[1] *Available at* https://www.cnn.com/2024/12/16/media/trump-threaten-news-media-lawsuits-abc-settlement/index.html

[2] *Available at* https://www.foxnews.com/politics/trump-sues-des-moines-register-top-pollster-brazen-election-interference-fraud-over-harris-poll

After learning of the lawsuit, Gannett removed the case to this Court under 28 U.S.C. § 1441(b)(2) through the statutory process commonly known as "snap removal." (Dkts. 1, 1-1.)[3] When Gannett filed its Notice of Removal, this Court indisputably held jurisdiction over the case: the parties were completely diverse, the amount in controversy was over $75,000, and none of the defendants had yet been served. (*Id.* at ¶¶ 5–9, 14–15.) *See* 28 U.S.C. §§ 1332(a), 1441(b)(2). After removal, the parties negotiated initial motion practice deadlines and submitted their proposed schedule to the Court on January 9, 2025.[4] (*See* Dkt. 19.)

Consistent with the deadlines agreed upon by the parties and approved by the Court, President Trump filed his Amended Complaint on January 31, 2025. (Dkts. 22, 23.) In the Amended Complaint, President Trump added two new claims for fraudulent and negligent misrepresentation. (Dkt. 23.) He also improperly added two new Plaintiffs without obtaining leave of court: Rep. Miller-Meeks and Zaun. (*Id.*) Both new Plaintiffs are citizens of Iowa, added to destroy the Court's diversity jurisdiction. (*Id.* ¶¶ 21–22.)

Plaintiffs filed the present motion for remand this case to state court on February 21, 2025. (Dkt. 30.) Plaintiffs argue remand is required because (1) there is not complete diversity of citizenship between the parties; and (2) Gannett's use of "snap removal" violates the forum-defendant rule. (*Id.*) However, for the reasons stated herein, this action is properly before this Court, and this Court should reject Plaintiffs' attempts to divest it of its jurisdiction.

---

[3] As the removing party, this Opposition is filed on behalf of Defendant Gannett. By and through the undersigned *The Register* has consented to removal and now joins Gannett's arguments set forth herein. (*See* Dkt. 18.)

[4] Among the negotiated deadlines was a date by which President Trump could file an Amended Complaint consistent with Federal Rule of Civil Procedure 15(a)(1). (*See* Dkt. 19.) However, Defendants did *not* consent—nor could the parties stipulate—to an amended pleading that would require leave of court. (*Id.*)

# LEGAL STANDARD

The removal statute, 28 U.S.C. § 1441(a), provides that a defendant can remove an action from state to federal court if the federal court has original jurisdiction over the action. A federal court has original jurisdiction where the parties are diverse and the amount in controversy exceeds $75,000.[5] 28 U.S.C. § 1332.

Removal is proper, and remand unwarranted, where the allegations in the petition—*at the time it was removed*—support federal jurisdiction. *Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1, 3 (8th Cir. 1969) ("The allegations of the complaint as set forth at the time the petition for removal was filed are controlling."); *see also Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) (stating federal courts have jurisdiction where diversity exists "both when the state petition is filed and when the petition for removal is filed" (internal citation omitted)); *Adams v. Bank of Am., N.A.*, 317 F. Supp. 2d 935, 940 (S.D. Iowa 2004) ("[W]hether the Court retains or remands the case turns on whether this Court had diversity jurisdiction *at the time of removal*." (emphasis added)).

The party opposing remand must establish federal jurisdiction by a preponderance of the evidence. *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023). In that analysis, "courts should apply the same liberal rules [to removal allegations as] . . . to other matters of pleading." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (internal citation omitted). This is especially true where, as here, the allegations establishing diversity jurisdiction at the time of removal are "not contested by the plaintiff." *Cf. id.* (addressing amount-in-controversy

---

[5] There is no dispute that the amount-in-controversy requirement is satisfied in this case or that the parties are diverse absent President Trump's improper addition of the co-plaintiffs in his Amended Complaint.

requirement). "Instead, district courts must 'accept' the allegations in the notice [of removal] if they are 'made in good faith.'" *Leflar*, 57 F.4th at 604 (quoting *Dart*, 574 U.S. at 87).

The removal statute does not *create* federal jurisdiction, it merely recognizes the federal court's inherent original jurisdiction. *Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1054–55 (8th Cir. 2020) (stating the removal statute "gives certain defendants a choice of forum between two courts, each of which already has subject-matter jurisdiction over the type of action"). When a federal district court has original jurisdiction over a removed case, it has "a 'virtually unflagging' obligation to exercise it." *Id.* at 1060 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)); *see Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). Where, as here, no party disputes the court's jurisdiction over the action "as set forth at the time the petition for removal was filed," the court is duty-bound to exercise its original jurisdiction over the action. *Crosby*, 414 F.2d at 3; *see Sprint Commc'ns*, 571 U.S. at 77.

To avoid the legal effect of these principles, Plaintiffs' motion erroneously claims that this Court should apply a generalized "presumption in favor of remand." (Dkt. 32 at 4.) To the contrary, as the Eighth Circuit recently confirmed: "There is good reason to believe that the anti-removal presumption . . . has no place in ordinary diversity cases after Congress passed the Federal Courts Jurisdiction and Venue Clarification Act of 2011." *Leflar*, 57 F.4th at 604 n.2.[6] The Eighth Circuit explained:

---

[6] The *Leflar* case was removed to federal court pursuant to the Class Action Fairness Act (CAFA); therefore, the court held specifically that there is no anti-removal presumption in CAFA cases and further noted that there is no reason non-CAFA cases, such as the present case, would be met with a different rule. *Leflar*, 57 F.4th at 604 & n.2. All of Plaintiffs' cited cases suggesting a contrary result pre-date the Eighth Circuit's 2023 *Leflar* decision, and further, all but one of them pre-date the relevant 2011 legislation. (Dkt. 32 at 4–5.)

> The reason is textual. At the pleading stage, 28 U.S.C. § 1446(a) requires only "a short and plain statement of the grounds for removal." A "plausible allegation," in other words, that the case meets the jurisdictional requirements. Nowhere does the text mention an anti-removal presumption, much less a *requirement* to resolve *all* doubts about federal jurisdiction in favor of remand.

*Leflar*, 57 F.4th at 604 (citing *Dart*, 574 U.S. at 89) (emphasis in original). Plaintiffs further claim that removal statutes "are to be strictly construed." (*See* Dkt. 32 at 4.) However, the law provides that this general proposition "is not sufficient to displace the plain meaning" of the statute. *Delalla v. Hanover Ins.*, 660 F.3d 180, 189 (3d Cir. 2011); *Derengowski v. United States*, 404 F.2d 778, 780 (8th Cir. 1968) ("The maxim of strict construction may not be utilized to defeat the clear intent of a statute, nor to encompass within its meaning something obviously omitted from its terms.").

In sum, this Court will presume the factual allegations in the Notice of Removal establishing jurisdiction to be true; should not apply any outmoded presumptions against removal; and should affirmatively assert and exercise its jurisdiction. *See Dart*, 574 U.S. at 87; *Leflar*, 57 F.4th at 604; *Holbein*, 983 F.3d at 1054–55.

## ARGUMENT

### I.    GANNETT'S SNAP REMOVAL TO FEDERAL COURT IS AUTHORIZED BY THE STATUTORY TEXT

The Court had diversity jurisdiction when Gannett removed this case. The only Plaintiff at that time, President Trump, was a citizen of a different state—*i.e.*, Florida—from all the Defendants—*i.e.*, Iowa, Delaware, and New York; and the amount in controversy was more than $75,000. *See* 28 U.S.C. § 1332(a). (*See also* Dkts. 1, 1-1.). No Defendant had been served when Gannett filed its Notice of Removal. (*See* Dkt. 1.) These facts are undisputed; there are no doubts or ambiguities to be resolved. (*Cf.* Dkt. 32 at 5.)

Plaintiffs instead raise a *legal* argument: that the "forum-defendant rule," 28 U.S.C. § 1441(b)(2), barred Gannett from removing the case because three other Defendants are citizens

of Iowa (or "forum-defendants"). (Dkt. 32 at 8–9.) However, this provision neither implicates the Court's jurisdiction nor bars removal in every case involving forum-defendants. *See Holbein*, 983 F.3d at 1051. Rather, the statute expressly permits a party to remove a case before any forum-defendant is "properly joined *and served*." 28 U.S.C. §§ 1441(a), 1441(b)(2) (emphasis added). Once a plaintiff properly serves a forum-defendant, Section 1441(b)(2) bars removal; but before proper service on a forum-defendant, any defendant may remove the case to federal court based on diversity jurisdiction. Removability depends on the pleadings and record at the time of the application for removal; whether the forum-defendants are later served is irrelevant. *See Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821–22 (8th Cir. 2011).

Courts often refer to the process of removing the case before service on the forum-defendants as snap removal, which is what Gannett properly did in this case. (Dkt. 1.) Most federal courts—including every federal appellate court that has considered the issue—authorize snap removal because the plain language of Section 1441(b)(2) permits it. In asking the Court to find that Defendants improperly removed this case, Plaintiffs ask the Court to simply ignore the plain language of Section 1441(b)(2) in favor of their preferred outcome. This is impermissible.

### A.     The Plain Language of 28 U.S.C. § 1441 Authorizes Removal Before Any Forum-Defendant Is Properly Served

Section 1441(a) authorizes removal where the federal district court has original jurisdiction. 28 U.S.C. § 1441(a). The text of Section 1441(b)(2) expressly precludes removal only after a forum-defendant is both properly joined *and served*—not simply joined. *Id.* § 1442(b)(2). In full, it reads:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought.

*Id.* (emphasis added); *see also*, *e.g.*, *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) (stating Section 1441(b)(2)'s "plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served"); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship, . . . the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b).").

In their motion for remand, Plaintiffs ask the Court to excise the words "and served" from the text of Section 1441(b)(2) to hold that it bars removal when a forum-defendant is simply "joined." (Dkt. 34.) For the Court to adopt this interpretation, however, it would also need to reject the most basic principle of statutory construction: courts must interpret a statute based on the ordinary meaning of its plain language and "give effect, if possible, to every clause and word of a statute." *United States v. Zam Lian Mung*, 989 F.3d 639, 642 (8th Cir. 2021) (internal quotation omitted). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

In analyzing a statute, courts must start with "the statute's plain language." *United States v. Lester*, 92 F.4th 740, 742 (8th Cir. 2024) (quoting *United States v. Moreira-Bravo*, 56 F.4th 568, 571 (8th Cir. 2022)). If the text is clear, "the judicial inquiry must end." *Lester*, 92 F.4th at 742 (internal quotation omitted). Any requirement to strictly construe the statute does not "displace [its] plain meaning." *Delalla*, 660 F.3d at 189; *see Derengowski*, 404 F.2d at 780.

Applying these principles, every federal Court of Appeals to consider snap removal has rejected the argument advanced by Plaintiffs and has held instead that Section 1441(b)(2) only precludes removal when a forum defendant is *both joined and served. See, e.g., Tex. Brine Co. v.*

Case 4:24-cv-04440-RGE-WPK Document 41 Filed 04/02/25 Page 11 of 33

*Am. Arb. Ass'n*, 955 F. 3d 482, 487 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Encompass Ins.*, 902 F.3d at 152–53; *McCall*, 239 F.3d at 813 n.2.

Plaintiffs do not offer an interpretation of the plain language that would allow the Court to effectively read the words "and served" out of the statute, nor do they do contend that the language of the statute is somehow unclear or ambiguous. Instead, they ask the Court to ignore the plain language of Section 1441(b)(2) because of "public policy" and "congressional intent." (Dkt. 32 at 8, 10.) Well-established precedent forecloses this argument. As the Supreme Court explained, courts do not have a "roving license, in even ordinary cases of statutory interpretation, to disregard clear language simply on the view that . . . Congress 'must have intended' something broader." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) (internal citation omitted). "It is the statutory text . . . that best reflects Congress's intent," and "policy concerns . . . cannot surmount the plain language of the statute." *Republic of Hung. v. Simon*, 145 S. Ct. 480, 497 (2025) (internal quotation omitted).

Even if Congressional intent were a permissible consideration in analyzing Section 1441(b)(2), it would not support Plaintiffs' argument here. As other courts have recognized, the legislative history of Section 1441(b)(2) is silent about the language at issue and does not support a departure from the plain language. *See, e.g.*, *Figured v. Davies*, No. 3:16-CV-467, 2016 WL 3148392, at *3 (M.D. Penn. June 2, 2016) (denying motion for remand and finding "no discernable legislative history speaking to differing congressional intent to justify a departure from the [statute's] plain language"); *Goodwin v. Reynolds*, No. 2:12-cv-0033, 2012 WL 4732215, at *3 (N.D. Ala. Sept. 28, 2012), *aff'd*, 757 F.3d 1216 (11th Cir. 2014) (stating that "[t]he published legislative history . . . contains no explanation"); *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263, 1270 (M.D. Fla. 2009) (approving removal involving unserved forum defendant and

refusing to rely on "'murky' or non-existent legislative history in the face of an otherwise perfectly clear and unambiguous statute").

Indeed, courts have found that Congress's inaction—*i.e.*, the absence of any amendment to Section 1441 disallowing snap removal—reflects its tacit approval. *See Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*, 881 F. Supp. 2d 1123, 1129 (N.D. Cal. 2012) ("[I]t is well-settled that where Congress amends part of a statute and leaves another part unchanged, a court must interpret Congress's inaction as satisfaction with the unamended portion, or at least tolerance of its inadequacies. . . . The Court is therefore bound to take Congress's preservation of § 1441's 'properly joined and served' language as an endorsement."); *see also Lawton v. Hyundai Motor Am., Inc.*, No. 8:23-cv-01797, 2023 WL 8018100, at *3 (C.D. Cal. Nov. 20, 2023) ("[I]f Congress disapproves of [snap removal], Congress can amend § 1441(b)(2) to prohibit removal in cases such as this one."); *Munchel v. Wyeth LLC*, No. 12-906-LPS, 2012 WL 4050072, at *4 (D. Del. Sept. 11, 2012) ("[B]y retaining the 'properly joined and served language,' the amendment reinforces the conclusion that Congress intended for the plain language of the statute to be followed.").

In sum, Section 1441(b)(2) clearly and unambiguously authorizes snap removal, and it is not necessary or proper for the Court to rewrite this plain language in the name of "public policy" or "congressional intent" at Plaintiffs' request.

### B. The Overwhelming Weight of the Case Law Approves Snap Removal and Rejects Plaintiffs' Proposed Departure from the Plain Language of Section 1441(b)(2)

The decisions of the federal Circuit Courts of Appeals and the weight of authority in federal district courts demonstrate that snap removal is the proper and accepted procedure for this case—contrary to Plaintiffs' misleading description of the state of the law. (*Cf.* Dkt. 32 at 10–18.)

All Circuit Courts of Appeals that have addressed the merits of snap removal—*i.e.*, the Second, Third, Fifth, and Sixth Circuits—agree that the procedure is permissible. *See Texas Brine*

*Co.*, 955 F. 3d at 486–87; *Gibbons*, 919 F.3d at 705–07; *Encompass Ins.*, 902 F.3d at 152–54; *McCall*, 239 F.3d at 813 n.2. No federal appellate court has expressly rejected snap removal. Although the Eighth Circuit itself has not yet adjudicated the propriety of snap removal, it has recently acknowledged that these circuit courts "have held that the forum-defendant rule does not apply," *i.e.*, that snap removal is permitted. *See M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1109–10 (8th Cir. 2023). Therefore, pursuant to the Eighth Circuit's policy of adhering to the jurisprudence of its sister circuits, the case law demonstrates that snap removal is proper in this case. *See In re Miller*, 276 F.3d 424, 428–29 (8th Cir. 2002) ("[W]e adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value."); *United States v. Auginash*, 266 F.3d 781, 784 (8th Cir. 2001) (emphasizing that the Eighth Circuit "strive[s] to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow"); *see also Aldens, Inc. v. Miller*, 610 F.2d 538, 541 (8th Cir. 1979) (same).

Contrary to this state of the law, Plaintiffs' motion seeks to create a false impression that snap removal is "disfavored" in the Eighth Circuit. (*See* Dkt. 32 at 10–14.) Plaintiffs claim that the "majority of the district courts in the Eighth Circuit have held against snap removal." (*Id.*) However, they cite cases from only three of the Eighth Circuit's ten district courts; this definitionally does not represent a "majority of the district courts." (*Cf. id.*) Plaintiffs also concede, as they must, that even those three districts do not uniformly reject snap removal. (*Id.* at 14 n.3.) Indeed, the most recent case they cite *approved* of snap removal. *See Rhoads v. Webster Univ.*, No. 4:22-CV-01196, 2023 WL 3496134, at *2 (E.D. Mo. May 17, 2023); *see also Tillman v. BNSF Ry. Co.*, No. 1:20-CV-00178, 2021 WL 842600, at *2–3 (E.D. Mo. Mar. 5, 2021) (recognizing different approaches taken in "[t]his district," agreeing "with the reasoning of the Second, Third,

and Fifth Circuits," and "conclud[ing] that if no forum defendant was 'properly joined and served' before removal, section 1441(b)(2) does not preclude removal.").

At best, the cases cited by Plaintiffs demonstrate that some judges in Missouri and Arkansas district courts have erroneously declined to apply the plain language of the statute, contrary to the Supreme Court's and Eighth Circuit's directives. *See Simon*, 145 S. Ct. at 485; *Lester*, 92 F.4th at 742. Indeed, Plaintiffs' preferred cases expressly *reject* the "strict adherence to the language of the statute" because doing so would purportedly "contraven[e] . . . legislative intent." *Hensley v. Forest Pharms*., Inc., 21 F. Supp. 3d 1030, 1036 (E.D. Mo. 2014). (*See* Dkt. 32 at 13.) These rulings are in error because they require the issuing courts to substitute their own policy preferences and inferences over the plain text of Section 1441(b)(2).

Further, *Hensley*—Plaintiffs' so-called "leading case"—and its progeny rely on reasoning that has been overruled by the Eighth Circuit. (*See* Dkt. 32 at 11–13.) These cases held that violating the forum defendant rule is "a jurisdictional defect" and thus "remand is required." *Hensley*, 21 F. Supp. 3d at 1036. But the Eighth Circuit has expressly overruled this erroneous conclusion, ruling that "the forum-defendant rule is not jurisdictional at all." *M & B Oil*, 66 F.4th at 1110. Therefore, "[v]iolating it does not destroy jurisdiction." *Id.*; *see Holbein*, 983 F.3d at 1051 ("We now overrule [other] precedents to the extent they hold that a violation of 28 U.S.C. § 1441(b)(2)—the so-called forum-defendant rule—is an unwaivable jurisdictional defect in removal." (internal citation omitted)).

Finally, Plaintiffs selectively cite to district court cases from the Ninth and Tenth Circuits to prop up their claim that courts in these Circuits follow a uniform approach in rejecting snap removal. (Dkt. 32 at 15–18.) However, many district courts in these Circuits reject Plaintiffs'

14

position and rightly apply the plain language of Section 1441(b)(2) to permit snap removal.[7] Any cases from these district courts that do not follow the plain language are in error due to their attempts to infer congressional intent and substitutions of their own policy preferences for the plain language of the statute.

In sum, contrary to Plaintiffs' claims, the case law weighs strongly in favor of accepting snap removal. The Circuit Courts of Appeals have endorsed the procedure. *See Tex. Brine Co.*, 955 F. 3d at 486–87; *Gibbons*, 919 F.3d at 705–07; *Encompass Ins.*, 902 F.3d at 152–54; *McCall*, 239 F.3d at 813 n.2. The Eighth Circuit's principles of statutory interpretation and deference to its sister circuits indicate that the procedure is permitted in this Circuit. *Lester*, 92 F.4th at 742; *In re Miller,* 276 F.3d at 428–29. And district courts both within and without this Circuit regularly accept cases removed pursuant to the procedures used in this case. *See, e.g.*, *Rhoads*, 2023 WL 3496134, at *2; *see also Dechow*, 358 F. Supp. 3d at 1054. A string citation of even a mere sampling of such cases is pages long; for economy, a short list of exemplar cases is appended hereto as Appendix A. With the weight of this authority, the Court should rule that removal was proper and decline Plaintiffs' invitation to disregard the statutory text of 28 U.S.C. § 1441(b)(2).

---

[7] *See, e.g.*, *Dechow v. Gilead Scis., Inc.*, 358 F. Supp. 3d 1051, 1054 (C.D. Cal. 2019) ("Adopting any other interpretation of the statute would violate the Court's mandate to enforce a statute according to its text."); *see also Coger v. Nationwide Agribusiness Ins. Co.*, No. 2:23-cv-02985, 2024 WL 3673530, at *3 (E.D. Cal. Aug. 6, 2024) ("[D]istrict courts across the Ninth Circuit have held that a defendant may remove a lawsuit before being served with either a complaint or summons."); *Lawton*, 2023 WL 8018100, at *3; *Zirkin v. Shandy Media, Inc.*, No. 2:18-cv-09207, 2019 WL 626138, at *4 (C.D. Cal. Feb. 14, 2019) ("[T]he Court is unwilling to effectively erase language from a statute by ignoring the language 'and served' in the Forum Defendant Rule and tread dangerously into legislative province"); *Magallan v. Zurich Am. Ins. Co.*, 228 F. Supp. 3d 1257, 1261 (N.D. Okla. 2017) ("The Court cannot contradict the plain language § 1441(b) on the basis of congressional intentions that have been inferred by courts but never actually expressed by the law's drafters."); *Smith v. Christmas*, No. 1:24-cv-00625, 2024 WL 4252961, at *3 (D.N.M. Sept. 20, 2024) ("Here, § 1441(b)(2) unambiguously provides that removal is prevented only if a forum defendant has been 'properly joined and served.'").

### C.    Gannett's Notice of Removal Complied with Applicable Law, and Plaintiffs' Red-Herring Allegations of "Docket Hawking" Are Misleading and Irrelevant

Plaintiffs argue that the Court should remand the case because, they allege, "Gannett 'hawked' the electronic docket" of the Iowa state court, "the modern equivalent of setting up 'camp' at the courthouse." (Dkt. 32 at 18.) In support, Plaintiffs cite cases finding that prompt removals should be considered improper because such timing undermined the presumed true intent of Section 1441(b)(2). *See Hensley*, 21 F. Supp. 3d at 1036; *Rogers v. Boeing Aerospace Operations, Inc.*, 13 F. Supp. 3d 972, 977 (E.D. Mo. 2014). But the statute contains no language regarding a minimum amount of time that must pass before removing a case. *Cf.* 28 U.S.C. § 1441(a)–(b). Therefore, courts who consider "docket hawking" do so exclusively under an impermissible congressional-intent analysis. For the reasons stated above, the Court should give no credence to this approach. *See Simon*, 145 S. Ct. at 485; *Lester*, 92 F.4th at 742.

Even if the Court were to consider this issue, the facts contradict the allegation that "Gannett 'hawked' the electronic docket." (Dkt. 32 at 18.) That is because President Trump openly and publicly announced this lawsuit at a widely televised and reported press conference. *See supra* n. 1–2. Gannett's timely removal resulted from President Trump's own decision to turn the filing of his lawsuit into a national news story. His allegation of "docket hawking" is baseless, untrue, and irrelevant.

Plaintiffs also contend, without explanation, that it "would have been essentially impossible under Iowa procedure" to serve the lawsuit on Gannett before it filed its Notice of Removal. (*Id.* at 9.) This simply is not true: in Iowa, service on a corporation can be made through a general agent, managing agent, or registered agent. Iowa R. Civ. P. 1.305(6). Iowa courts have found that effectuating service with a general or managing agent requires no more than receipt of service by a low-level manager of the defendant corporation. *See, e.g.*, *Gutierrez v. Wal-Mart*

*Stores, Inc.*, 638 N.W.2d 702, 705–06 (Iowa 2002); *Life v. Best Refrigerated Exp., Inc.*, 443 N.W.2d 334, 337 (Iowa Ct. App. 1989). President Trump's failure to serve his pleading and prevent removal was the byproduct of inaction, not impossibility.

Removal of this case was permitted and proper pursuant to the plain language of the statute. The state of the case law throughout the country strongly supports the propriety of snap removal, and Plaintiffs' attempt to paint a different picture of the national and regional jurisprudence is misleading and unavailing. And Plaintiffs' factual arguments regarding the "hawking" of the docket and the difficulty of service are untrue and irrelevant. This Court should deny Plaintiffs' categorical challenge to snap removal.

## II.  PLAINTIFFS ARE PROHIBITED FROM FILING AN AMENDED COMPLAINT DESIGNED FOR THE PURPOSES OF DESTROYING FEDERAL JURISDICTION

This Court has properly asserted its jurisdiction over this action following removal by Gannett. Nonetheless, Plaintiffs argue that remand is required because, with the addition of Rep. Miller-Meeks and Zaun as Plaintiffs, there is no longer complete diversity of citizenship among the parties. (Dkt. 32 at 5.) This argument, however, flies in the face of established Eighth Circuit precedent, which requires President Trump to seek leave of court *before* adding non-diverse parties to this action. Because he did not do so, and because leave for such an amendment would have been denied pursuant to the controlling case law, the Amended Complaint should be deemed null.

### A.  The Law Requires President Trump to Seek Leave to Add Non-Diverse Parties and to Satisfy the Equitable Considerations of the *Bailey* Factors

In *Bailey v. Bayer CropScience L.P.*, the Eighth Circuit made clear that "[t]he district court, when faced with an amended pleading naming a new nondiverse [party] in a removed case, should scrutinize that amendment more closely than an ordinary amendment." 563 F.3d 302, 309 (8th Cir. 2009). This means President Trump was required to affirmatively seek this Court's leave to add

17

the new nondiverse Plaintiffs before filing his Amended Complaint. *See Dudley v. MetLife Grp. Inc.*, No. 4:18-CV-00099, 2018 WL 11532618, at *3 (S.D. Iowa June 22, 2018).

Even though President Trump was permitted to "amend [his] pleading once as a matter of course" pursuant to Federal Rule of Civil Procedure 15(a)(1), he was nevertheless required to specifically notify the Court of the proposed addition of non-diverse parties. *See id.* ("[O]ther courts have held that it is improper for a plaintiff to add a nondiverse [party] by filing an amendment as a matter of course, without leave of court."). Indeed, this Court ruled in *Dudley* that a plaintiff's amended complaint adding a non-diverse defendant was improper—despite having amended within 21 days pursuant to Rule 15(a)(1)—because "the problem of the addition of the non-diverse defendant was not [initially] brought to the attention of the Court," preventing it from analyzing the proposed amendment. *Id.* (quoting *Bailey*, 563 F.3d at 309). Therefore, the amended complaint in *Dudley* was "a nullity." *Id.* This Court has thereby recognized that it must carefully consider any amended complaint that would strip it of its jurisdiction before becoming operative. *See Bailey*, 563 F.3d at 309. Because it is incumbent upon Plaintiffs to seek the necessary leave to file a jurisdiction-destroying amendment, they bear the burden to establish the amendment's propriety.

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires"; but when a proposed amended complaint would destroy jurisdiction, "'justice requires that the district court consider a number of factors to balance the defendant's interests in maintaining the federal forum with the [plaintiff's] competing interest of not having parallel lawsuits.'" *Dudley*, 2018 WL 11532618, at *4 (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)); *see* Fed. R. Civ. P. 15(a)(2). To balance these interests, the Eighth Circuit expressly adopted a three-pronged test under which district courts must consider

the following factors before permitting an amended complaint that would destroy diversity: "1) the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction, 2) whether the plaintiff has been dilatory in asking for amendment, and 3) whether the plaintiff will be significantly injured if amendment is not allowed." *Bailey*, 563 F.3d at 309. Under case law in the Eighth Circuit—and the Fifth Circuit, from which the Eighth Circuit adopted the *Bailey* test—this analysis is the same whether the plaintiff seeks to add non-diverse defendants *or* plaintiffs. *See, e.g.*, *Cartier v. Wells Fargo*, No. 11-2168, 2012 WL 2499455, at *2 (D. Minn. Feb. 22, 2012), *adopted* No. 11-2168, 2012 WL 2449944 (D. Minn. Jun. 27, 2012), *aff'd* 547 Fed. App'x 800 (8th Cir. 2013); *Phillips v. Delta Airlines*, 192 F. Supp. 2d 727, 730 (E.D. Tex. 2001) (denying leave to amend to join non-diverse plaintiffs); *Doucet-Speer, APLC v. State Farm Fire Ins. & Cas. Co.*, No. 20-513, 2021 WL 1396470, at *5 (M.D. La. Mar. 10, 2021).

In this case, it is undisputed that President Trump failed to seek the Court's leave to add nondiverse parties to the case. Further, the *Bailey* factors weigh heavily in favor of denying President Trump's attempt to destroy this Court's jurisdiction by amending his pleading to add Rep. Miller-Meeks and Zaun as jurisdictional spoilers.

## 1. Rep. Miller-Meeks and Zaun Seek to Join This Action for the Sole Purpose of Defeating Diversity Jurisdiction

The first *Bailey* factor asks the Court to consider "the extent to which the joinder of the nondiverse party is sought to defeat federal jurisdiction." *Bailey*, 563 F.3d at 309. This not only permits but *requires* the Court to probe Plaintiffs' motives in adding additional parties. It is self-evident that Rep. Miller-Meeks's and Zaun's involvement in this suit is nothing more than a contrivance to destroy diversity.

Courts have regularly held that a plaintiff's attempt to add non-diverse parties to a lawsuit shortly after removal is itself indicative of an intent to defeat diversity jurisdiction. *See, e.g.*,

*Bohnenkamp v. Hog Slat, Inc.*, No. 20-CV-4043, 2020 WL 8225504 at *2 (N.D. Iowa Oct. 14, 2020) (finding "timing of the proposed amendment" less than one month after removal "supports an inference that plaintiffs seek to join [non-diverse party] to destroy diversity jurisdiction."); *Dudley*, 2018 WL 11532618, at *4 (finding the "primary purpose of joining a [non-diverse defendant] was to defeat federal jurisdiction" where plaintiff sought to amend complaint on the same day as the notice of removal was filed). Here, President Trump attempted to add his jurisdictional spoiler co-Plaintiffs shortly after removal; and further, Plaintiffs' counsel then contacted Defendants' counsel to state that President Trump's conscription of Rep. Miller-Meeks and Zaun as Plaintiffs caused this Court to lose jurisdiction over the case and would make his anticipated request to remand a *fait accompli*. (*See* Dkt. 32 at 2.) President Trump's timing establishes and underscores his motive: to undermine this Court's jurisdiction and return to state court. *See Klotz v. Lowe's Home Ctrs., LLC*, No. 4:17-CV-282, 2017 WL 1426022, at *2 (E.D. Mo. Apr. 21, 2017) ("The timing and sequence of the plaintiff's actions and the reasonable inferences drawn therefrom suggest that plaintiff seeks joinder merely to defeat the Court's jurisdiction.").

As to Rep. Miller-Meeks and Zaun, the only conceivable reason they would have decided to join this action is to assist President Trump's attempt to defeat diversity. Indeed, if either of them independently concluded that they had colorable claims against Defendants (although of course, they do not) and wanted to pursue them in Iowa's state courts, Rep. Miller-Meeks and Zaun—whether jointly or separately—could have initiated their own actions in state court at any time. Such suits would not have been subject to removal. Instead, they *chose* to enter this federal forum—only to argue that they should be remanded to state court. This behavior can only be explained as an attempt to assist President Trump with his Motion for Remand. *See id.*

20

In short, analysis of the first *Bailey* factor reveals that the foundational purpose of "the joinder of the nondiverse party is . . . to defeat federal jurisdiction." *Bailey*, 563 F.3d at 309. Accordingly, this factor weighs *heavily* against permitting the Amended Complaint—so heavily, in fact, that this factor alone is dispositive.

### 2.    President Trump Has Not Yet Sought the Required Leave to Amend

The second *Bailey* factor asks the Court to consider "whether the plaintiff has been dilatory in asking for amendment." *Id.* at 309. By order of the Court, President Trump was permitted to file his one allotted amendment "as a matter of course" under Rule 15 by January 31, 2025. Fed. R. Civ. P. 15(a)(1). (*See* Dkt. 22.) He did indeed file the Amended Complaint on that date. (Dkt. 23.) However, at no time prior to filing his Amended Complaint did President Trump disclose to the Court or to Defendants that his amendment would attempt to destroy diversity. Defendants never consented to any such amendment or waived any objection, nor did this Court consider or approve any such amendment. *Cf. Dudley,* 2018 WL 11532618, at *3 (holding that even amendments "as a matter of course" per Rule 15(a)(1) require court authorization if they would impinge on the court's jurisdiction). Insofar as President Trump did not move for leave to amend by January 31, 2025, as required by the case law—and indeed still has not so moved to this day—any such request would not be timely. The second *Bailey* factor weighs against permitting the Amended Complaint.

### 3.    Plaintiffs Will Not Be Injured if the Proposed Amendment is Rejected

The third *Bailey* factor asks the Court to consider "whether the plaintiff will be significantly injured if amendment is not allowed." *Bailey*, 563 F.3d at 309. None of the Plaintiffs will be injured by this Court's rejection of the Amended Complaint. Plaintiffs will not be subject to any "parallel lawsuits" if they are not allowed to join. *Cf. Doucet-Speer, APLC*, 2021 WL 1396470 at *4.

Refusing this amendment would in no way preclude Rep. Miller-Meeks or Zaun from seeking complete relief for their purported claims. *Blando v. Bus. Men's Assur. Co. of America*,

No. 12-0559-CV-W-SOW, 2012 WL 6699090, at *4 (W.D. Mo. Aug. 21, 2012) (finding no prejudice where joinder not necessary to afford plaintiffs complete relief). This is true for two reasons: first, neither of them state any cognizable claim upon which any relief could be granted (*see generally* Dkts. 33, 35); and second, Rep. Miller-Meeks and Zaun could pursue those meritless claims if they so choose by filing suit in Iowa state court, where they would apparently prefer to litigate in any event. *Hoffman v. Enterprise Leasing Co. of Minnesota, LLC*, 2014 WL 12601038, at *6 (D. Minn. Oct. 15, 2014) (finding that "when the plaintiff is still able to purse [*sic*] the claim in state court, there is no injury to the plaintiff"). Accordingly, the third *Bailey* factor likewise weighs against permitting President Trump's proposed amended complaint.

**B.    Because President Trump Was Not Granted Leave to Amend to Destroy Jurisdiction, the Amended Complaint is a Nullity**

Because President Trump was required to seek leave to amend his pleading to add non-diverse parties, and because the Court has not had a chance to review the effect of the Amended Complaint on the Court's jurisdiction, the Amended Complaint is inoperative. In these circumstances, the Court should (1) declare the Amended Complaint a nullity; (2) construe the Amended Complaint as a Motion for Leave to Amend; and (3) deny the constructive motion. *See, e.g.*, *Dudley*, 2018 WL 11532618, at *5 (vacating complaint adding non-diverse parties during as-of-right amendment period as "a nullity" and denying leave to amend complaint); *Bailey*, 2007 WL 9728995, at *1 (stating that where plaintiff sought leave to amend complaint without notifying court of jurisdictional ramifications, "[t]he Court considers Plaintiff's filing of his amended complaint a nullity and will analyze the propriety of adding the proposed Defendants on a fully informed basis"); *Le Duc v. Bujake*, 777 F. Supp. 10, 11 (E.D. Mo. 1991) (construing amended complaint as motion for leave to amend and stating "[w]here, as here, the record indicates that the problem of the addition of the nondiverse defendant was not brought to the attention of the

Court . . . the filing of the amended complaint should be considered a nullity and the Court be given an opportunity to consider whether justice requires that Le Duc be permitted to join Gelven as a defendant.").

The Court should follow this procedure, reject the addition of Rep. Miller-Meeks and Zaun to the action, and deny Plaintiffs' Motion for Remand. Thereafter, the Court will be left to consider Defendants' Motions to Dismiss as applied to President Trump's original pleading and to dismiss the claims with prejudice. (*See* Dkts. 1-1; 24; 28.)

## III.    REP. MILLER-MEEKS AND ZAUN WERE FRAUDULENTLY JOINED

If the Court nevertheless entertains or even allows President Trump's amended pleading, the law still disregards Rep. Miller-Meeks's and Zaun's citizenship for the purposes of diversity jurisdiction because both are fraudulently joined.

Fraudulent joinder is an exception to the complete diversity rule that "occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *Johnson v. Midwest Div.-RBH, LLC*, 88 F.4th 731, 735 (8th Cir. 2023) (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)).

Eighth Circuit case law is clear that the applicable standard of review for fraudulent joinder is predicated on reasonableness.[8] *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003); *see Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 915 (8th Cir. 2014); *Johnson v. Tyson Fresh Meats, Inc.*, No. C–06–1002, 2006 WL 1004970, at *4 (N.D. Iowa Apr. 17, 2006). The "proper review should give paramount consideration to the reasonableness of the basis

---

[8] Relatedly, the Eighth Circuit has also considered (but not yet adopted) a fraudulent *mis*joinder standard, by which plaintiffs are prohibited from adding non-diverse parties when they lack a "reasonable procedural basis" to add unrelated claims. *Prempro Prods.*, 591 F.3d at 620–21. Reasonableness is again the polestar of the analysis, which for the reasons stated below, undermines Rep. Miller-Meeks's and Zaun's attempt to join this case.

underlying the state claim." *Filla*, 336 F.3d at 810. In other words, "joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Id.* (internal quotations and citations omitted). The "essential function required of the district court in a fraudulent-joinder setting" is to "determine whether there is a reasonable basis for predicting that the state's law might impose liability against the defendant." *Id.* at 811. Thus, "[w]here applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent." *Id.* at 810.

Although the fraudulent joinder doctrine is most commonly applied to non-diverse *defendants*, courts acknowledge that *plaintiffs* may likewise be fraudulently joined to a cause of action. *See Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, No. 06-15752, 2007 WL 2332470, at *4 (E.D. Mich. Aug. 15, 2007) (collecting cases and finding that "district courts which have addressed the issue hold that the [fraudulent joinder] doctrine applies equally to fraudulently joined plaintiffs"); *Miller v. Home Depot*, 199 F. Supp. 2d 502, 508 (W.D. La. 2001) ("The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff."); *see also Lerma v. Univision Comms., Inc.*, 52 F. Supp. 2d 1011, 1014 (E.D. Wisc. 1999). Rep. Miller-Meeks and Zaun are therefore fraudulently joined if they lack a reasonable basis in fact or law to assert the purported claims in the Amended Complaint against Defendants. *See Eberspaecher*, 2007 WL 2332470, at *5 (finding plaintiff "failed to establish that [the nondiverse plaintiff] ha[d] a viable cause of action against Defendant for breach of contract"); *Miller*, 199 F. Supp. 2d at 508–09 (dismissing non-diverse plaintiff that failed to adequately allege any of his purported claims); *Lerma*, 52 F. Supp. 2d at 1027 (dismissing non-diverse plaintiffs whose claims made "no factual and economic sense and fail[ed] to assert any form of anticompetitive conduct").

Rep. Miller-Meeks's and Zaun's claims are simultaneously the subject of Defendants' pending Motions to Dismiss. (Dkts. 24, 28.) The legal standards for dismissal under Rule 12(b)(6) and for finding fraudulent joinder are distinct. *Cf. Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010). First, the requirements for sufficient allegations of fact differ between a Rule 12 motion (*i.e.*, the facts must state a plausible claim for relief) and a fraudulent joinder analysis (*i.e.*, the alleged facts must "arguably [provide] a reasonable basis for predicting that the state law might impose liability"). *Id.* Second, in a fraudulent-joinder analysis, the court need not resolve ambiguities of state law. *Filla*, 336 F.3d at 810–11. In this case, neither allows Plaintiffs to escape the conclusion that their purported claims lack a reasonable basis in fact or law. Therefore, Plaintiffs' claims are subject to dismissal under Rule 12(b)(6), and Rep. Miller-Meeks and Zaun also have no reasonable basis in fact or law to pursue such claims.

A.    **Rep. Miller-Meeks and Zaun Were Fraudulently Joined Because They State No Cognizable Claim with Any Basis in Fact or Law**

As set forth in Defendants' Briefs in support of their Motions to Dismiss, there is "no reasonable basis in fact or law" for Rep. Miller-Meeks or Zaun to believe they can state any claim against Defendants. *Thompson*, 760 F.3d at 915. For the sake of economy, Press Defendants' Brief and Selzer's Brief supporting dismissal are both incorporated herein by reference. (Dkts. 33, 35.) As fully set forth therein, Rep. Miller-Meeks's and Zaun's purported legal claims are so facially deficient and contrary to all reason that the law simply "precludes the existence of a cause of action against" Defendants in this case. *Thompson*, 760 F.3d at 915. Further, there is no reasonable reading of the Amended Complaint that would support Plaintiffs' claims, nor any ambiguities of state law that need to be resolved to reach that conclusion. Because Rep. Miller-Meeks and Zaun are fraudulently joined, their presence in the Amended Complaint does not divest this Court of jurisdiction. *See Lerma*, 52 F. Supp. 2d at 1027.

First and foremost, Rep. Miller-Meeks and Zaun have not stated and cannot state a claim under the Iowa Consumer Fraud Act ("ICFA") that has any reasonable basis in fact or law. Plaintiffs completely fail to allege any basis for their claims "in connection with the advertisement, sale or lease of consumer merchandise" under ICFA. *See* Iowa Code § 714H.3(1). (*See also* Dkt. 35 at 24–28.) Moreover, they fail to allege any act by any Defendant that is prohibited by ICFA. They nominally invoke the statutory terms "deception" and "unfair act or practice," but they have not and cannot show how conducting a political opinion poll or publishing its results could fall within either category of statutorily prohibited conduct. (*See id.* at 16–24.) And they do not plead a single fact to support the notion that the Iowa Poll proximately caused any ascertainable loss— because no such loss occurred or was proximately caused by any conduct of Defendants. (*See id.* at 28–30.)

Second, Rep. Miller-Meeks and Zaun have no reasonable basis in fact or law to pursue a claim for fraudulent misrepresentation. The Amended Complaint contains no allegations of fact that could satisfy the elements of the claim; and it fails particularly to allege an actionable representation, reliance, or any cognizable injury. (*See* Dkt. 35 at 30–36.)

Third, Rep. Miller-Meeks and Zaun also have no colorable claim for negligent misrepresentation, which would require Defendants to have taken on an advisory role for the claimants' benefit. *See McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp*, 469 F. Supp. 2d 677, 692 (N.D. Iowa 2007). No such role or duty exists (much less is pleaded), and there is thus no reasonable basis to believe this tort claim may lie. (*See* Dkt. 35 at 36–41.)

The law establishing the requirements and elements of Plaintiffs' proposed claims is clear and unambiguous, and Plaintiffs' pleading fails to assert a reasonable basis for any of them. *See, e.g., Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021) (finding that a defendant

was fraudulently joined in part because "[t]he complaint's . . . references to [the defendant] are broad, conclusory allegations, which are insufficient to state a claim"); *Block v. Toyota Motor Corp.*, 665 F.3d 944, 950 (8th Cir. 2011) (affirming finding of fraudulent joinder because "[t]he conclusory allegations in the complaint" did not sufficiently plead a required element); *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1005 (8th Cir. 2006) (finding fraudulent joinder when there was no law supporting the imposition of the duty upon which plaintiffs' claim relied); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870–71 (8th Cir. 2002) (affirming finding of fraudulent joinder in part because the plaintiff's allegations were insufficient to "present an underlying tort or a wrongful act to support a conspiracy count"); *Bohnenkamp v. Hog Slat, Inc.*, 549 F. Supp. 2d 937, 950 (N.D. Iowa 2021) (finding fraudulent joinder because "[p]laintiffs' allegations and evidence do not adequately provide a reasonable basis" for two necessary elements of claim); *Jimenez v. Firearms*, No. 4:11-cv-00571, 2012 WL 12870225, at *4 (S.D. Iowa Sept. 11, 2012) (finding that a defendant was fraudulently joined in part because the plaintiff's allegations were "not sufficient to create a colorable claim of proximate cause under Iowa law").

For these reasons, Rep. Miller-Meeks and Zaun have no reasonable basis in fact or law to assert the present claims against Defendants and are therefore fraudulently joined. In addition to the substantive deficiencies in the claims themselves, Rep. Miller-Meeks's and Zaun's only possible purpose in joining this action rather than initiating their own—*i.e.*, to assist President Trump in evading this Court's review—is itself fraudulent and unreasonable. On the face of the Amended Complaint, Rep. Miller-Meeks and Zaun present no "reasonable basis for predicting that the state law might impose liability" sufficient to survive a fraudulent joinder analysis. *Cf. Filla*, 336 F.3d at 811.

**B.** **Because Rep. Miller-Meeks and Zaun Were Fraudulently Joined, This Court Should Retain Jurisdiction Over and Dismiss President Trump's Claims**

When parties attempt to game the court's jurisdiction through the fraudulent joinder of a nondiverse plaintiff, courts have held that the proper path is to ignore the fraudulently joined parties' citizenship for purposes of a court's self-determination of diversity jurisdiction. *See Miller*, 199 F. Supp.2d at 508, 515 (disregarding fraudulently joined plaintiff's citizenship, retaining jurisdiction, and denying motion for remand); *see also Eberspaecher*, 2007 WL 2332470, at *5; *Lerma*, 52 F. Supp. 2d at 1027. Therefore, if the Court were to accept the Amended Complaint, the proper course would be to disregard Rep. Miller-Meeks's and Zaun's Iowa residency, retain jurisdiction, and deny the motion for remand.

Even if the Court declines to disregard Rep. Miller-Meeks's and Zaun's citizenship, however, the alternative procedural path is simply to sever and dismiss the fraudulently joined defendants and retain jurisdiction over the balance of the case. *See Murphy v. Aurora Loan Servs.*, 699 F.3d 1027, 1031 (8th Cir. 2012) (holding that the appropriate course in a case of a fraudulently joined defendant is to "dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims"); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party . . . [and] sever any claim against a party."). In the present case, the Court would therefore dismiss Rep. Miller-Meeks and Zaun, retain jurisdiction over President Trump's claims, and deny the motion for remand.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Remand is deficient and should be denied. Gannett's removal of this case to federal court was proper under the plain language of 28 U.S.C. § 1441(b)(2), and it is uncontested that this Court has jurisdiction over President Trump's state court Petition. Plaintiffs' subsequent attempt to amend the operative pleading for the

transparent purpose of defeating this Court's jurisdiction was (1) *procedurally* impermissible due to President Trump's failure to seek leave to amend and (2) *substantively* impermissible because Rep. Miller-Meeks and Zaun were fraudulently joined as jurisdictional spoilers.

Because President Trump failed to seek leave to amend with his diversity-destroying pleading, this Court should order that the Amended Complaint is a nullity and dismiss President Trump's case with prejudice pursuant to Defendants' Motions to Dismiss.[9] (*See* Dkts. 24, 28.)

In the alternative, because Rep. Miller-Meeks and Zaun were fraudulently joined, this Court should sever and dismiss them from the case and proceed to order that President Trump's case is dismissed with prejudice. Barring the severance of Rep. Miller-Meeks and Zaun, this Court may disregard their citizenship for purposes of its diversity calculus, maintain its jurisdiction over the entirety of the case, and dismiss all claims with prejudice.

Dated April 1, 2025

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
David Yoshimura, AT0012422
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
      *david.yoshimura@faegredrinker.com*

**ATTORNEYS FOR DEFENDANTS**
**DES MOINES REGISTER AND TRIBUNE**
**COMPANY AND GANNETT CO., INC.**

---

[9] The Court should at that time deny Plaintiffs' request for attorneys' fees. Gannett has reasonable—and indeed meritorious—bases for removing the case and for opposing remand. Plaintiffs are not entitled to an award of attorneys' fee irrespective of the Court's determination on Plaintiffs' motion. *See Convent Corp. v. City of N. Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015) ("[W]hen an objectively reasonable basis [for removal] exists, fees should be denied.").

## APPENDIX A

| Court | Example Case Citation |
|---|---|
| Second Circuit Court of Appeals | *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) |
| Third Circuit Court of Appeals | *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 128 n.1 (3d Cir. 2022) |
| Fifth Circuit Court of Appeals | *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n*, 955 F.3d 482 (5th Cir. 2020) |
| Sixth Circuit Court of Appeals | *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001) |
| Middle District of Alabama | *Panthmanathan v. Jackson Nat'l Life Ins. Co.*, No. 3:15-cv-347, 2015 WL 4605757 (M.D. Ala. July 30, 2015) |
| Southern District of Alabama | *Lemley v. Midwest Automation, Inc.*, No. 08-0738-KD-B, 2009 WL 1211382 (S.D. Ala. May 1, 2009) |
| District of Alaska | *Seeds v. ERA Alaska*, Case No. 4:13-CV-00023, 2013 WL 11311389 (D. Alaska Nov. 4, 2013) |
| Central District of California | *Zirkin v. Shandy Media, Inc.*, Case No. 2:18-cv-09207, 2019 WL 626138 (C.D. Cal. Feb. 14, 2019) |
| Northern District of California | *Loewen v. McDonnell*, Case No. 19-cv-00467, 2019 WL 2364413 (N.D. Cal. June 5, 2019) |
| Southern District of California | *Allen v. Eli Lilly & Co.*, No. 10cv141, 2010 WL 3489366 (S.D. Cal. Sept. 2, 2010) |
| Middle District of Florida | *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263 (M.D. Fla. 2009) |
| Northern District of Florida | *Bergmann v. State Farm Mut. Auto. Ins. Co.*, Case No. 3:16cv549, 2016 WL 9414108 (N.D. Fla. Dec. 28, 2016) |
| Southern District of Florida | *Allison v. Apotex Corp.*, Case No. 08-60525-CIV-ZLOCH, 2008 WL 11331976 (S.D. Fla. May 23, 2008) |
| Middle District of Georgia | *Francis v. Great W. Casualty Co.*, Civ. No. 5:17-CV-432 (MTT), 2018 WL 999679 (M.D. Ga. Feb. 21, 2018) |
| Northern District of Georgia | *Rodgers v. Tyson Foods, Inc. et al.*, Case No. 1:20-cv-4127, 2021 WL 2603710 (N.D. Ga. April 27, 2021) |
| Southern District of Georgia | *McClain v. Bank of Am. Corp.*, Civ. No. CV 411-305, 2013 WL 1399309 (S.D. Ga. Apr. 5, 2013) |
| District of Hawaii | *Watanabe v. Lankford*, 684 F. Supp. 2d 1210 (D. Haw. 2010) |
| Central District of Illinois | *Test Drilling Service Co. v. Hanor Co., Inc.*, 322 F. Supp. 2d 953 (C.D. Ill. 2003) |
| Northern District of Illinois | *DC v. Abbott Labs., Inc.*, 323 F. Supp. 3d 991 (N.D. Ill. Aug. 29, 2018) |

| Southern District of Illinois | *Knightsbridge Mgmt., Inc. v. Zurich Am. Ins. Co.*, Case No. 3:20-cv-01165, 2021 WL 508687 (S.D. Ill. Feb. 11, 2021) |
| --- | --- |
| Southern District of Indiana | *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826 (S.D. Ind. 2002) |
| Eastern District of Kentucky | *LifePoint Corp. Servs. Gen. Partnership v. WellCare Health Ins. Co. of Ky., Inc.*, No. 3:22-cv-00029, 2023 WL 2388551 (E.D. Ky. March 7, 2023) |
| Western District of Kentucky | *United Steel Supply, LLC v. Buller*, Civ. No. 3:13-CV-00362-H, 2013 WL 3790913 (W.D. Ky. July 19, 2013) |
| Eastern District of Louisiana | *Cristea v. ArborPro, Inc.*, 701 F. Supp. 3d 441 (E.D. La. 2023) |
| Middle District of Louisiana | *Jones v. Caterpillar, Inc.*, Civ. No. 20-351, 2020 WL 5650417 (M.D. La. Aug. 18, 2020) |
| Western District of Louisiana | *Hvmanstad v. Nat. Interstate Ins. Co.*, Case No. 3:22-CV-01431, 2022 WL 17086690 (W.D. La. Nov. 3, 2022) |
| District of Maryland | *Robertson v. Iuliano*, Civ. No. RDB 10-1319, 2011 WL 453618 (D. Md. Feb. 4, 2011) |
| Eastern District of Missouri | *Terry v. J.D. Streett & Co., Inc.*, No. 4:09CV01471, 2010 WL 3829201 (E.D. Mo. Sept. 23, 2010) |
| District of Montana | *Mahana v. Enerplus Res. U.S.A. Corp.*, CV-12-31, 2012 WL 1947101 (D. Mont. May 30, 2012), *report and recommendation adopted*, 2012 WL 4748178 (D. Mont. Oct. 4, 2012) |
| District of Nevada | *Metlife Home Loans, LLC v. Fidelity Nat'l Title Grp., Inc.*, Case No. 2:20-cv-01798, 2021 WL 4096540 (D. Nev. Sept. 8, 2021) |
| District of New Jersey | *Dutton v. Ethicon, Inc.*, 423 F. Supp. 3d 81 (D.N.J. 2019) |
| Western District of New York | *Castro v. Colgate-Palmolive Co.*, No. 19-CV-279, 2020 WL 2059741 (W.D.N.Y. Apr. 29, 2020) |
| Eastern District of North Carolina | *Chace v. Bryant*, No. 4:10-CV-85-H, 2010 WL 4496800 (E.D.N.C. Nov. 1, 2010) |
| Western District of North Carolina | *Annese v. Diversey, Inc.*, Civ. No. 3:17-CV-00005, 2017 WL 2378808 (W.D.N.C. June 1, 2017) |
| Eastern District of Pennsylvania | *Valido-Shade v. WYETH, LLC*, 875 F. Supp. 2d 474 (E.D. Pa. 2012), *aff'd* (Apr. 29, 2015) |
| District of South Carolina | *Fisher v. Pelstring*, Civ. No. 4:09-252, 2009 WL 10664813 (D.S.C. Sept. 29, 2009) |
| Western District of Tennessee | *Britt v. Newburn*, No. 2:23-cv-02431, 2023 WL 11987088 (W.D. Tenn. Oct. 10, 2023) |

| Eastern District of Texas | *BKL Holdings, Inc. v. Globe Life, Inc.*, Civ. No. 4:22-cv-00170, 2022 WL 2119116 (E.D. Tex. June 13, 2022) |
|---|---|
| Northern District of Texas | *Baker v. Bell Textron, Inc.*, Civ. No. 3:20-CV-292-X, 2020 WL 5513431 (N.D. Tex. Sept. 14, 2020) |
| Southern District of Texas | *Latex Constr. Co. v. Nexus Gas Transmission, LLC*, Civ. No. 4:20-1788, 2020 WL 3962247 (S.D. Tex. July 13, 2020) |
| Western District of Texas | *Raven Cap. Grp. LLC v. CH CRP 26 LLC*, No. SA-21-CV-00059-XR, 2021 WL 1432699 (W.D. Tex. Feb. 12, 2021) |
| Northern District of West Virginia | *Vitatoe v. Mylan Pharm., Inc.*, Civ. No. 1:08cv85, 2008 WL 3540462 (N.D.W. Va. Aug. 13, 2008) |
| Southern District of West Virginia | *Blankenship v. Napolitano*, Civ. No. 2:19-cv-00236, 2019 WL 3226909 (S.D.W. Va. July 17, 2019) |
| District of D.C. | *Doe v. Daversa Partners*, Civ. No. 20-cv-3759, 2021 WL 736734 (D.D.C. Feb. 25, 2021) |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of **Defendant Gannett Co., Inc's Brief in Opposition to Motion for Remand** was served upon all parties of record through the court's CM/ECF electronic filing on April 1, 2025.

/s/ *Paulette Ohnemus*