**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, REPRESENTATIVE MARIANNETTE MILLER-MEEKS, an individual, and FORMER STATE SENATOR BRADLEY ZAUN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>J. ANN SELZER, an individual, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC.,<br><br>Defendants. | Case No.: 4:24-cv-00449-RGE-WPK |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO REMAND TO STATE COURT**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT .......................................................................................... 1

II. ARGUMENT ........................................................................................................................ 2

   A. SNAP REMOVAL SHOULD BE REJECTED BECAUSE IT PROMOTES HAWKING THE DOCKET AND UNDERMINES THE PURPOSE OF THE FORUM-DEFENDANT RULE ......................................................................................... 2

   B. PLAINTIFFS' AMENDMENT WAS PROPER AND DESTROYS DIVERSITY ..... 5

      1. Defendants Mischaracterize the Legal Standard and Attempt to Confuse This Court by Conflating Fraudulent Joinder with Fraudulent Misjoinder ........ 5

      2. The Amendment Adding Representative Miller-Meeks and Zaun Was Procedurally Valid and Jurisdictionally Effective ................................................. 7

      3. Even if, *Arguendo,* the Fraudulent Joinder Case Law Erroneously Relied on by Defendant Applied—Which is Does Not—the Arguments Presented by Defendant Are Meritless ............................................................................................ 9

   C. PLAINTIFFS ARE OWED COSTS AND FEES ............................................................ 11

III. CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Bailey v. Bayer CropScience L.P.*,
  563 F.3d 302 (8th Cir. 2009) ............................................................................................. 8, 9

*Deutsche Bank Nat't Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp, Inc.*,
  532 F. Supp. 3d 1004 (D. Nev. 2021) ..................................................................................... 2

*Dudley v. MetLife Group Inc.*,
  2018 WL 11532618 (S.D. Iowa June 22, 2018) ..................................................................... 8

*Gafford v. Gen. Elec. Co.*,
  997 F.2d 150 (6th Cir.1993) ................................................................................................... 4

*Hensley v. Forest Pharm., Inc.*,
  21 F. Supp. 3d 1030 (E.D. Mo. May 14, 2014) ...................................................................... 2

*In re Midwest Milk Monopolization Litig.*,
  730 F.2d 528 (8th Cir. 1984) ................................................................................................ 10

*In re Prempro Prods. Liab. Litig.*,
  591 F.3d 613 (8th Cir. 2010) .......................................................................................... 5, 6, 7

*Lumbermen's Mutual Casualty Co. v. Elbert*,
  348 U.S. 48 (1954) .................................................................................................................. 4

*Perez v. Forest Labs.*,
  902 F. Supp. 2d 1238 (E.D. Mo. 2012) ............................................................................... 2, 4

*Perfect Output of Kansas City, LLC v. Ricoh Americas Corp.*,
  2012 WL 2921852 (W.D. Mo. July 17, 2012) ..................................................................... 2, 4

*Prather v. Kindred Hosp.*,
  2014 WL 7238089 (W.D. Mo. Dec. 17, 2014) ....................................................................... 2

*Tortella v. RAKS Building Supply*,
  2024 WL 4999432 (D.N.M. Dec. 6, 2024) ............................................................................. 2

*Wiles v. Capitol Indem. Corp.*,
  336 F.3d 806 (8th Cir. 2003) ............................................................................................ 9, 10

<u>Statutes</u>

28 U.S.C. § 1441(b)(2) .................................................................................................... 1

28 U.S.C. § 1447(c) .............................................................................................. 1, 10, 11

28 U.S.C. § 1447(e) .................................................................................................... 8

<u>Rules</u>

Fed. R. Civ. P. Rule 15(a)(2) ....................................................................................... 8, 9

Fed. R. Civ. P. Rule 20(a)-(b) ..................................................................................... 8, 7

Fed. R. Civ. P. Rule 21 .................................................................................................. 8

Iowa R. Civ. P. 1.302 .................................................................................................... 3

## I. PRELIMINARY STATEMENT

Plaintiffs, President Donald J. Trump ("President Trump"), Representative Mariannette Miller-Meeks ("Representative Miller-Meeks"), and Former State Senator Bradley Zaun ("Zaun") (collectively, "Plaintiffs") submit this Reply Brief in further Support of their Motion to Remand to State Court pursuant to 28 U.S.C. § 1447(c) (the "Motion"). (Dkt. 30-32).

Defendant Gannett Co., Inc. ("Gannett") submitted its Brief in Opposition to Motion for Remand (the "Opp"), which was joined by Defendants Des Moines Register and Tribune Company ("DMR"), J. Ann Selzer ("Selzer") and Selzer & Co. ("J&C") (Dkt. 45), in which Gannett attacks Plaintiffs' Amended Complaint (the "Am. Compl.") by erroneously asserting that Representative Miller-Meeks and Zaun were fraudulently joined. This groundless assertion is based on misstatements of both law and fact. Plaintiffs timely filed and served their Amended Complaint, as of right, with the Court's authorization, and with Defendants' consent, and added Representative Miller-Meeks and Zaun for valid, fact-specific reasons, supported by evidence and applicable Iowa law. (Dkt. 23). This case now involves Iowa Plaintiffs, Iowa Defendants, and causes of action arising solely under Iowa statutory and common law. It is precisely the type of dispute that should and must be resolved in Iowa State court. Separately, Gannett fails to justify its use of "snap removal," which subverts the purpose of the forum-defendant rule (28 U.S.C. § 1441(b)(2)), and should not be permitted by this Court.

Gannett's frantic race to federal court through inappropriate use of "snap removal" before any forum defendant could reasonably be served—mere hours after President Trump filed the action—is inconsistent with the purpose of § 1441(b)(2) and has been criticized by many courts for encouraging the exact type of cheap procedural gamesmanship that Gannett undertook in this case to avoid what it perceives to be an unfavorable forum—Iowa District Court for Polk County.

1

Accordingly, the Motion should be granted in its entirety.

## II. ARGUMENT

### A. SNAP REMOVAL SHOULD BE REJECTED BECAUSE IT PROMOTES HAWKING THE DOCKET AND UNDERMINES THE PURPOSE OF THE FORUM-DEFENDANT RULE

Gannett wrongfully argues that "[s]ection 1441(b)(2) clearly and unambiguously authorizes snap removal," and that courts may not consider "public policy" or "congressional intent" when interpreting the statute. (Opp. at 12–13). Gannett further falsely claims that "all Circuit Courts of Appeals that have addressed the merits of snap removal" have upheld it. (Opp. at 13).

Gannett misstates both the statutory scheme and the prevailing case law. Courts within the Eighth Circuit and beyond have recognized that snap removal—a practice where a defendant removes a case before the complaint can be served on a forum defendant—directly undermines the purpose of the forum-defendant rule. *See, e.g., Perez v. Forest Labs.*, 902 F. Supp. 2d 1238, 1244 (E.D. Mo. 2012); *Hensley v. Forest Pharm., Inc.*, 21 F. Supp. 3d 1030, 1035 (E.D. Mo. May 14, 2014); *Perfect Output of Kansas City, LLC v. Ricoh Americas Corp.*, 2012 WL 2921852, at *2 n.3 (W.D. Mo. July 17, 2012); *Prather v. Kindred Hosp.*, 2014 WL 7238089, at *3 (W.D. Mo. Dec. 17, 2014); *Deutsche Bank Nat't Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp, Inc.*, 532 F. Supp. 3d 1004, 1017 (D. Nev. 2021); *Tortella v. RAKS Building Supply*, 2024 WL 4999432, at *3 (D.N.M. Dec. 6, 2024). As explained in the opening brief, courts have criticized snap removal as an abuse of the removal statute that incentivizes procedural gamesmanship, i.e., hawking the docket, and frustrates a plaintiff's right to litigate in a chosen state forum. (Plaintiffs' Memorandum of Law in Support of Their Motion to Remand to State Court, Dkt. 32 at 10-14).

That is exactly what happened here. Gannett removed this case before Plaintiffs could serve any party, and before the Iowa District Court had even assigned a case number or made the case visible to the filer. Alan Ostergren—who filed the petition—attests that he submitted it "in the EDMS system on December 16, 2024, at 9:03 p.m." Ostergren Decl. ¶ 3. The case "does not have a case number until it is assigned by the clerk of court," and "is generally inaccessible to public view until the clerk takes the step of assigning the case number." *Id*. ¶ 5. That step did not occur until the next morning—December 17, 2024, at 8:24:50 a.m.—when the clerk processed the filing, assigned the case number, and affixed the clerk's seal. *Id*.

Because personal service of an original notice, with a copy of the petition attached, is required by Iowa R. Civ. P. 1.302, but an electronic notice is not generated when the clerk processes the case, lawyers must periodically check to see if the notice and petition are ready to be served. *Id*. ¶ 6. And importantly, it is "not typical or expected for the Clerk to process a new case and assign a case number in under 12 hours of its filing, especially outside of business hours." *Id*. ¶ 7. Thus, although the petition was ready to be served as of the morning of December 17, 2024, the quick processing of this petition and notice was atypical. *Id*. Therefore, it cannot reasonably have been expected for President Trump and his counsel to have even known it was ready to be served. *Id*. Further, even had President Trump's counsel checked the docket that morning and seen that the petition was ready to be served, it is absurd to suggest that President Trump's counsel should have gotten it to the process server and expected same-day service before Gannett filed its Notice of Removal mere hours later. *Id*. These realities about Iowa's case processing system demonstrate how Gannett's assertion that "President Trump's failure to serve his pleading and prevent removal was the byproduct of inaction, not impossibility," is farcical. (Opp. at 17).

3

However, this farcical assertion is nothing more than a distraction from the real issue here—Defendants' efforts at removal were clear-as-day gamesmanship. Courts have specifically warned of situations where "lawyers or their agents could camp out at the courthouse and monitor state court filings so that they could remove state actions before service could ever be effectuated on the defendants." *Perfect Output of Kansas City, LLC*, 2012 WL 2921852, at *2 n.3 (internal citations omitted) (granting remand after snap removal by non-forum defendant). This is exactly what happened here despite it being "surely not what Congress intended." *Id.* But not only was Gannett and DMR obviously hawking the docket, there is some additional possibility here that these Defendants used their access as journalists to court filings before they are processed and made public.

As Mr. Ostergren states, he is "aware of a lawsuit filed in this Court against the Iowa Judicial Branch by Courthouse News Service in May 2023 seeking access to new filings before the Clerk of Court assigns a case number and affixes its seal." Ostergren Decl. ¶ 8. That lawsuit was settled in March 2024 with the Iowa courts agreeing to provide "'access to pre-processing filings' to 'registered Iowa Courts Online users who have completed the proper user agreements.'" *Id*. ¶ 8. As Mr. Ostergren further observes, "employees of defendant Des Moines Register and Tribune Company have the access to pre-processed filings described in the settlement." *Id.* ¶ 9.

Not only have Defendants engaged in the exact same undesirable behaviors that courts have relied on in rejecting snap removal—hawking the docket and even using insider resources as journalists to do so—but they did so in a case where nearly all of the Defendants are forum Defendants. As the Supreme Court explained in *Lumbermen's Mutual Casualty Co. v. Elbert*, "whatever fears and apprehensions were entertained by the Framers and ratifiers, there was fear that parochial prejudice by the citizens of one State toward those of another, as well as toward

4

aliens, would lead to unjust treatment of citizens of other States and foreign countries." 348 U.S. 48, 54 (1954). Stated simply, "[r]emoval based on diversity jurisdiction is premised on protecting non-resident litigants from prejudice in state court." *Perez*, 902 F. Supp. 2d at 1242 (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158–59 (6th Cir.1993)). Here, Selzer, S&C, and DMR are all citizens of Iowa—the forum state. Further, Gannett, while not itself a citizen of Iowa, is the corporate parent of DMR. Allowing these Defendants to abuse removal based on diversity jurisdiction, while engaging in perhaps the worst example of docket hawking to date, provides this Court with ample basis to reject snap removal in this instance.

This Court should neither allow forum Defendants to exploit timing to remove cases as part of a forum shopping and judge shopping strategy nor reward these Defendants for Gannett's shameless hawking of the docket. Allowing removal under these circumstances would incentivize future gamesmanship by other litigants and erode the integrity of diversity jurisdiction.

### B. PLAINTIFFS' AMENDMENT WAS PROPER AND DESTROYS DIVERSITY

#### 1. Defendants Mischaracterize the Legal Standard and Attempt to Confuse This Court by Conflating Fraudulent Joinder with Fraudulent Misjoinder

Gannett misleadingly applies the doctrine of fraudulent joinder, but the circumstances here actually only fit, but in reality do not meet the standard for, the separate and rarely applied doctrine of fraudulent *misjoinder*. Fraudulent joinder involves the addition of a non-diverse <u>*defendant*</u>. See *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) ("[f]raudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant"). Fraudulent *misjoinder* is a rarely applied doctrine involving joinder of "a nondiverse party." *Id.* As reflected in *Prempro*, fraudulent misjoinder may be an exception when a plaintiff joins non-diverse parties, i.e., fraudulent misjoinder is not limited to defendants. That includes situations involving a non-diverse plaintiff—as was the issue considered by the court in *Prempro*. *Id.* at 617-620 (analyzing

5

fraudulent misjoinder where three plaintiffs sued together and alleged claims involving developing breast cancer from taking certain medications). This Court should not consider Gannett's arguments under the fraudulent joinder standard as they have provided no basis for the application of the fraudulent joinder case law when only the fraudulent misjoinder standard applies.

Gannett has no plausible argument supporting the notion that Representative Miller-Meeks or Zaun were fraudulently misjoined. The doctrine of fraudulent misjoinder addresses situations where claims against parties are improperly joined under Rule 20 because they have "no real connection" to the controversy. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d at 622. The standard is not whether the claims themselves are weak, which is not the reality here, but if "the claims bear no relation to each other." *Id*.

Here, the claims of President Trump, Representative Miller-Meeks, and Zaun are not merely related—they are factually and legally intertwined. All three Plaintiffs challenge the same course of conduct: the publication of manipulated and false polling data by the same Defendants, using the same pollster (Selzer), published in the same newspaper (*Des Moines Register*), and on the same dates. Specifically, the Harris Poll[1] and the Congressional Poll[2] were disseminated nationwide through print and online platforms and were intended to, and did in fact, dampen enthusiasm and turnout among Republican voters. (*Id*. ¶¶ 8, 26, 42, 49). Critically, all three plaintiffs allege they were damaged by the Harris Poll *and* the Congressional Poll.

---

[1] The manipulated, incorrect, and improperly leaked Des Moines Register/Mediacom Iowa Poll conducted by Selzer and S&C, and published online by DMR and Gannett in the *Des Moines Register* and other Gannett-owned outlets including nationally distributed *USA Today*, on November 2, 2024, and in print on November 3, 2024, which purported to show Harris leading President Trump in Iowa by three points (47%-44%), despite President Trump ultimately winning the state by more than thirteen percent . (Am. Compl. ¶¶ 1-2).

[2] The poll published the day after the Harris Poll, November 4, 2024, by DMR and Gannett in the online and print versions of the *Des Moines Register*, which purported to show that incumbent Representative Miller-Meeks trailed by sixteen points (53%-37%) against Democrat challenger Christina Bohannan in the race for Iowa's 1st Congressional District, even though Representative Miller-Meeks ultimately won the 1st District by two-tenths of a percent. (Am. Compl. ¶ 3).

6

Each Plaintiff alleges distinct but factually parallel injuries stemming from this coordinated misinformation campaign. President Trump was forced to divert national campaign resources to Iowa in the final hours of the election cycle to counteract the false narrative that Kamala Harris had overtaken him. (*Id*. ¶¶ 2, 131). Representative Miller-Meeks was subjected to an expensive and baseless recount driven by the fabricated poll numbers and suffered reputational damage from the false implication that she was losing by a landslide. (*Id*. ¶¶ 90–92, 132). Additionally, Zaun, who ultimately lost his State Senate race, alleges that his opponent Matt Blake defeated him "fueled by momentum from the Harris Poll." (*Id*. ¶¶ 6, 100–102, 133). As the Complaint alleges, the Harris Poll and the Congressional Poll were not "misses, but rather attempts to corruptly influence and interfere in the outcome of the 2024 Presidential Election and other key elections." (*Id*. ¶ 5). All three Plaintiffs assert claims under the Iowa Consumer Fraud Act, for fraudulent misrepresentation, and for negligent misrepresentation. (*Id*. ¶¶ 103–163), and all seek to hold the same defendants accountable for the same core misconduct as just outlined. These are textbook examples of claims properly joined under Rule 20 of the Federal Rules of Civil Procedure. Suggesting that these claims "bear no relation to each other," is flatly inconsistent with the facts set forth in the Amended Complaint. *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 622. The claims are based on identical conduct, identical publications, an identical time frame, and a unified media dissemination effort—falling far outside the scope of fraudulent misjoinder. This is critical, because, again, the doctrine of fraudulent *misjoinder* is what applies here, not the doctrine of fraudulent joinder.

### 2. The Amendment Adding Representative Miller-Meeks and Zaun Was Procedurally Valid and Jurisdictionally Effective

Plaintiffs' Amended Complaint adding Representative Mariannette Miller-Meeks and Former State Senator Bradley Zaun was timely, procedurally valid, and expressly authorized by

7

this Court. Pursuant to the Court's Scheduling Order dated January 10, 2025, Plaintiffs were permitted to amend their pleading to add "President Trump and *any other parties* joined as plaintiffs" by January 24, 2025. (*See* Dkt. 20 at 2 (emphasis added)). This language was repeated in a second such scheduling order entered on January 24, 2025. (*See* Dkts. 21, 22 (permitting filing by "President Trump and *any other parties* joined as plaintiffs")). Defendants consented to both schedules and raised no objection when the Amended Complaint was filed. As such, the amendment was not only procedurally proper under Federal Rule of Civil Procedure 15(a)(2), but effectuated with the Court's express authorization, and Defendant's express consent. Defendants' attempt to retroactively recharacterize the filing as a "nullity" is unsupported and directly contradicted by the record.

Gannett primarily relies on *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302 (8th Cir. 2009), and *Dudley v. MetLife Group Inc.*, 2018 WL 11532618 (S.D. Iowa June 22, 2018), to wrongly argue that even an amendment filed as of right may be disregarded if it affects diversity jurisdiction. But these cases are inapposite. Both *Bailey* and *Dudley* involved the post-removal joinder of <u>*defendants*</u>, the very scenario contemplated by 28 U.S.C. § 1447(e). Here, by contrast, the amendment added <u>*plaintiffs*</u>, and § 1447(e) does not apply. The amending of a pleading to add new plaintiffs is governed by Rules 15, 20, and 21—not § 1447(e). And as is clear from Rule 20, Plaintiffs may be joined where they have claims "arising out of the same transaction, occurrence, or series of transactions or occurrences" or "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. Rule 20(a)-(b). Here, we have both standards met—the same legal claims asserted by all three plaintiffs, and nearly the identical transactions or occurrences in terms of the who, what, when, where, why, and how of the polling data collection and dissemination. (*See generally,* Am. Compl.).

8

Moreover, unlike in *Dudley*, Plaintiffs here disclosed the jurisdictional consequence of the amendment and promptly moved for remand. (*See* Dkt. 30 at 1–2). Defendants were well aware of the proposed amendment, participated in the joint scheduling motions, and agreed to orders explicitly contemplating the addition of "any other parties joined as plaintiffs." (*See* Dkts. 19–22). The suggestion that the amendment was a "nullity" or an ambush is disingenuous and refuted by information available to this Court on the docket.

Plaintiffs' amendment also satisfies Rule 15(a)(2), which allows amendments with the opposing party's written consent. Here, the consent was embodied in the Court-approved schedules proposed jointly by the parties. (*See* Dkts. 19, 20, 21, 22). Defendants' current position—arguing that Plaintiffs should have moved for leave—is incompatible with the express language of the orders they helped draft. Even if *Bailey* did apply, the Court would still "consider whether justice requires that [the plaintiff] be permitted to join [the additional] defendant." *Bailey*, 563 F.3d at 307. Justice plainly requires joinder here. The claims of Representative Miller-Meeks and Zaun arise from the same conduct, committed by the same actors, involving the same polling events at the same time, and result in highly overlapping issues of fact and law. Litigating these claims separately would risk inconsistent judgments and prejudice all parties.[3]

### 3. Even if, *Arguendo,* the Fraudulent Joinder Case Law Erroneously Relied on by Defendant Applied—Which is Does Not—the Arguments Presented by Defendant Are Meritless

Even under the fraudulent joinder standard urged by Gannett (which is inapplicable here), its argument still falls flat. As the Eighth Circuit explained in *Filla v. Norfolk S. Ry. Co.*, citing its earlier decision in *Wiles v. Capitol Indem. Corp.*, "joinder is fraudulent when there exists no

---

[3] If for some reason the Court finds that the law required Plaintiff to have sought leave to amend, Plaintiffs respectfully requests that the Court either (1) construe the motions seeking an extension of time to file and serve an Amended Complaint as a motion for leave to amend under Rule 15(a)(2); or (2) grant Plaintiff leave to move for leave to amend under Rule 15(a)(2) in any ruling denying this motion to remand.

9

reasonable basis in fact and law supporting a claim against the resident defendants." 336 F.3d 806, 810 (8th Cir. 2003) (*quoting Wiles*, 280 F.3d 868, 871 (8th Cir. 2002)). This standard appears to be even more exacting than the Rule 12(b)(6) standard for dismissal. *See*, *Filla* at 810–11. Gannett has not come close to meeting such a high burden.

Representative Miller-Meeks and Zaun allege specific, individualized harm caused by the same manipulated polling conduct at the heart of the original Petition. As set forth in detail in Plaintiffs' briefing in opposition to Defendants' motion to dismiss, each of these claims rests on well-supported factual allegations and are actionable under Iowa law. (Dkts. 51-52). And as outlined in section II.B.1. *supra*, the legal claims are identical and have the same identify of parties on each side, and are all based on the same core set of facts. Thus, all of the Plaintiffs have each set forth strong claims against each of the Defendants and so there is no basis to Defendant Gannett's argument on fraudulent joinder. *Filla*, 336 F.3d at 810 ("If there is a 'colorable' cause of action—that is, if the state law might impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder.").

Defendants' argument that Representative Miller-Meeks and Zaun were added solely to defeat jurisdiction is not supported by the record. Their claims are real, well-pleaded, and closely related to those of President Trump. Here again, Plaintiffs refer to their arguments in section II.B.1. *supra*. As the Eighth Circuit has recognized, joinder is proper where "the absence of the party would risk double, multiple, or inconsistent obligations." *In re Midwest Milk Monopolization Litig.*, 730 F.2d 528, 532 (8th Cir. 1984). That is precisely the case here. There was no fraudulent joinder here, because the doctrine does not even apply. Because Defendants cannot meet their heavy burden of showing fraudulent joinder, and because diversity has been destroyed, this case must be remanded under 28 U.S.C. § 1447(c).

### C. PLAINTIFFS ARE OWED COSTS AND FEES

As set forth in Plaintiffs' motion to remand, costs and fees are due under the present circumstances. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred [because] of the removal." 28 U.S.C. § 1447(c). For the reasons set forth in Plaintiffs' motion, and for the reasons set forth above, Defendants' attempt to remove and then keep this case in federal court is not justified under the law. The Court should award Plaintiffs their attorneys' fees incurred for these reasons and also because Defendants refused to concede remand even after there was clearly no longer diversity, and Plaintiffs' counsel requested that Defendants agree to remand in order to save time, money, and judicial resources.

Defendant Gannett's urging this court to apply the standard related to fraudulent joinder without even raising the issue of whether the Court should instead be considering the far less favorable (to Gannett) case law related to fraudulent misjoinder, provides further support for the granting of costs and fees for Plaintiffs' motion to remand. This is particularly so in view of the standard for fraudulent misjoinder being obviously more applicable under these circumstances since fraudulent joinder, as discussed above, always involves the addition of a new defendant, and thus obviously inapplicable here, whereas fraudulent misjoinder can be asserted in circumstances involving joinder of additional plaintiffs or defendants. Moreover, it is appropriate for the Court to consider this failure by Gannett as no mere oversight since the case law making the distinction between fraudulent joinder and fraudulent misjoinder is cited in Defendant's brief at footnote 8 on page 23.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this case to the Iowa District Court for Polk County and award attorneys' fees pursuant to 28 U.S.C. § 1447(c).

Dated: April 15, 2025

**Bochner PLLC**

/s/ Edward Andrew Paltzik
Edward Andrew Paltzik, Esq. (*pro hac vice*)
1040 Avenue of the Americas, 15th Fl.
New York, New York 10018
516-526-0341
edward@bochner.law


/s/ Alan R. Ostergren
ALAN R. OSTERGREN
Attorney at Law
Alan R. Ostergren, PC
500 East Court Avenue
Suite 420
Des Moines, Iowa 50309
(515) 297-0134
alan.ostergren@ostergrenlaw.com

*Counsel to Plaintiffs President Donald J. Trump, Representative Mariannette Miller-Meeks, and Former State Senator Bradley Zaun*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025 I caused a true and correct copy of the foregoing Plaintiffs' Reply in Support of Its Motion to Remand to be served on all counsel of record via the Court's CM/ECF system.

Dated: April 15, 2025 /s/ Edward Andrew Paltzik
Edward Andrew Paltzik, Esq.