## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, | |
| *Plaintiff*, | Civil Case No. 4:24-cv-449-RGE-WPK |
| v. | |
| J. ANN SELZER, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC., | **DEFENDANTS J. ANN SELZER AND SELZER & COMPANY'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6)** |
| *Defendants*. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

ARGUMENT .................................................................................................................2

    I.    Plaintiff's Claim That Election Polls and the News Coverage They Generate Can Be Labelled "Fraud" Unprotected by the First Amendment is Utterly Baseless. ...................................................................................................................2

        A.    Dismissal on the pleadings is necessary and proper. .................................. 3

        B.    There is No General First Amendment Exception for False Speech. ......... 4

        C.    Election Polling is Not Commercial Speech and is Fully Protected Election News Coverage. ............................................................................ 7

        D.    No Case Law Supports Plaintiff's Theory of Liability. ............................ 10

    II.    Plaintiff's Claims are Facially Deficient Under Iowa Law. ...................................13

        A.    Plaintiff Fails to Plead a Cognizable ICFA Claim. ................................... 13

        B.    Plaintiff Fails to Plead a Fraudulent Misrepresentation Claim. ................ 14

        C.    Plaintiff Fails to Plead a Negligent Misrepresentation Claim. ................. 16

    III.    Piercing the Corporate Veil. ..................................................................................19

CONCLUSION .............................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*281 Care Comm. v. Arneson,*
    638 F.3d 621 (8th Cir. 2011) ................................................................. 1, 5, 6, 7

*303 Creative v. Elenis,*
    600 U.S. 570 (2023) ............................................................................... 1, 9

*B & B Asphalt Co. v. T. S. McShane Co., Inc.,*
    242 N.W.2d 279 (Iowa 1976) ................................................................. 15

*Banks v. Beckwith,*
    762 N.W.2d 149 (Iowa 2009) ................................................................. 18

*Bill Johnson's Restaurants v. NLRB,*
    461 U.S. 731 (1983) ............................................................................... 5

*Blackstone Realty LLC v. FDIC,*
    244 F.3d 193 (1st Cir. 2001) ................................................................. 3

*Board of Trustees of State Univ. of N.Y. v. Fox,*
    492 U.S. 469 (1989) ............................................................................... 8

*Brandt v. Weather Channel, Inc.,*
    42 F. Supp. 2d 1344 (S.D. Fla.) ............................................................. 13

*Butts v. Iowa Health Sys.,*
    No. 13-1034, 2015 WL 1046119 (Iowa Ct. App. Mar. 11, 2015) ......................... 14

*Central Hudson Gas & Electric Corp. v. Public Services Commission,*
    447 U.S. 557 (1980) ............................................................................... 8

*Ceran v. Reisch,*
    No. 19-cv-2048-MAR, 2020 WL 6074114 (N.D. Iowa. Sept. 9, 2020) ................... 19

*Cincinnati v. Discovery Network,*
    507 U.S. 410 (1993) ............................................................................... 8

*Columbia Broadcasting System, Inc. v. Democratic Nat'l Comm.,*
    412 U.S. 94 (1973) ................................................................................. 9

*Conveyor Co. v. Sunsource Tech. Servs., Inc.,*
    398 F.Supp.2d 992 (N.D. Iowa 2005) ..................................................... 16, 17

*Counterman v. Colorado,*
    600 U.S. 66 (2023) ............................................................................... 3, 17

*Daily Herald, Inc. v. Munro*,
  838 F.2d 380 (9th Cir. 1988)......................................................................................... 10

*Davidson & Jones, Inc. v. County of New Hanover*,
  255 S.E.2d 580 (N.C. Ct. App. 1979) .......................................................................... 18

*Doe v. McKesson*,
  71 F.4th 278 (5th Cir. 2023) ........................................................................................... 3

*Donald J. Trump for President, Inc. v. WP Co. LLC*,
  No. CV 20-626 (RC), 2023 WL 1765193 (D.D.C. Feb. 3, 2023).................................. 3

*Durnford v. MusclePharm Corp.*,
  907 F.3d 595 (9th Cir. 2018).......................................................................................... 3

*FEC v. Cruz*,
  596 U.S. 289 (2022) ..................................................................................................... 14

*Florida Bar v. Went For It, Inc.*,
  515 U.S. 618 (1995) ....................................................................................................... 8

*Ford v. Mckesson*,
  739 F. Supp. 3d 344 (M.D. La. 2024) ........................................................................... 3

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ......................................................................................................... 4

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ....................................................................................................... 4

*Herbert v. Lando*,
  441 U.S. 153 (1979)........................................................................................................ 5

*Hollander v. CBS News, Inc.*,
  No. 16 Civ. 6624 (PAE), 2017 WL 1957485 (S.D.N.Y. May 10, 2017)..................... 11

*Hollander v. Garrett*,
  710 Fed. Appx. 35 (2d Cir. 2018) ................................................................................ 11

*Hutchinson v. Miller*,
  797 F.2d 1279 (4th Cir. 1986)...................................................................................... 14

*Joseph Burstyn v. Wilson*,
  343 U.S. 495 (1952) ....................................................................................................... 9

*Lockard v. Carson*,
  287 N.W.2d 871 (Iowa 1980) ...................................................................................... 16

*Madigan v. Telemarketing Assoc., Inc.*,
  538 U.S. 600 (2003) ............................................................................................... 4

*McGough v. Gabus*,
  526 N.W.2d 328 (Iowa 1995) ............................................................................... 13

*Mills v. Alabama*,
  384 U.S. 214 (1966) ......................................................................................... 10, 12

*Mohsen v. Veridian Credit Union*,
  733 F. Supp. 3d 754 (N.D. Iowa 2024) ................................................................ 18

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................................... 9, 17

*National Institute of Family and Life Advocates v. Raoul*,
  685 F.Supp.3d 688 (N.D. Ill. 2023) ..................................................................... 12

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447 (1978) ............................................................................................... 8

*Palleson v. Jewell Co-op. Elevator*,
  219 N.W.2d 8 (Iowa 1974) ................................................................................... 18

*Rice v. Paladin Enterprises*,
  128 F.3d 233 (4th Cir. 1997) .................................................................................. 5

*Spreitzer v. Hawkeye State Bank*,
  779 N.W.2d 726 (Iowa 2009) ............................................................................... 16

*Stancik v. CNBC*,
  420 F. Supp. 2d 800 (N.D. Ohio 2006) ................................................................ 17

*State ex rel. Att'y Gen. of Iowa v. Autor*,
  991 N.W.2d 159 (Iowa 2023) ............................................................................... 13

*Sw. Publ'g Co. v. Horsey*,
  230 F.2d 319 (9th Cir. 1956) ................................................................................ 14

*Telescope Media Grp. v. Lucero*,
  936 F.3d 740 (8th Cir. 2019) ............................................................................... 1, 9

*Trump v. Chicago Trib. Co.*,
  616 F. Supp. 1434 (S.D.N.Y. 1985) ....................................................................... 3

*Trump v. Clinton*,
  653 F. Supp. 3d 1198 (S.D. Fla. 2023) ................................................................ 19

*Trump v. Trump*,
   189 N.Y.S.3d 430 (N.Y. Sup. Ct. 2023) ............................................................... 3

*United States v. Alvarez*,
   567 U.S. 709 (2012) ............................................................................... passim

*United States v. Nat'l Treasury Employees Union*,
   513 U.S. 454 (1995) ...................................................................................... 9

*Van Sickle Constr. Co. v. Wachovia Com. Mortg.*,
   783 N.W.2d 684 (Iowa 2010) ....................................................................... 16

*Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ...................................................................................... 4

*Washington League for Increased Transparency & Ethics v. Fox News*,
   2021 WL 3910574 (Wash. Ct. App. 2021) ............................................... 12

**Statutes**

Iowa Code § 714H.2 ............................................................................................... 13

Iowa Code § 714H.3 ............................................................................................... 13

**Rules**

Fed. R. Civ. P. 11(b)(2)........................................................................................... 1

**Other Authorities**

Restatement (Second) of Torts § 328D................................................................ 18

Restatement (Second) of Torts § 531................................................................... 15

Restatement (Second) of Torts § 538................................................................... 15

Restatement (Second) of Torts § 552................................................................... 17

William L. Prosser, *Handbook of the Law of Torts* § 105 (4th ed. 1971).................... 15

William Shakespeare, *Macbeth* ........................................................................... 19

**INTRODUCTION**

Plaintiff's claim that election polling and reporting is "commercial speech" and can be sanctioned as "consumer fraud" is frivolous, lacking any basis in law or fact. Defendant J. Ann Selzer's Motion to Dismiss explained that the First Amendment bars such a cause of action for "false news" because it is antithetical to constitutional history and tradition, ignores decades of jurisprudence where litigants attempted to expand the limited categories of unprotected speech, and lacks precedent in any jurisdiction. Selzer Defs.' Br. Supp. Mot. to Dismiss ("Br."), ECF No. 94 at 1–2, 6–14. Plaintiff fails to address any of these issues, and his opposition makes it painfully clear the claims were never "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Fed. R. Civ. P. 11(b)(2).

Not only is he unable to name *a single case* applying or approving any of his theories of liability, Plaintiff fails to grapple with the fact that the Supreme Court rejected a generalized First Amendment exception for "false speech," *United States v. Alvarez*, 567 U.S. 709, 718 (2012) (plurality opinion) (*see* Br. 2, 7, 9, 12), or that the Eighth Circuit applied *Alvarez* to reject applying fraud principles "to all knowingly false speech" or political speech. *281 Care Comm. v. Arneson*, 638 F.3d 621, 634–35 & n.2 (8th Cir. 2011). Plaintiff also ignores that both the Supreme Court and Eighth Circuit have rejected the "commercial speech" theory on which his fraud claims rest. *See 303 Creative v. Elenis*, 600 U.S. 570, 594 (2023); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 751–52 (8th Cir. 2019). When Plaintiff bothers to cite any authority at all, he offers a mashup of out-of-context case references or misapplies some of the most rudimentary First Amendment concepts through the use of misleading partial citations.

This case is built entirely on a tissue of shopworn campaign rhetoric and fever-dream conspiracy theories, yet even accepting Plaintiff's wild factual assertions as true, the Revised Amended Complaint lacks any plausible legal theory on which to grant relief. The allegations of "fraudulent news" are an affront to basic First Amendment law, and Plaintiff continues to butcher elementary concepts like duty, reliance, causation, and damages under Iowa law. The Court should dismiss the Revised Amended Complaint.

## ARGUMENT

**I.**    **Plaintiff's Claim That Election Polls and the News Coverage They Generate Can Be Labelled "Fraud" Unprotected by the First Amendment is Utterly Baseless.**

Plaintiff complains that Selzer's motion attempts to "trivialize" his claims, but that would be a redundancy. Pl.'s Mem. Opp. Selzer Defs.' Mot. to Dismiss ("Pl. Opp."), ECF No. 101-1 at 1. His effort to mask the plain fact he is seeking to penalize "false news" contrary to our constitutional traditions boils down to two risible propositions: (1) that polls are "products" and must be analyzed as "commercial speech" because "creating polls is Selzer's job," and (2) that polls conducted to assess voter sentiment as part of election coverage are not "news." Pl. Opp. 17. Plaintiff's counsel tries to deny that President Trump has brought "a claim for 'fraudulent news,'" but his argument that he can sue for "misrepresentations in the commercial context," *id*. at 11, is exactly that. It simply requires redefining both "news" and "commercial speech," contrary to what the law allows. As Selzer pointed out, the Constitution does not permit manufacturing such a claim through artful labeling. Br. 6–7. Plaintiff cites nothing to support his astonishing conclusions that fly in the face of hornbook First Amendment law, and he entirely ignores the constitutional analysis in the Motion to Dismiss. *See* Br. 6–14.

### A.    Dismissal on the pleadings is necessary and proper.

Plaintiff's new assertion that a motion to dismiss cannot be granted on First Amendment grounds because it is an affirmative defense that must be assessed "action-by-action" is absurd. Pl. Opp. 14. Dismissal is warranted whenever a plaintiff fails to state a plausible legal theory on which relief may be granted, and courts have granted motions to dismiss on First Amendment grounds in cases brought by Trump against perceived enemies in the media for over forty years. *See*, *e.g.*, *Trump v. Chicago Trib. Co.*, 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985) (invoking First Amendment to dismiss defamation claim against architecture critic for calling a Trump building an "an atrocious, ugly monstrosity"); *Donald J. Trump for President, Inc. v. WP Co. LLC*, No. CV 20-626 (RC), 2023 WL 1765193, at *4 (D.D.C. Feb. 3, 2023) (invoking First Amendment to dismiss defamation claim against a media entity); *Trump v. Trump*, 189 N.Y.S.3d 430, 444 (N.Y. Sup. Ct. 2023) (invoking First Amendment to dismiss tortious interference claim against media entity).

Plaintiff's cited cases fall far short of supporting his point.[1] The only case that even mentions the First Amendment, *Doe v. McKesson*, 71 F.4th 278, 292 (5th Cir. 2023), tells only half the story. That decision (which allowed a "negligent protest" complaint to proceed under Louisiana law) was issued shortly before the Supreme Court clarified the applicable First Amendment standard in *Counterman v. Colorado,* 600 U.S. 66 (2023). With the governing principles clarified, the district court on remand held that plaintiff's legal theory was inherently invalid, and the defendant "cannot be held liable in negligence for actions taken while exercising his First Amendment freedoms." *Ford v. Mckesson*, 739 F. Supp. 3d 344, 352–53 (M.D. La. 2024).

---

[1] *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018), stands only for the proposition that "plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage," and says nothing about a case—like this one—where the plaintiff's legal theories are infirm. *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197–99 (1st Cir. 2001) addresses a situation where a factual question over the intent and language of a contract precluded resolving a statute of frauds affirmative defense on the pleadings.

Accordingly, this Court should dismiss Plaintiff's claims where existing precedent bars claims for "fake news."

### B.      There is No General First Amendment Exception for False Speech.

Plaintiff asserts Defendants are "hiding behind" a nonexistent "blanket First Amendment immunity defense," Pl. Opp. 2, but he overlooks entirely the historic constitutional bar against penalizing "false news" and the First Amendment rule that speech is presumptively protected unless it falls into a specific exception. Br. 7–11. True, the unprotected categories include two that turn on falsity—defamation and fraud—but the Supreme Court has expressly rejected attempts to borrow from those categories to create a broader exception applicable to false statements. *Alvarez*, 567 U.S. at 718 (there is no "general exception to the First Amendment for false statements"). This case does not involve any claim for defamation, nor does it involve any actual allegation of fraud, as previously explained. Br. 8–9, 11–13. Plaintiff repeatedly uses the word "fraud" as an incantation, but as the Court made clear, "[s]imply labeling an action one for 'fraud' … will not carry the day." *Madigan v. Telemarketing Assoc., Inc*., 538 U.S. 600, 617 (2003). Any attempt to bring a fraud claim without satisfying its essential elements "would support swift dismissal." *Id*.

Rather than address Defendants' analysis or any of the cases cited, Plaintiff offers a random collection of one-liners from defamation and commercial speech cases to suggest false speech generally lacks First Amendment protection. Pl. Opp. 12–15. The obvious problem with this is that it is *precisely* the line of argument the Supreme Court rejected in *Alvarez*. Responding to the government's citation of *the same cases* that now appear in Plaintiff's opposition—*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Garrison v. Louisiana*, 379 U.S. 64 (1964); *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976); and *Madigan*, 538 U.S. 600—the Court explained that "isolated statements in some earlier decisions do not support the Government's submission that false statements, as a general rule, are beyond constitutional

protection." *Alvarez*, 567 U.S. at 718–19.[2] It emphasized that the Court "has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection." *Id.* at 719. The Eighth Circuit reached the same conclusion in another case Plaintiff does not cite, noting "Supreme Court precedent does not currently recognize knowingly false speech as a category of unprotected speech." *281 Care Comm. v. Arneson*, 638 F.3d 621, 635 (8th Cir. 2011).

Undaunted by this, and without the slightest whiff of legal authority, Plaintiff posits that "[a]mong the many species of fraud, false statements—whether on the pages of a newspaper or elsewhere—do not enjoy immunity from tort liability when the speaker makes the statements with knowledge of falsity or reckless disregard for truth or falsity." Pl. Opp. 13. *Really?* No court has ever said so, and *Alvarez* explained why it is illegitimate to mix and match theories as Plaintiff does here in an attempt to create a general category of unprotected false speech. The Supreme Court observed that the "knowing falsity and reckless disregard" standard was drawn from defamation law and exists to ensure the *narrowness* of that exception. It refused to extend defamation liability rules outside that specific category because doing so would "expand[] liability in a different, far greater realm of discourse and expression." *Alvarez*, 567 U.S. at 719. Doing so "inverts the rationale for the exception," and the Court concluded "[a] rule designed to tolerate certain speech ought not to blossom to become a rationale for a rule restricting it." *Id.* at 719–20. The Eighth Circuit specifically rejected applying defamation principles to "false" political speech

---

[2] Plaintiff now adds citations to *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983), a case involving unfair labor practices, *Herbert v. Lando*, 441 U.S. 153 (1979), another defamation case, and *Rice v. Paladin Enterprises*, 128 F.3d 233 (4th Cir. 1997), a case involving aiding and abetting murder for hire. Pl. Opp. 12–13. None of these cases has the slightest relevance to Plaintiff's argument that he can sue over "false news."

because it would create "an unprecedented and vast exception to First Amendment guarantees." *Arneson*, 638 F.3d at 634–35 (quotation omitted).

The Court likewise explained that fraud is a different and unique category because it is confined to false claims made to "secure moneys or other valuable considerations [such as] offers of employment." *Alvarez*, 567 U.S. at 723; *see also id.* at 734 (Breyer, J., concurring) ("Fraud statutes … typically require proof of a misrepresentation that is material, upon which the victim relied, and which caused actual injury."). To expand the concept of fraud "absent any evidence that the speech was used to gain a material advantage" would unleash "a broad censorial power unprecedented in this Court's cases or in our constitutional tradition." *Id.* at 723; *see also Arneson*, 638 F.3d at 634 n.2 (rejecting application of fraud principles "to all knowingly false speech" because "the Supreme Court has carefully limited the boundaries of what is considered fraudulent speech"). Expanding the concept of fraud in the way Plaintiff advocates here would cast a chilling effect that "the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom." *Alvarez*, 567 U.S. at 723.

Now, for the first time in this case, Plaintiff cites *Alvarez*, but without addressing any of the Court's analysis of why it expressly declined to apply concepts from defamation or fraud cases to create a general exception for false speech. *Compare* Pl. Opp. 19–20 with Br. 2, 7, 9, 12. *See supra* 3–5. Instead, Plaintiff merely seeks to distinguish *Alvarez* by claiming the defendant's lies in that case were victimless, whereas President Trump "sustained actual damages." Pl. Opp. 19. That assertion is false as a matter of law, Br. 14–16; *see infra* at 14, but even if it were not, Plaintiff misses the point. *Alvarez* explored the differences between the unprotected categories of speech— fraud and defamation—and why those categories cannot be expanded to reach false statements

generally. *Alvarez*, 567 U.S. at 718–19. The Eighth Circuit adopted and applied that analysis to political campaign speech in *Arneson*, 638 F.3d at 634 n.2, yet Plaintiff nowhere mentions it.

Defendants repeatedly have explained the limited nature of the fraud exception and how Plaintiff cannot avoid the First Amendment by merely crying fraud. Br. 11–13. And, consistent with the reasoning in *Alvarez* and *Arneson*, Defendants also observed that accepting Plaintiff's theory of liability would eviscerate the First Amendment because it has no limiting principle. *Id.* at 13–14. Plaintiff's response? Silence, except for the argument that would (or should) embarrass a first-year law student—that Selzer's polls and the *Register* are "consumer products" and "commercial speech" because they operate for-profit businesses. Pl. Opp. 11–12, 15–16. That is no response at all.

### C. Election Polling is Not Commercial Speech and is Fully Protected Election News Coverage.

Plaintiff's opposition is littered with assertions that election polls are not "news" but are "for-profit *products* that were paid for by DMR and Gannett, and *created* by Selzer and S&C in exchange for payment." Pl. Opp. 12 (overemphasis in original). He describes Selzer's discussion of her polls in news interviews as "commercial promotional efforts." *Id.* at 16. And he concludes Selzer's polls "were *false* speech, and *commercial* speech at that." *Id.* at 12 (again, overemphasis in original). Plaintiff is so committed to this line of argument that he quotes three times (with underscoring and in italics) a statement Selzer made in a Fox News interview that "the polling industry is predicated on getting people to pay money for their products." *Id.* at 11, 16, 29. But this is not the mic-drop moment Plaintiff assumes it is.

Instead, as with "fraud," it is another example of where a word does not mean what Plaintiff seems to think it means. *See*, *e.g.*, Inigo Montoya; Br. 8. And it reveals the central flaw at the core of Plaintiff's case. He assumes that because Selzer & Company and the *Register* are for-profit

businesses, the claims "are justifiably pled as statutory consumer fraud, fraudulent misrepresentation, and negligent misrepresentation—not as a disagreement with a news story." Pl. Opp. 11–12. Plaintiff cites no authority to support this obvious fallacy—for none exists—and the few cases he does cite merely attest to the existence of the commercial speech doctrine. *Id.* at 15–16. But "commercial speech" is not speech someone was paid to produce, as Plaintiff evidently thinks. The commercial speech doctrine set forth in *Central Hudson Gas & Electric Corp. v. Public Services Commission,* 447 U.S. 557 (1980), applies to advertising—speech proposing commercial transactions—and not speech made in connection in some way with commerce, as Plaintiff seems to erroneously assume. Worse still, Plaintiff fails to quote those parts of the cases he cites that undermine the premise of his argument.[3] And Plaintiff's errors are not limited to sins of omission.[4] Lacking any support for the central load-bearing premise about commercial speech, Plaintiff's case collapses.

But wait, there's more. The problem is not just that Plaintiff lacks any legal authority for his baseless legal assertions; it is that he aggressively ignores overwhelming precedent to the

---

[3] Plaintiff omits language about the defining characteristics of commercial speech in the opinions he cites. Pl. Opp. 15. *See*, *e.g.*, *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989) ("[S]peech that proposes a commercial transaction … is what defines commercial speech" and not just "speech for profit .… Some of our most valued forms of fully protected speech are uttered for a profit.") (citations omitted); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457–58 (1978) (distinguishing between regulation of in-person solicitation by lawyers and "political expression or an exercise of associational freedom"); *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 634–35 (1995) ("[T]his case … concerns pure commercial advertising.").

[4] Plaintiff quotes only part of a sentence from *Cincinnati v. Discovery Network*, 507 U.S. 410, 423 (1993) that "much of the material in ordinary newspapers is commercial speech," presumably to support the position that newspapers and those who provide news analysis are, or can be, "commercial speakers" subject to fraud claims. Pl. Opp. 15–16. The Court explained that the fact newspapers contain advertising does not make them commercial speakers. Far from supporting Plaintiff's argument, the Supreme Court made the observation solely to explain why the commercial speech doctrine was irrelevant to an ordinance governing the placement of news boxes on city streets. *Discovery Network*, 507 U.S. at 426–28 ("[T]he distinction Cincinnati has drawn has absolutely no bearing on the interests it has asserted").

contrary. The Supreme Court and the Eighth Circuit frequently reaffirm the very basic concept that speakers do not "shed their First Amendment protections by employing the corporate form to disseminate their speech. This fact underlies our cases involving everything from movie producers to book publishers to newspapers." *303 Creative*, 600 U.S. at 594. Rather, "commercial and corporate entities, including utility companies and newspapers, have received First Amendment protection" because they "contribute to the discussion, debate, and the dissemination of information and ideas that the First Amendment seeks to foster." *Telescope Media Grp.*, 936 F.3d at 751–52 (citations omitted). Cases supporting this constitutional truism are almost too numerous to mention.[5]

Plaintiff's bald assertion that opinion polling during a presidential election is not "news" is even more nonsensical. Like its other core premises, this claim is backed by zero authority, except this time, Plaintiff doesn't even go through the motion of citing case law. Rather, he issues the imperious decree that "legitimate 'news' *is not bought and paid for*, or created in exchange for money," Pl. Opp. 17, which merely restates the fallacy that for-profit news organizations lack constitutional protection. Under Plaintiff's theory, the First Amendment excludes news

---

[5] *See, e.g.*, *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465, 470 (1995) (the First Amendment protects federal employees' right to "seek compensation for their expressive activities in their capacity as citizens" as well as "the public's right to read and hear what the employees [produce]"); *Columbia Broadcasting System, Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 117 (1973) ("The power of a privately owned newspaper to advance its own political, social, and economic views is bounded by only two factors: first, the acceptance of a sufficient number of readers—and hence advertisers—to assure financial success; and, second, the journalistic integrity of its editors and publishers."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) ("That the Times was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold."); *Joseph Burstyn v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."). There are no contrary cases.

organizations if they pay opinion writers, reporters, expert analysts, or, as in this case, a top-notch pollster to measure and report on voter sentiment.

"[L]egitimate 'news,'" Plaintiff proclaims, "involves events of public interest that occur at the local, regional, national, or world levels." *Id*. This is a bizarre assertion given that presidential elections obviously fit the bill and in light of the "practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs" including "discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." *Mills v. Alabama*, 384 U.S. 214, 218–19 (1966). Election polling is part of this process and is protected by the First Amendment. *Daily Herald, Inc. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988). As the Supreme Court observed, the Constitution "specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars … to play an important role in the discussion of public affairs." *Mills*, 384 U.S. at 219 (invalidating Alabama Corrupt Practices Act prohibition of publishing political editorials on election day) (citation omitted). Defendants' activities are the essence of what is historically understood to be "legitimate news."

But that is the problem with this case in a nutshell. Plaintiff throws around terms like "fraud," "product," and "election interference" without any serious attempt to connect them to relevant legal doctrines and, for the most part, without citation to any legal authority. Contrary to the thrust of Plaintiff's opposition, the liberal use of italics is no substitute for citing cases.

## D.    No Case Law Supports Plaintiff's Theory of Liability.

Plaintiff does not cite a single case supporting his theory of liability for "false news," while Defendants identified the smattering of cases that quickly dismissed attempts to bring such frivolous claims. Br. 1–2, 7, 13–14. He groups the cases together to try to distinguish them *en*

*masse*, but to no avail. Pl. Opp. 17–19. His main argument is that each of the cited cases involved "*reporting* on legitimate *news* matters, not on a matter that a newspaper itself created out of thin air," *id*. at 17–18, which is apparently what he deems poll results. But that merely reinforces Plaintiff's fundamental misunderstanding of the "news" concept. He also posits that the cited cases involved "speech that was alleged to be intentionally false or fraudulent," *id*. at 18, which is not different from what Plaintiff alleges here and only confirms why dismissal of those cases is so on-point. Otherwise, Plaintiff merely tries to nitpick nonmaterial factual differences without addressing the ways the cases undermine his central premise that news can be punished as "fraud."

For example, in *Hollander v. CBS News, Inc*., No. 16 Civ. 6624 (PAE), 2017 WL 1957485, at *3–4 (S.D.N.Y. May 10, 2017), *aff'd but vacated on other grounds sub nom. Hollander v. Garrett*, 710 Fed. Appx. 35 (2d Cir. 2018), the district court dismissed wire fraud claims based on allegedly false and misleading news stories about candidate Donald Trump after finding "[t]he First Amendment, and first principles of constitutional law, bar this lawsuit" because the fraud exception does not apply to news stories. Plaintiff attempts to distinguish the case by claiming it involved "reporting about actual news, not … a product created by the media defendants themselves," Pl. Opp. 18, but this merely repeats his misconception about the concept of "news." Otherwise, Plaintiff suggests that the elements of wire fraud differ from a statutory cause of action for consumer fraud, *id*., but does not explain how or suggest any reason why it would affect the constitutional analysis.[6]

---

[6] The Second Circuit affirmed the district court's dismissal of the claims for lack of standing but vacated the decision because the district court erroneously dismissed with prejudice, which is inappropriate for a subject matter jurisdiction dismissal. *Hollander*, 710 Fed. Appx. at 36. Importantly, the Second Circuit noted it had "reviewed all of the arguments raised by plaintiff on appeal and [found] them to be without merit." *Id.*

Plaintiff also tries to distinguish *Washington League for Increased Transparency & Ethics v. Fox News* ("*WASHLITE*"), 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021), by observing it involved "grievances about the manner of reporting about COVID-19, one of the most substantial and legitimate news stories in recent history." Pl. Opp. 18. But one might say the same thing about reporting on the 2024 presidential election*, see Mills*, 384 U.S. at 218–19, and this is just another instance of Plaintiff's confusion about the definition of "news." More importantly, Plaintiff has no response to the court's reasoning in *WASHLITE*, which dismissed fraudulent news claims on First Amendment grounds because "none of the limited exceptions to the First Amendment apply to the false statements made by Fox hosts and guest commentators." 2021 WL 3910574, at *4.

Plaintiff makes much of *National Institute of Family and Life Advocates v. Raoul*, 685 F.Supp.3d 688 (N.D. Ill. 2023), Pl. Opp. 19, a *cf.* cite in Defendants' motion to dismiss. Br. 2. But the dictum he references about the possible application of fraud claims to "limited services pregnancy centers" refers to a hypothetical application of Illinois consumer fraud law to deception in the provision of *medical services*, not news or information. The language cited is not *Raoul's* holding, as Plaintiff asserts, Pl. Opp. 19, but is a suggestion about a possible less restrictive alternative to the law it enjoined that is not viewpoint or speaker discriminatory. 685 F. Supp. 3d at 704–05. Consequently, *Raoul* does not help Plaintiff.

The other cases Plaintiff purports to "distinguish" were not cited as examples of failed attempts to punish "false news" but were cited to illustrate other First Amendment principles that he failed to address.[7] Bottom line, in the United States there is no such thing as a claim for "fraudulent news," Br. 1, so the Revised Amended Complaint should be dismissed.

---

[7] Pl. Opp. 18–19. For example, Selzer cited *Grosjean v. American Press Co.*, 297 U.S. 233, 245–50 (1936), to illustrate how litigants cannot use labels and artful pleading to evade First Amendment limits, Br. 6–7, a point Plaintiff never addresses. Selzer also cited *Brandt v. Weather*

## II.    Plaintiff's Claims are Facially Deficient Under Iowa Law.

Even setting aside the First Amendment barriers to each of Plaintiff's claims, they fail on their own accord, as Plaintiff continues to butcher elementary concepts like duty, reliance, causation, and damages.

### A.    Plaintiff Fails to Plead a Cognizable ICFA Claim.

The Court can easily resolve the ICFA claim because Plaintiff concedes the absence of a necessary element. An ICFA claim lies for victims of "deception" and "fraud" only when "in connection with the advertisement, sale, or lease of *consumer merchandise*." Iowa Code § 714H.3 (2020) (emphasis added). But as Defendants' opening brief explained, Selzer's polls are not "consumer merchandise" because they are not sold or leased "primarily for personal, family, or household purposes." Br. 17 (quoting Iowa Code § 714H.2(4) (ICFA section defining "consumer merchandise")). In response, Plaintiff does not assert Selzer's polls qualify as "consumer merchandise" but only that "[t]he Supreme Court of Iowa has recognized that ICFA claims 'are not the same as common law fraud actions.'" Pl. Opp. 22 (quoting *State ex rel. Att'y Gen. of Iowa v. Autor*, 991 N.W.2d 159, 167 (Iowa 2023)).

This is true—and it is precisely why his ICFA claim fails. Common law fraud need not involve "consumer merchandise,"[8] but a claim under the ICFA does. Iowa Code § 714H.3.

---

*Channel, Inc.*, 42 F. Supp. 2d 1344, 1345–46 (S.D. Fla.), *aff'd*, 204 F.3d 1123 (11th Cir. 1999)), to show the absence of duty and how Plaintiff's theory would impose boundless liability. Br. 13, 15. And Selzer cited *Alvarez*, 567 U.S. at 721–23, for the baseline proposition that there is no general First Amendment exception for false speech. *Id*. at 2, 7, 9, 12.

[8] *See McGough v. Gabus*, 526 N.W.2d 328, 331 (Iowa 1995) ("The elements of fraud are: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) justifiable reliance, and (7) resulting injury and damage."). However, it does, as noted, require material misrepresentation, reliance, and actual injury, all missing here. *See supra* at 6 ("Fraud statutes … typically require proof of a misrepresentation that is material, upon which the victim relied, and which caused actual injury." (quoting *Alvarez*, 567 U.S. at 734 (Breyer, J., concurring))); *see also infra* §§ II.B–C.

Plaintiff's response does not even attempt to argue Selzer's polls qualify under the statute, so his ICFA claim is facially deficient. *See Butts v. Iowa Health Sys.*, No. 13-1034, 2015 WL 1046119, at *8 (Iowa Ct. App. Mar. 11, 2015) (ICFA does not apply when defendant "does not offer or sell consumer merchandise").

Plaintiff's remaining arguments fare no better. With respect to damages, Selzer's brief explained that because Plaintiff filed this suit in his individual capacity, he is precluded from claiming "damage" to his campaign. Br. 15 ("[A] campaign is 'a legal entity distinct from the candidate.'" (quoting *FEC v. Cruz*, 596 U.S. 289, 294 (2022)). In response, Plaintiff ignores the Supreme Court's express holding and asserts Mr. Trump had to "address" the Selzer poll "publicly at a moment when he was tremendously strained for time." Pl. Opp. 21. This confuses "distraction" with legal harm.

Plaintiff's damages theory boils down to an assertion that Selzer's poll affected how Iowans viewed him and how they voted. But, stating the obvious, Mr. Trump *won Iowa and the presidency*. There's no harm to remediate. And even had he lost, "federal courts do not sit to award post-election damages to defeated candidates." *Hutchinson v. Miller*, 797 F.2d 1279, 1287–88 (4th Cir. 1986); *see also Sw. Publ'g Co. v. Horsey*, 230 F.2d 319, 322–23 (9th Cir. 1956) (noting "[t]here may be not less than a thousand factors which enter into the vagaries of an election" and holding that "loss of an election" damages are unrecoverable because they are "speculative and conjectural"). Based on the plain text of the ICFA and under basic principles of tort law, the Court must dismiss Plaintiff's statutory fraud claim.

## B.     Plaintiff Fails to Plead a Fraudulent Misrepresentation Claim.

Plaintiff's fraudulent misrepresentation claim also fails at the threshold. The "representations" he purports to rely on are the findings of Selzer's poll, but that has nothing to do with fraud. The "representation" element pertains to a statement made to induce another into

entering a transaction, such as a false statement made by a seller to a buyer. *See* William L. Prosser, *Handbook of the Law of Torts* § 105, at 684 (4th ed. 1971); *see also Alvarez*, 567 U.S. at 722–23 (distinguishing false statements generally from fraud, which is designed to "secure moneys or other valuable considerations, [like] offers of employment"). Yet Mr. Trump points to no representations by Selzer for the purpose of inducing *anyone* (much less him) into a purchase.

Plaintiff also botches the elements of materiality, scienter, and intent to deceive. He insists "[p]olling affects voter turnout and enthusiasm," Pl. Opp. 24, apparently under the belief that "material" means "something important to the public." It doesn't. Rather, materiality refers to whether a defendant made a false representation about a sufficiently critical aspect of a transaction that affected the plaintiff's decision about whether to proceed with the contemplated transaction. *See* Restatement (Second) of Torts § 538 (A.L.I. 1977). Same with scienter. A plaintiff must establish that the defendant not only made a knowingly false material statement but did so while making a representation to plaintiff about a contemplated transaction.[9] Likewise with intent to deceive. The plaintiff must show not just that the defendant made false representation with knowledge of its falsity, but did so in the context of attempting to deceive a plaintiff into entering into a transaction.[10] On all three elements, Plaintiff is cutting out the transaction inducement element of fraud—the *sine qua non* ingredient that makes fraud a cognizable cause of action—and hoping the Court doesn't notice the misdirection.

---

[9] *See* Restatement (Second) of Torts § 531 ("One who makes a fraudulent misrepresentation is subject to liability … for pecuniary loss suffered by [plaintiff] through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.").

[10] *See B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976) ("The element of intent to deceive is closely related" to scienter and "is ordinarily established from the same evidence which proves the element of scienter.").

On justifiable reliance, Mr. Trump asserts he and "millions of other citizens" relied on Selzer's poll. Pl. Opp. 26. Yet again, Plaintiff attempts to bypass the transaction aspect of fraud. Justifiable reliance means that a defendant justifiably relied on a representation by a plaintiff when deciding whether to enter a transaction. *See Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009) ("[T]he entire context *of the transaction* is considered to determine if the justifiable-reliance element has been met." (emphasis added)); *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980) (describing justifiable reliance element by reference to "a party to a transaction"). If justifiable reliance were not tethered to an induced transaction, gamblers would sue ESPN analysts for failed sports bets, claiming they "justifiably relied" on the sports expertise of the network's on-air talent. That is not how tort law works.

### C.    Plaintiff Fails to Plead a Negligent Misrepresentation Claim.

Plaintiff's negligent misrepresentation claim also fails because Selzer had no legal duty to supply Mr. Trump with information. Plaintiff correctly notes that under Iowa law "those liable are only those who supply information in an advisory capacity and are manifestly aware of how the information will be used and intend to supply it for that purpose." Pl. Opp. 28 (quoting *Van Sickle Constr. Co. v. Wachovia Com. Mortg.*, 783 N.W.2d 684, 691 (Iowa 2010)). But Plaintiff ignores his own statement of the law and never explains how Selzer "supplied information" to him "in an advisory capacity."

Selzer had no contract with Mr. Trump, express or implied, and he does not argue otherwise. The cases he cites hold that when a party hires an expert to supply information, that expert can be liable to the one who engaged them if the performance of those duties falls below the standard of care. Plaintiff claims "[n]o clear guideline exists to define whether a party is in the business of supplying information." *Id.* at 28 (alteration in original) (quoting *Conveyor Co. v. Sunsource Tech. Servs., Inc.*, 398 F. Supp. 2d 992, 1015 (N.D. Iowa 2005)), but that is irrelevant.

16

The pertinent question is whether Selzer had a legal duty to supply *Mr. Trump* with information. *See* Restatement (Second) of Torts § 552 cmt. h (liability for negligent misrepresentation exists only as "to those persons for whose benefit and guidance it is supplied"). She did not, and Plaintiff offers no authority creating a legal duty between a pollster and the politicians whose public support the pollster measures.

Plaintiff asks the Court to hold that newspapers and pollsters are, for purposes of negligent misrepresentation, "in the business of supplying information." Pl. Opp. 28 (quoting *Conveyor*, 398 F. Supp. 2d at 1015). In short, he is asking the Court to hold that consumers of news should have a cause of action against news providers that get a story wrong through negligence. But that request is squarely foreclosed by *New York Times Co. v. Sullivan*, 376 U.S. at 287–88 (evidence against newspaper supporting "at most a finding of negligence" was "constitutionally insufficient to show the recklessness … required for a finding of actual malice"). *See also Counterman*, 600 U.S. at 79 (negligence standard is insufficient to impose liability on speech).

In any event, Plaintiff provides no case law to support his position that newspapers and pollsters owe a duty in tort to their readers. Instead, he asserts that whether a duty exists is a matter of law for the court to decide. Pl. Opp. 28 (quoting *Conveyor*, 398 F.Supp.2d at 1015). Because it is a question of law, this Court should find Selzer owed no duty to Trump under well-established precedent and dismiss this claim. *See Stancik v. CNBC*, 420 F. Supp. 2d 800, 808 (N.D. Ohio 2006) (dismissing negligence claim against news media because no legal duty existed).

Plaintiff then shifts to a new theory for his negligent misrepresentation claim, arguing Selzer negligently failed to prevent the poll from "leaking." But there are several problems with this. First, it's not in the Revised Amended Complaint. Second, Selzer owed no legal duty to Plaintiff to not "leak" the poll; it's *Selzer's poll*, and Plaintiff does not allege Selzer had any

contractual or legal duty to Plaintiff to keep the results a secret. Third, the theory fails basic logic: Plaintiff fails to explain how he possibly could have suffered legal harm from a poll *intended* for public release that was released just hours after the alleged "leak." And fourth, Plaintiff argues "a complete binding contract between the parties is not a prerequisite to a duty to use due care," Pl. Opp. 30 (quoting *Davidson & Jones, Inc. v. County of New Hanover*, 255 S.E.2d 580, 584 (N.C. Ct. App. 1979)), but there must be *some* relationship between the parties (for example, quasi-contract) for a duty to exist, and there is none here. That Plaintiff's only proffered cases are decisions imposing a duty on an "architect, in the performance *of his contract*," and "a party collecting private data *from its customers*" shows just how far into left field Plaintiff's theory is. Pl. Opp. 30 (quoting *id.* and *Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 763 (N.D. Iowa 2024)).

Nor may Plaintiff create a duty with Selzer by invoking *res ipsa loquitur*. This narrow doctrine allows a factfinder to infer a breached legal duty when an injury happens which (1) "was caused by an instrumentality under the exclusive control and management of the defendant," and (2) ordinarily would not occur "if reasonable care had been used." *Banks v. Beckwith*, 762 N.W.2d 149, 152 (Iowa 2009). Medical instruments left inside surgery patients and barrels falling on building occupants are classic examples. *See* Restatement (Second) of Torts § 328D cmt. a (barrels); *id.* cmt. d (surgical sponges). But *res ipsa loquitur* does not *create* a legal duty, it is simply a method of establishing a breach of an existing duty. *See Palleson v. Jewell Co-op. Elevator*, 219 N.W.2d 8, 13 (Iowa 1974) ("The doctrine of *res ipsa loquitur* is only a rule of evidence, not of substantive tort law."). Plaintiff fails to plead a plausible cause of action under any theory.

### III.    <u>Piercing the Corporate Veil.</u>

The Court should also reject Plaintiff's attempt to pierce the corporate veil by citing the "fraud" exception to the protection of the corporate form. Pl. Opp. 31–32. As explained above, what Plaintiff alleges in this case is not "fraud" and even had he identified a relevant cause of action, he has not come close to supporting its elements. Therefore, he cannot pierce the corporate veil on claims I and II. *See Ceran v. Reisch*, No. 19-cv-2048-MAR, 2020 WL 6074114, at *9 (N.D. Iowa. Sept. 9, 2020) (dismissing attempt to pierce the corporate veil when the plaintiff could not sustain the underlying fraud claim). Finally, Plaintiff provides no explanation for how the negligent misrepresentation claim (claim III) can support piercing the corporate veil. There is no exception to the corporate veil for claims based in negligence.

### CONCLUSION

This lawsuit is, as the Bard put it, a tale "full of sound and fury, signifying nothing." William Shakespeare, *Macbeth* act 5, sc. 5, ll. 30–31. Once you get past the groundless assertions, campaign-style hyperbole, and overheated conspiracy theories, there is nothing left. No legal basis whatsoever supports the claims, and Plaintiff's opposition to the motions to dismiss reveals both shocking unfamiliarity with basic concepts of First Amendment law and a disregard of the pleading requirements for fraud or misrepresentation under Iowa law. As one court summed it up in another of President Trump's attacks on free speech: "This case should never have been brought. Its inadequacy as a legal claim was evident from the start. No reasonable lawyer would have filed it. Intended for a political purpose, none of the counts of the amended complaint stated a cognizable legal claim." *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1207 (S.D. Fla. 2023). The Court should dismiss this case with prejudice.

Dated: August 29, 2025

Respectfully Submitted,

/s/ *Robert Corn-Revere*                    .
Robert Corn-Revere*†
   (DC Bar No. 375415)
Conor T. Fitzpatrick*
   (Mich. Bar No. P78981)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
700 Pennsylvania Ave., SE; Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org
conor.fitzpatrick@thefire.org

Greg H. Greubel
   (Iowa Bar No. AT0015474)
Adam Steinbaugh*
   (Cal. Bar No. 304829)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
adam@thefire.org

Matthew A. McGuire
   (Iowa Bar No. AT0011932)
NYEMASTER GOODE, P.C.
700 Walnut St., Suite 1300
Des Moines, IA 50309
(515) 283-8014
mmcguire@nyemaster.com

*Attorneys for Defendants J. Ann Selzer and Selzer & Company*

* *Admitted pro hac vice.*
† *Lead counsel*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing document was served upon all parties of record through the Court's CM/ECF electronic filing system.

/s/ *Robert Corn-Revere*