IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, <br><br>      Plaintiff, <br><br> v. <br><br> J. ANN SELZER, an individual, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC., <br><br>      Defendants. | Case No. 4:24-cv-00449-RGE-WPK <br><br> **PRESS DEFENDANTS DES MOINES REGISTER AND TRIBUNE COMPANY AND GANNETT CO., INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS REVISED AMENDED COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

LEGAL STANDARDS .............................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

   I.   PRESIDENT TRUMP'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT ....... 2

       A.   *The Register*'s News Reporting on the Iowa Poll Is Editorial, Not Commercial, Speech. ........................................................................................................................ 2

       B.   The Court Should Reject President Trump's Attempt to Create a First Amendment Exception for "False" Political Speech. ............................................. 5

       C.   In the Alternative, the Revised Amended Complaint Should Be Dismissed for Failure to Satisfy Controlling First Amendment Principles. ................................. 7

       D.   President Trump Cannot Circumvent the First Amendment by Characterizing This Action as a "Case About Private Actors." ........................................................... 11

   II.   PRESIDENT TRUMP'S IOWA CONSUMER FRAUD ACT CLAIMS MUST BE DISMISSED ....................................................................................................................... 12

       A.   President Trump's Claims Do Not Relate to a Consumer Transaction. ............... 12

       B.   The Iowa Poll Cannot Form the Basis of an ICFA Claim. ................................... 14

       C.   President Trump Does Not Allege Any Facts to Establish ICFA's Proximate Cause Element. ................................................................................................... 15

       D.   President Trump Does Not Allege Any Legally Cognizable Damages as Required by ICFA. ........................................................................................................... 15

   III.  PRESIDENT TRUMP'S FRAUDULENT MISREPRESENTATION CLAIMS MUST BE DISMISSED ....................................................................................................................... 17

   IV.  PRESIDENT TRUMP'S NEGLIGENT MISREPRESENTATION CLAIM MUST BE DISMISSED ....................................................................................................................... 19

CONCLUSION .......................................................................................................................... 22

## INTRODUCTION

Over eight months have passed since this case began—with the merits of dismissal under Rule 12(b)(6) now fully briefed *twice*—yet President Trump still cannot explain how his revised Amended Complaint adequately pleads any cognizable legal claim. President Trump's Opposition (ECF No. 107, "Opposition") to Press Defendants' Motion to Dismiss (ECF Nos. 91, 95 (jointly, the "Motion")) instead highlights the legal defects of his claims. Those defects have not been and cannot be remedied, and the case should be dismissed. In the time since the merits of his claims were first fully briefed, President Trump has undertaken extraordinary efforts to prevent this Court from ruling on them. Those efforts have failed. The time has come for the Motion to be adjudicated and for the Court to dismiss this case with prejudice.

## LEGAL STANDARDS

The correct standards of review are undisputed. (*Compare* ECF No. 95 at 13–14, *with* ECF No. 107 at 8–9.) The Parties agree that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that the heightened pleading requirements of Rule 9(b) mandate that fraud be pleaded with particularity. *See E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012); Fed. R. Civ. P. 9(b). President Trump does not contest that *The Register* articles and attachments appended to the Motion to Dismiss as Exhibits A–K are both incorporated by reference in the pleadings and integral to the claim. They are therefore properly in the scope of the Court's review. (ECF No. 95 at 3 n.2.)

Nevertheless, President Trump declined to respond to many of the arguments raised in the Motion to Dismiss. (*See, e.g.*, ECF No. 107 at 17 (stating that the Opposition responds to only one so-called "primary argument" regarding his ICFA claim).) "Courts in the Eighth Circuit have consistently acknowledged that failure to respond to arguments raised in a motion to dismiss

1

constitutes an abandonment of that claim or concession to the opposing arguments." *Muller v. Blue Diamond Growers*, 683 F. Supp. 3d 933, 937 (E.D. Mo. 2023) (quoting *Little v. U.S. Dep't of Def.*, No. 4:21-CV-1309, 2022 WL 1302759, at *3 (E.D. Mo. May 2, 2022)). This rule applies even to individual arguments on particular claims. *See, e.g.*, *Maloney v. Ameristar Casinos, Inc.*, No. 4:09-CV-0673, 2010 WL 11508769, at *2 (W.D. Mo. Mar. 9, 2010); *Espey v. Nationstar Mortg., LLC*, No. 13-2979, 2014 WL 2818657, at *11 (D. Minn. June 19, 2014). Therefore, President Trump's failure to respond to Press Defendants' arguments identified below constitutes a concession regarding the correctness of Press Defendants' positions.

## **ARGUMENT**

## I.    **PRESIDENT TRUMP'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT**

The arguments advanced in President Trump's Opposition are incompatible with established First Amendment principles. The complete lack of supporting legal authority for numerous propositions proclaimed throughout the Opposition should not escape this Court's notice. As set forth below, the First Amendment requires dismissal of President Trump's claims.

### A.    *The Register*'s News Reporting on the Iowa Poll Is Editorial, Not Commercial, Speech.

Apparently recognizing the First Amendment problems with challenging editorial speech, President Trump inaccurately frames *The Register*'s news coverage of the Iowa Poll as "no different than the promotion of any other commercial product" subject to the lesser protections of commercial speech. (ECF No. 107 at 16.) President Trump is wrong. He cites no authority for his position—because none exists.[1]

---

[1] President Trump's argument is incorrect as a matter of law. A "journalist's article is not commercial advertising, commercial promotion, or commercial speech." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004). The "non-commercial nature of a journalist's article cannot be overcome by [a] plaintiff claiming [that] an improper purpose motivated the publisher to run the

Commercial speech is speech that "does no more than propose a commercial transaction." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421 (1993)[2]; *accord Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n. 24 (1976) ("There are commonsense differences between speech that does no more than propose a commercial transaction . . . and other varieties." (quotation omitted)). *The Register*'s challenged reporting did not propose *any* commercial transaction, let alone "solely" a commercial transaction. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). The newspaper's campaign coverage was unquestionably news reporting on the upcoming presidential election in Iowa, and Plaintiff necessarily concedes as much. (Rev. Am. Compl. ¶¶ 1–3, 44–45.) Contrary to President Trump's argument, *The Register*'s reporting on the Iowa Poll results in the midst of the 2024 presidential election cycle is core political speech that "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quotation omitted); *Republican Party of Minn. v. White*, 536 U.S. 765, 774 (2002) (speech about electoral process is "at the core of our First Amendment freedoms") (quotation omitted).

To support his flawed argument that the challenged reporting constitutes commercial speech, President Trump next attempts to expand the definition of commercial speech far beyond its well-established reach—*i.e.*, speech proposing a commercial transaction—to cover any speech

---

article." *Croton Watch Co. v. Nat'l Jeweler Mag., Inc.*, No. 06 Civ. 662, 2006 WL 2254818, at *10 (S.D.N.Y. Aug. 7, 2006).

[2] President Trump's citation to *City of Cincinnati* (*see* ECF No. 107 at 15) omits the following italicized portion from the sentence he quotes: "[M]uch of the material in ordinary newspapers is commercial speech and, conversely . . . *the editorial content in respondents' promotional publications is not what we have described as 'core' commercial speech*." 507 U.S. at 423 (emphasis added). With proper context, this case compels the rejection of his commercial speech argument.

by a for-profit entity. However, President Trump cannot sidestep the First Amendment by proclaiming without authority that Press Defendants were "selling a *product* to consumers—polls—not reporting the news." (ECF No. 107 at 12 (emphasis in original).) This theory was invalidated decades ago, and for good reason. It ignores that both the execution of the underlying polls themselves and *The Register*'s reporting of their results are protected under the First Amendment. *See Mills v. Alabama*, 384 U.S. 214, 218 (1966) (stating that a "major purpose" of the First Amendment is to protect "free discussion of . . . [political] candidates"); *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988) (finding that political polling "requires a discussion between pollster and voter," and the poll itself is "speech protected by the First Amendment"). That the "business" of Press Defendants is "selling newspapers and subscriptions for profit" is of no moment. (ECF No. 107 at 12.) The Supreme Court has repeatedly held that speech is "protected even though it is carried in a form that is 'sold' for profit." *City of Cincinnati*, 507 U.S. at 420 (citing *Smith v. California*, 361 U.S. 147, 150 (1959) (books); then citing *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) (motion pictures); then citing *Murdock v. Pennsylvania*, 319 U.S. 105, 110 (1943) (religious pamphlets "invit[ing] the purchase of books")); *New York Times v. Sullivan*, 376 U.S. 254, 266 (1964) (political issue advertisement).

If civil liability could be triggered merely by alleging publication with a profit motive, the First Amendment's protection for political campaign speech would be rendered meaningless. *See Harte Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("If a profit motive could somehow strip communications of the otherwise available constitutional protection, our [protective precedents] . . . would be little more than empty vessels."). As the Supreme Court has emphasized, "[i]f a newspaper's profit motive were determinative, all aspects of its operations—from the selection of news stories to the choice of editorial position—would be subject to

4

regulation if it could be established that they were conducted with a view toward increased sales. *Such a basis for regulation clearly would be incompatible with the First Amendment.*" *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 385 (1973) (emphasis added).

**B.    The Court Should Reject President Trump's Attempt to Create a First Amendment Exception for "False" Political Speech.**

In our constitutional system, a claim for "fraudulent news" does not exist. Full stop. The remedy for disagreement with political speech one does not like is counter-speech—not court-enforced damages under the guise of commercial regulations. *281 Care Comm. v. Arneson*, 766 F.3d 774, 793 (8th Cir. 2014) ("*281 Care Comm. II*") ("Especially as to political speech, counterspeech is the tried and true buffer and elixir.").

In derogation of these principles, President Trump is pursuing an action against Press Defendants for "distorting media narratives in the final stretch before voting." (ECF No. 107 at 7.) But the U.S. Supreme Court's decision in *United States v. Alvarez* directly repudiates President Trump's argument. *See United States v. Alvarez*, 567 U.S. 709, 717–18 (2012).[3] In *Alvarez*, the Supreme Court reaffirmed there is no "general exception to the First Amendment for false statements." *Id.* at 718. "This comports with the common understanding that some false statements are inevitable

---

[3] President Trump's Opposition seeks to prop up his "fake news" claim with inapt citations to a variety of defamation and other intentional tort cases. (ECF No. 107 at 13–16.) But President Trump's conclusion "would take the quoted language" from the cases he cites "far from its proper context." *Alvarez*, 567 U.S. at 718. The *Alvarez* Court disavowed precisely the theory espoused by President Trump here by examining many of the same cases cited in the Opposition and emphasizing that the "few categories" of historically recognized exceptions to the First Amendment may not be expanded to create a general category of unprotected false speech: "These isolated statements in some earlier decisions do not support the Government's submission that false statements, as a general rule, are beyond constitutional protection." *Id*. Moreover, President Trump's attempt to distinguish *Washington League for Increased Transparency & Ethics v. Fox News* for "involv[ing] grievances about the manner of reporting about COVID-19, one of the most substantial and legitimate news stories in recent history," does not undermine that case's persuasive weight. (ECF No. 107 at 17 (citing *Wash. League*, No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021)).) The same can be said about *The Register*'s 2024 presidential election coverage.

if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *Id.* Accordingly, to safeguard our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *Sullivan*, 376 U.S. at 270, speech is presumptively shielded by the First Amendment unless it falls within one of a small number of narrowly defined categories. *Alvarez*, 576 U.S. at 717. Those categories, informed by history and tradition, do not include a general proscription of "false speech." *Id.* at 719 ("The Court has never endorsed the categorial rule . . . that false statements receive no First Amendment protection."). Without question, these narrow categories may not be elasticized to include "fake news" about election campaigns, as the First Amendment stands resolutely against demands to regulate "truth" in political reporting. As the Eighth Circuit made clear in applying *Alvarez*, such attempts are subject to strict scrutiny and are presumptively unconstitutional—even when the alleged fraud in political speech consists of "knowingly false speech." *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 633–34. & n.2 (8th Cir. 2011) ("We find that the Supreme Court has never placed knowingly false campaign speech categorically outside the protection of the First Amendment and we will not do so today.").

Further, *Alvarez* reiterated that false statements are only unprotected when there is some "legally cognizable harm associated with [the] false statement." *Alvarez*, 567 U.S. at 719. Accordingly, President Trump's claims based on "false speech" cannot be maintained unless they demonstrate a legally cognizable harm.[4] To do so, President Trump claims that this suit fits into

---

[4] President Trump claims that the alleged "cognizable injury" animating this lawsuit is injury to his "individual reputation[, which] is very much interrelated and tied up in his professional reputation[.]" (ECF No. 107 at 18.) This argument suggests that the revised Amended Complaint's consumer fraud and common law misrepresentation claims are attempting to evade the strict First Amendment limitations and defenses applicable to allegations of reputational injury by a public official, which is governed by defamation law. *See Sullivan*, 376 U.S. at 254; *Hustler Magazine,*

one of the *Alvarez* exceptions because it rises to the level of fraud. (ECF No. 107 at 17.) Although on the surface, "fraud" is a category of speech outside the First Amendment's protection, "[s]imply labeling an action one for 'fraud,' of course, will not carry the day." *Illinois ex. rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003). A fraud claim imposes "exacting" requirements to ensure "sufficient breathing room for protected speech," and a "[f]alse statement alone" does not result in liability. *Id*. at 620. Even accepting as true that President Trump decided to devote unplanned time and money to his campaign for office, inspired by his own speculation that *The Register*'s reporting of the Iowa Poll results might sway voters, that is of course not a legally cognizable injury. It is how democracy works.

A claim of "fraud" based on news reporting cannot withstand scrutiny under the First Amendment.[5] Permitting President Trump's claims to proceed on this basis would violate a fundamental premise of free speech by granting him "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *United States v. Stevens*, 559 U.S. 460, 472 (2010). That would be a "startling and dangerous" proposition, subject to no principled limitation. *Id*. at 470. The First Amendment will not tolerate such a result.

### C.    In the Alternative, the Revised Amended Complaint Should Be Dismissed for Failure to Satisfy Controlling First Amendment Principles.

Even assuming—contrary to established First Amendment principles—that *The Register*'s political campaign reporting is not endowed with immunity from an ICFA or common law

---

*Inc. v. Falwell*, 485 U.S. 46 (1988). Of course, no defamation claim has been or could be asserted here based on *The Register*'s truthful and accurate reporting.

[5] President Trump's ICFA claim overtly seeks to "broadly balance the value of the speech against its societal costs to determine whether the First Amendment even applies" to Press Defendants' campaign reporting. *United States v. Stevens*, 559 U.S. 460, 460 (2010). (*See* Rev. Am. Compl. ¶ 106.) "But the First Amendment's free speech guarantee does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits." *Stevens*, 559 U.S. at 460–61.

misrepresentation claim, the revised Amended Complaint nevertheless cannot evade the constitutional privileges and defenses that otherwise apply to tort claims premised on speech about public officials. In *Hustler*, the Supreme Court made clear that the same First Amendment defenses applicable to defamation suits govern intentional tort claims arising out of published statements concerning a public official-plaintiff. *Hustler*, 485 U.S. at 56. Accordingly, public officials cannot recover on such a claim without showing that the publication (i) "contains a false statement of fact," (ii) "made with 'actual malice,' *i.e.*, with knowledge that the statement was false or with reckless disregard as to whether or not it was true." 485 U.S. at 56 (citation omitted). *Hustler*'s reasoning is dispositive of President Trump's claims here.

First, President Trump cannot, as a matter of law, establish that Press Defendants' reporting of poll results of which he disapproves are "provably false" because his allegations about the statements at issue necessarily relate to the future: the outcome of a presidential election in Iowa that had not yet occurred. *See 281 Care Comm. II*, 766 F.3d at 795 (invalidating a Minnesota campaign law penalizing allegedly knowingly false communications about ballot initiatives, holding that such speech was a "statement of conjecture about the future state of affairs should the ballot question pass or fail" and, thus, could not be deemed provably false). The Iowa Poll results published by *The Register* on November 2 and 3, 2024, represent an inherently evaluative assessment of public sentiment about the respective candidates at a particular point in time. As a snapshot of randomized samples of voter support subject to the vicissitudes of the electorate, polling results do not qualify as falsified facts for First Amendment purposes merely because they did not align with the ultimate election outcome. *See Scott v. Roberts*, 612 F.3d 1279, 1283 (11th Cir. 2010) ("[O]pinion polls of random selections of voters are *snapshots with margins of error*, and campaigns are, to say the least, dynamic projects." (emphasis added)).

Second, the constitutional "actual malice" standard—not even pleaded in the revised Amended Complaint—forecloses President Trump's claims. To carve out the "breathing space so that protected speech is not discouraged," *Harte-Hanks Commc'ns*, 491 U.S. at 686 (internal quotation and citations omitted), the actual malice standard requires proof that the defendant published a false statement with knowledge that it was false, or with reckless disregard as to its truth or falsity.[6] *Sullivan*, 376 U.S. at 279–80; *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984); *Carr v. Bankers Tr. Co.*, 546 N.W.2d 901, 903 (Iowa 1996).

"The standard of actual malice is a daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002) (quoting *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1308 (D.C. Cir. 1996)). It requires clear and convincing proof of Press Defendants' state of mind at the time the poll results were published. *Blessum v. Howard Cnty. Bd. of Supervisors,* 295 N.W.2d 836, 843 (Iowa 1980). Proof of negligence alone is insufficient. *Sullivan*, 376 U.S. at 279–80.

The revised Amended Complaint contains no specific factual allegations that support President Trump's conclusory recitation that Press Defendants made "knowingly false misrepresentations." (Rev. Am. Compl. ¶ 121.) This omission *a fortiori* establishes the absence of actual malice. There are no allegations that support that *The Register* published the results of either a presidential or congressional election poll that intentionally erred in favor of the Democratic candidate. There are no allegations that Press Defendants purposefully relied on an unrepresentative sample or skewed demographics; used recklessly falsified or distorted polling data; deliberately prepared biased or misleading questionnaires; or knowingly adopted a flawed

---

[6] "Reckless disregard" has been defined as publishing while actually "entertain[ing] serious doubts as to the truth of [the] publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or publishing while subjectively possessing a "high degree of awareness of the probable falsity" of the publication. *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

polling methodology. Nor are there any allegations that *The Register* had information from voters that contradicted the published poll results, or that the newspaper's personnel made any statements or conducted themselves in a manner indicating that they knew the polling results were incorrect.

In the absence of any such allegations, President Trump leans on the pre-publication leak of the Iowa Poll's results, albeit without alleging any facts tying Press Defendants to the alleged disclosure. (Rev. Am. Compl. ¶¶ 57, 60.) President Trump's theory—that his allegations regarding the leak plausibly support a claim of an "abandonment of objectivity" in *The Register*'s reporting—is unavailing. (*Id.* ¶ 54) As a matter of black-letter constitutional law, alleged political bias or slant in news coverage is insufficient to demonstrate actual malice. *See Donald J. Trump for President, Inc. v. WP Co. LLC*, No. 20-636, 2023 WL 1765193, *5 (D.D.C. Feb. 3, 2023) (reasoning that an "unadorned claim of animus and bias cannot save [a] deficient pleading" of actual malice (quotation omitted)); *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1275 (S.D. Fla. 2023) ("Acknowledging that CNN acted with political enmity does not save this case; the Complaint alleges no false statement of fact."), *appeal pending*, No. 23-14044 (11th Cir. 2023).

All that remains is the revised Amended Complaint's speculation that *The Register* was part of a conspiracy "to paint an incorrect and cynical picture of the downward trajectory for President Trump" solely because the newspaper reported the results of a prominent Iowa Poll that happened to get it wrong.[7] (Rev. Am. Compl. ¶ 47.) This amounts to mere conjecture and is

---

[7] The revised Amended Complaint's speculation about ill motives—supposedly evinced by Press Defendants' publication of the Iowa Poll "to improperly influence the outcome of the 2024 Presidential Election and other electoral races" (Rev. Am. Compl. ¶ 113)—misses the constitutional mark. "[W]hile such a bad motive may be deemed controlling for purposes of tort liability in other areas of the law, . . . the First Amendment prohibits such a result in the area of public debate about public figures." *Hustler*, 485 U.S. at 53. Further, as used in the First Amendment context, "actual malice" "has nothing to do with bad motive or ill will." *Harte-Hanks*

precisely the sort of conclusory claim that courts have routinely rejected as insufficient to plead actual malice. *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pleaded facts sufficient to give rise to a reasonable inference of actual malice.") (citation modified).

### D. President Trump Cannot Circumvent the First Amendment by Characterizing This Action as a "Case About Private Actors."

President Trump repeatedly asserts that because this suit involves private rights of action rather than direct government regulation of speech, the First Amendment does not apply. (*See* ECF No. 107 at 11–13.) This assertion is flatly incorrect. The First Amendment does not concern itself with *who* is attempting to restrict speech but, rather, whether application of state law to expressive activity is appropriately limited pursuant to the First Amendment. Put another way, unconstitutional application of state law to suppress protected speech—whether by a private individual via a tort action or direct government regulation of speech—is tantamount to state suppression of speech. That is why in *Sullivan*, which itself involved a private tort cause of action, the Supreme Court analyzed whether the "law applied by the Alabama courts [was] constitutionally deficient for failure to provide the safeguards for freedom of speech and of the press" required by the Constitution. *Sullivan*, 376 U.S. at 264; *see also Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1430 (8th Cir. 1989) ("As the Bill of Rights became applicable to the states, the [F]irst [A]mendment became increasingly viewed as a limit on state defamation law."); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) ("[T]he need to encourage

---

*Commc'ns.*, 491 U.S. at 666 n.7. Thus, under *Sullivan*, a plaintiff cannot demonstrate actual malice "merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 831 (Iowa 2007) (quoting *Harte-Hanks Commc'ns*, 491 U.S. at 666).

debate on public issues . . . [in] governmental-restriction cases is of concern in a similar manner in . . . case[s] involving a private suit for damages.").[8]

Indeed, state and federal courts across the country have consistently and routinely imposed constitutional constraints on tort liability for decades, especially in the First Amendment context. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (applying First Amendment to private defamation, invasion of privacy, and intentional infliction of emotional distress claims); *Falwell*, 485 U.S. at 46 (applying First Amendment to private intentional infliction of emotional distress claim); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916–17 (1982) (applying First Amendment to private tort claims arising from economic consequences of boycott); *Malin v. Quad-City Times*, 964 N.W.2d 10 (Iowa Ct. App. 2021) (affirming verdict in favor of newspaper and journalist defendants on intentional interference with contract claim where jury instructions "essentially precluded liability if the jury found the defendants' actions were protected by the First Amendment").

Here, then, the First Amendment is no "red herring." (*See* ECF No. 107 at 1, 13.) Rather, it is the rampart providing refuge for *The Register*'s protected political speech.

## II.    PRESIDENT TRUMP'S IOWA CONSUMER FRAUD ACT CLAIMS MUST BE DISMISSED

### A.    President Trump's Claims Do Not Relate to a Consumer Transaction.

President Trump does not state a claim under the Iowa Consumer Fraud Act, and the Opposition does nothing to change that fact. The heart and soul of an ICFA claim is a transaction between the plaintiff and defendant for "consumer merchandise." *Mannino v. McKee Auto Ctr.,*

---

[8] In fact, these "constitutional constraints on speech-based civil liability have deep roots, stretching back to the Framing era." Eugene Volokh, *Tort Liability and the Original Meaning of the Freedom of Speech, Press, and Petition*, 96 IOWA L. REV. 249, 250 (2010).

*Inc.*, No. 4:23-cv-00262, 2024 WL 4884440, at *3 (S.D. Iowa Sept. 5, 2024). This is not what President Trump pleaded, and his Opposition does not explain or cure these pleading deficiencies.

First, President Trump does not contest that he is not a "consumer" of "consumer merchandise" as required to state a claim under ICFA. (ECF No. 95 at 22–25.) ICFA limits a cause of action only to a "*consumer* who suffers an ascertainable loss of money or property" with respect to some "*consumer merchandise*." Iowa Code §§ 714H.3(1), .5(1) (emphasis added). But President Trump does not—and cannot—allege he has been harmed through a consumer transaction with Press Defendants. President Trump does not assert that his claim is based on purchasing *The Register* for his personal use or benefit, nor does President Trump attempt to explain why he should not be required to do so to state a claim under ICFA.

Second, the Motion demonstrates that President Trump made no plausible allegation that the Iowa Poll was done "in connection with the . . . sale . . . of consumer merchandise" as required under ICFA. *Id.* § 714H.3; *see also Butts v. Iowa Health Sys.*, No. 13-1034, 2015 WL 1046119, at *9 (Iowa Ct. App. Mar. 11, 2015) (affirming summary judgment on ICFA claim where defendant did "not offer or sell consumer merchandise"). President Trump offers conclusory denials of his pleading deficiencies, but he presents no well-pleaded factual allegations or arguments to support these denials. (ECF No. 107 at 17–19.)

President Trump attempts to avoid these pleading deficiencies by arguing in his Opposition that he suffered some kind of personal harm, even though such purported personal harm is not alleged in the revised Amended Complaint. He now claims that his "individual reputation" or "personal identity" are interrelated or otherwise linked to his professional reputation and identity such that any harm he suffered in his professional capacities is also harm he suffered in his individual capacity. (ECF No. 107 at 18.) This misses the mark. The alleged harm President Trump

13

claims to have suffered had nothing to do with whether he purchased or even read *The Register* or the Iowa Poll results. Moreover, as noted, these allegations are not contained in President Trump's revised Amended Complaint, so this Court may not consider them. *See Seneca Cos., Inc. v. D&H United Fueling Sols., Inc.*, No. 4:24-cv-00023, 2024 WL 5440858, at *4 (S.D. Iowa July 29, 2024) (allegations of fact "outside the pleading"—including those stated "in support of . . . the pleading"—that seek to "provide[] some substantiation for" the Complaint "are not considered" (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992))).

**B.    The Iowa Poll Cannot Form the Basis of an ICFA Claim.**

President Trump alleges the conduct that violated ICFA was the Iowa Poll, claiming it was: (1) a prohibited "deception"; or (2) an "unfair act or practice." (Rev. Am. Compl. ¶¶ 105–06.) In his Opposition, President Trump characterizes the Iowa Poll as "false" because it: "falsely portrayed that [Vice President] Harris was leading Plaintiff President Trump in Iowa by 3 points, just days before the election, despite President Trump ultimately winning in Iowa by 13%." (ECF No. 107 at 18.)

The Iowa Poll is a non-actionable opinion and cannot form the basis for President Trump's "deception" and "unfair practice" claim. President Trump does not substantively contest that the Iowa Poll results are non-actionable statements of opinion. (*See* ECF No. 107 at 17–19.) Nor does he contest in any way that the Iowa Poll and reporting on it cannot constitute "material facts" as required under ICFA. (*Id.*) Under ICFA, "a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation *must prove that the prohibited practice related to a material fact or facts*." Iowa Code § 714H.3(1) (emphasis added). The determination of whether a statement is an opinion or potentially actionable statement of fact is a question of law for this Court to decide. *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 580–81 (8th Cir. 2016); *Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 489

(Iowa 2021). Because it is undisputed that the polls are not "material facts" for purposes of ICFA, President Trump fails to state a claim under the statute.

### C.   President Trump Does Not Allege Any Facts to Establish ICFA's Proximate Cause Element.

President Trump does not contest that the Iowa Poll did not proximately cause him any consumer injury. ICFA requires that any loss be the "result of a practice or act prohibited" by the statute. *Mannino*, 2024 WL 4884440, at *3. If President Trump did not "rel[y] on the statement"—*i.e.*, rely on the Iowa Poll results—he "cannot prove that the statement was the proximate cause of [his] injury." *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 462 (Ill. 2024); *see also State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621 (Iowa 1989).

President Trump's Opposition argues that he was "harmed" in various abstract ways, and it superficially alleges that he "read and relied on the election coverage at issue." (*See* ECF No. 107 at 17–19, 22–23.) But neither the revised Amended Complaint nor the Opposition demonstrates—or even suggests—how President Trump engaged in any *consumer conduct* in reliance on the Iowa Poll. They instead only claim some unspecified and general "reliance" as a conclusory recitation of the causation requirement of the cause of action. Therefore, President Trump has not sufficiently pleaded the proximate causation element of his purported ICFA claim.

### D.   President Trump Does Not Allege Any Legally Cognizable Damages as Required by ICFA.

Finally, ICFA provides a private right of action only for consumers who have "suffer[ed] an ascertainable loss of money or property as the result of a prohibited practice or act." Iowa Code § 714H.5(1).[9] ICFA itself defines "actual damages" as "all compensatory damages proximately caused by the prohibited practice or act that are reasonably ascertainable in amount." *Id.* § 714H.2.

_____

[9] In President Trump's prior pleadings, he argued that ICFA claims require a "lesser showing" than common law fraud. (*See* ECF No. 23 ¶ 111 (*quoting State ex rel. Miller v. Pace*, 677 N.W.2d

15

In responding to Press Defendants' so-called "primary" argument regarding their ICFA claim, President Trump recounts his alleged injury: alleged harm to his "reputation, his image, and his viability as a candidate." (ECF No. 107 18.) Regardless of how many times President Trump reiterates these alleged injuries, none of them are remediable under ICFA as a matter of law.

Courts analyzing ICFA have rejected claims when a party has neither a contractual nor property interest in the consumer merchandise in dispute. *See McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 533 (Iowa 2015); *Mannino*, 2024 WL 4884440, at \*9; *cf. Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 190 (Iowa 2010). Courts likewise conclude that a plaintiff fails to show an ascertainable loss as a matter of law where the plaintiff does not incur any out-of-pocket expenses. *See Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496, 523 (Iowa 2021); *McKee*, 864 N.W.2d at 533; *Becirovic v. Malic*, No. 24-0219, 2024 WL 4759228, at \*10 (Iowa Ct. App. Nov. 13, 2024).

Here, President Trump has not, as a matter of law, adequately alleged "an ascertainable loss of money or property" or out-of-pocket expenses that are redressable through an ICFA claim. Indeed, President Trump concedes that his only harm was reputational and professional, and he does not allege he ever purchased *The Register*. (ECF No. 107 at 17–19.) Moreover, President Trump does not address the fact that his alleged expenditures of "time and resources, including

---

761, 770 (Iowa 2004).) In reliance on *State ex rel. Miller*, President Trump previously argued that he is not required to show reliance or damages to prevail on his ICFA claim. (ECF No. 51 at 12.) *State ex rel. Miller* concerned the ICFA statute applying to the Iowa Attorney General, not the private-right-of-action statute that indisputably controls the present case. *Compare* Iowa Code § 714.6, *with id.* § 714H.5. Contrary to this Court's order prohibiting substantive revisions to the pleading (*see* ECF No. 65 at 11), President Trump removed his citation to this case in the revised Amended Complaint and omitted the related arguments in his present Opposition. President Trump's retreat from these arguments confirms that the parties no longer dispute that (1) the "lesser showing" standard does not apply; and (2) both proximate causation (*i.e.*, reliance) and damages are necessary elements of his claim, the absence of which require dismissal.

direct federal campaign expenditures" in response to Iowa Poll do not constitute damages under ICFA. (*Compare* ECF No. 95 at 24–25, *with* ECF No. 107 at 17–19.) President Trump's vague rejoinder that he "read the false [Iowa Poll] and was" somehow "harmed as a deceived consumer of [Press Defendants'] product" does address how President Trump's purported damages could be deemed remediable under ICFA. (ECF No. 107 at 19.) Accordingly, President Trump's claim should be dismissed as a matter of law.

## III.    PRESIDENT TRUMP'S FRAUDULENT MISREPRESENTATION CLAIMS MUST BE DISMISSED

Given his inability to establish a violation of ICFA, President Trump also asserted claims for fraudulent and/or negligent misrepresentation. These claims are also deficiently pleaded.

First, President Trump does not meaningfully engage with Press Defendants' argument that he failed to plead an actionable representation because the Iowa Poll results are non-actionable statements of opinion, not of fact. (*See* ECF No. 95 at 40.) President Trump argues that the Iowa Poll should be considered a "representation" because it was "presented as [an] authoritative, data-driven assessment[] of voter preferences" and was "promoted . . . with headlines and editorial commentary endorsing [its] accuracy."[10] (ECF No. 107 at 19.) But none of these new arguments—to the extent they can be considered—counter or are inconsistent with the reality that the Iowa Poll results are non-actionable statements of opinion. (*See* ECF No. 95 at 40–45.) Further, President Trump mischaracterizes his own pleading with these new claims. President Trump's support for his claims about the way in which the Iowa Poll was "presented" are quotes from *third parties* like Rachel Maddow, not from Defendants. (*See* Rev. Am. Compl. ¶ 70.) President Trump does not

---

[10] President Trump's citation to the *Midwest Home Distributor* is inapt; the questions of representation, materiality, and falsity were expressly not in dispute in that case. *Midwest Home Distrib., Inc. v. Domco Indust. Ltd.*, 585 N.W.2d 735, 742 (Iowa 1998).

explain how a statement by a third party could transform the Iowa Poll results into an actionable representation.

Second, President Trump has not alleged in any cognizable fashion how the Iowa Poll or its results were false. President Trump alleges that the poll results were false simply because they deviated from the final election results. (ECF No. 107 at 19–20.) But he has not alleged any falsity *with respect to the poll itself*. To state a cognizable claim with particularity, President Trump must allege a false representation; but a polling "error" is not a falsehood, and disagreement with a poll is not enough to establish a false representation with particularity as required by Rule 9(b). *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 918 (8th Cir. 2007) (finding allegations deficient under Rule 9(b) where "complaint expresses disagreement with the conclusion of the second actuarial analysis, but it does not specify where and how the analysis falls short").

Third, President Trump fails to allege facts supporting the claim that the representations at issue are material as a matter of law. President Trump instead relies on the wholly conclusory assertion that the Iowa Poll results were "material" because "[p]olling affects voter turnout and enthusiasm" and "Selzer [is] known for her extraordinary influence over expectations for the results of Iowa and national elections." (ECF No. 107 at 20.) However, with respect to fraudulent misrepresentation, a fact is only material if it is "likely to affect [a consumer's] choice of, or conduct regarding, *a product*." *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 34 (Iowa 2013) (emphasis added) (internal quotations omitted). President Trump did not allege that the Iowa Poll results affected his choice to purchase *The Register* or any other consumer product. He has therefore failed to sufficiently allege materiality.

Fourth, President Trump does not contest Press Defendants' argument that he failed to plead the requisite justifiable reliance on the Iowa Poll results. Under Iowa law, President Trump

18

must have affirmatively "acted in reliance on the truth of the representation and [been] justified in relying on the representation." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001). President Trump cannot satisfy this requirement with only his conclusory assertion that he "consumed (i.e. read)" the Iowa Poll results. (ECF No. 107 at 21.) He must allege the specific actions he undertook in reliance on the poll results as "truth" and why he was justified in doing so. President Trump alleges no such acts; he merely alleges his campaign incurred unidentified expenditures. (Rev. Am. Compl. ¶¶ 106, 114.) No act by President Trump is alleged to have been undertaken *in reliance on* the poll as a statement of truth. *Cf. Gibson*, 621 N.W.2d at 400. Further, President Trump does not allege that his reliance was justified; rather, he alleges the opposite, claiming the poll results were not credible on their face. (Rev. Am. Compl. ¶¶ 48–52.)

Finally, President Trump fails to plausibly state an injury redressable by a claim for fraudulent misrepresentation. Instead, he merely refers the Court to his arguments under ICFA "[t]o avoid redundancy." (ECF No. 107 at 23.) But fraudulent misrepresentation only allows for two specific types of damages: the loss of the benefit of a bargain or the loss of out-of-pocket expenses. *Midwest Home Distrib.*, 585 N.W.2d at 741. President Trump alleges neither.

## IV. PRESIDENT TRUMP'S NEGLIGENT MISREPRESENTATION CLAIM MUST BE DISMISSED

The elements of fraudulent misrepresentation and negligent misrepresentation are similar, and President Trump pleads his negligent misrepresentation claim as an alternative to his fraudulent misrepresentation claim if the Court finds that the alleged "misrepresentations were not intentional." (Rev. Am. Compl. ¶ 128.) As with his ICFA and fraudulent misrepresentation claims, President Trump has failed to adequately plead this claim.

First, President Trump did not sufficiently plead that Press Defendants are "in the business or profession of supplying information" to him such that Press Defendants owed him any duty.

President Trump's only response is that Press Defendants had a generic pecuniary interest in the dissemination of the Iowa Poll, and therefore were acting in their "professional capacity." (ECF No. 107 at 24.) But this argument misses the point: President Trump has not pleaded—and could not plead—that Press Defendants (1) acted in an advisory capacity for President Trump's benefit; (2) were aware that President Trump would rely on the Iowa Poll results; or (3) *intended* for President Trump to use said information in any way, shape, or form. *Conveyor Co. v. Sunsource Tech. Servs., Inc.*, 398 F. Supp. 2d 992, 1013–14 (N.D. Iowa 2005). President Trump attempts to avoid dismissal by claiming that "Defendants intended and succeeded in generating enormous buzz across the nation and around the world" with respect to the Iowa Poll, and that they are therefore "exactly the type of entities that 'supply information in an advisory capacity.'" (ECF No. 107 at 24 (quoting *Van Sickle Constr. Co. v. Wachovia Com. Mortg.*, 783 N.W.2d 684, 691 (Iowa 2010).) But President Trump fails to acknowledge or engage with the case law cited by the Press Defendants establishing that Press Defendants are *not* in the class of defendants contemplated by the Iowa courts. (ECF No. 35 at 37–38 (collecting cases).). These cases contradict President Trump's conclusory statement that Press Defendants operated in an advisory capacity, and he therefore fails to establish that the Press Defendants owed him any duty.

Second, President Trump claims the difference between the Iowa Poll results and the later election results "leav[e] no other explanation" than misconduct or negligence consistent with the *res ipsa loquitur* doctrine. (ECF No. 107 at 25–26.) But the doctrine of *res ipsa loquitur* is only implicated where circumstances make it impossible to prove causation. *Norberg v. Labor Ready, Inc.*, 384 F. Supp. 2d 1328, 1332 (S.D. Iowa 2005) ("*Res ipsa loquitur* . . . fills the gap where there is no direct evidence of causation and an inference of negligence is permissible from the fact of injury itself."). This is not such a case. President Trump identifies no injury requiring a causation

analysis; even if he had, he makes no effort to explain why his claim cannot be pleaded by direct allegations. *Res ipsa loquitur* has no application in this case.

Third, President Trump continues to rely on conclusory allegations by third parties in his inapt *res ipsa* argument. (*See* ECF No. 107 at 26 (citing Rev. Am. Compl. ¶ 68).) Specifically, in paragraphs 76 and 77 of his revised Amended Complaint, President Trump quotes an opinion piece by pundit James Piereson regarding Mr. Pierson's view of the likelihood of the Iowa Poll result's departure from the election results. (Rev. Am. Compl. ¶¶ 68–69.) President Trump does not make his own independent allegations on these points, but instead appears to rely on Mr. Pierson's quotes for the truth of the matter asserted. (ECF No. 107 at 26.) A third party's politically motivated opinion about likelihoods does not support President Trump's conclusory legal claim that it is "impossible to explain" the results without presuming negligence. President Trump's proposed legal conclusion—*i.e.*, that statistical improbability establishes negligence—is entitled no deference. *See McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) ("[A]llegations that are no more than conclusions . . . are not entitled to the assumption of truth.").

Fourth, to plead a negligent misrepresentation claim, President Trump must allege that he is the type of person for whose benefit and guidance the information at issue was intended. (ECF No. 95 at 48 (citing *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001)).) President Trump did not and cannot plead that Press Defendants supplied the results of the Iowa Poll to him for his benefit or guidance, which alone is fatal to his claim. *See McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 692 (N.D. Iowa 2007). Nowhere in his Opposition does President Trump attempt to address this fundamental defect. Indeed, he cannot: courts routinely dismiss claims for negligent misrepresentation against general circulation news publications for this reason. (*See* ECF No. 107 at 48 (collecting cases).)

Finally, as discussed *supra*, President Trump does not and cannot reasonably plead any justifiable reliance on the Iowa Poll or that the Iowa Poll was the proximate cause of any recoverable damages. (ECF No. 107 at 49–50.) President Trump neither acknowledges nor addresses these defects in his Opposition.

In the absence of any argument as to the elements of his claim, President Trump suggests instead that his allegation regarding a "leak" of the Iowa Poll results (while nearly contemporaneous with the publication of the same) is alone sufficient to plead a claim for negligent misrepresentation. (ECF No. 107 at 26.) But he offers no explanation of the alleged leak's impact on any of the elements of a negligent misrepresentation claim. It has no bearing on the nature of Press Defendants' business, their intent as to President Trump's reliance, the alleged falsity of the Iowa Poll results or knowledge thereof, President Trump's lack of reliance, or proximate causation of any damages. In other words, allegations about the "leak" are nothing more than speculation with no relevance to the claims at issue. President Trump fails to state a claim for negligent misrepresentation.

## **CONCLUSION**

The Court should grant Press Defendants' Motion in full and dismiss all claims with prejudice.

Dated: September 2, 2025

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
David Yoshimura, AT0012422
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
        *david.yoshimura@faegredrinker.com*

**ATTORNEYS FOR PRESS DEFENDANTS DES MOINES REGISTER AND TRIBUTE COMPANY AND GANNETT CO., INC.**

## CERTIFICATE OF SERVICE

I certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all parties participating in the Court's electronic filing system.

*/s/ Paulette Ohnemus*